**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

MARY R. SCOTT, Individually and as )
Personal Representative of the Estate of )
JONATHAN MAGBIE, Deceased, )
            )
           Plaintiff, )
            )
         v. )           Civil Action No. _____
            )
DISTRICT OF COLUMBIA )
SERVE: Hon. Anthony Williams, Mayor; )
            )
ODIE WASHINGTON )
1923 Vermont Avenue, NW )
Washington, DC 20001; )
            )
JOSEPH BASTIEN, MD )
1923 Vermont Avenue, NW )
Washington, DC 20001; )
            )
T. WILKINS DAVIS, MD )
1923 Vermont Avenue, NW )
Washington, DC 20001; )
            )
CENTER FOR CORRECTIONAL HEALTH AND )
POLICY STUDIES, INC. )
SERVE: )
CT Corporation System )
1015 15th Street, Suite 1000 )
Washington, D.C. 20005 )
            )
CORRECTIONS CORPORATION OF )
AMERICA )
102 Woodmont Boulevard )
Suite 800 )
Nashville, TN 37205 )
SERVE: )
C T Corporation System )
1015 15th Street, NW )
Suite 1000 )
Washington, DC 20005; )

1

MALEK MALEKGHASEMI, MD          )
1923 Vermont Avenue, NW          )
Washington, DC 20001;            )
                                 )
SUNDAY NWOSU, MD                 )
1923 Vermont Avenue, NW          )
Washington, DC 20001;            )
                                 )
PAULINE OJELFO, LPN              )
1923 Vermont Avenue, NW          )
Washington, DC 20001;            )
                                 )
GBENGA OGUNDIPE, LPN             )
1923 Vermont Avenue, NW          )
Washington, DC 20001;            )
                                 )
OFFICER SINGLEY                  )
1923 Vermont Avenue, NW          )
Washington, DC 20001;            )
                                 )
GREATER SOUTHEAST COMMUNITY      )
HOSPITAL CORPORATION,            )
d/b/a GREATER SOUTHEAST COMMUNITY )
HOSPITAL                         )
SERVE: C T Corporation System    )
       1015 15th Street, NW       )
       Suite 1000                )
       Washington, DC 20005;     )
                                 )
WILLIAM S. VAUGHN, MD            )
1310 Southern Avenue, SE         )
Washington, DC 20032;            )
                                 )
and                              )
                                 )
ROTIMI A. ILUYOMADE, MD          )
1310 Southern Avenue, SE         )
Washington, DC 20032,            )
                                 )
                  Defendants.    )
                                 )

2

## COMPLAINT

### (Medical Negligence-42 U.S.C. § 1983 Eighth Amendment-Americans with Disabilities Act-District of Columbia Human Rights Law)

Plaintiff states the following Complaint against the Defendants named above:

### PRELIMINARY STATEMENT

This is a civil action related to the death of Jonathan Magbie. In September 2004, Mr. Magbie was a 27-year old who had never been previously convicted of a criminal offense. That month he received a ten-day sentence for possession of a marijuana cigarette. Mr. Magbie, because of a childhood injury, was paralyzed from the neck down and required a ventilator to breathe at night and at other times. He was sent to the Central Detention Facility of the District of Columbia on September 20, 2004. During the next four days, he was transferred between the Central Detention Center, Greater Southeast Community Hospital, and the Correctional Treatment Facility. Over an agonizing four-day period, the staff at all three locations failed to provide him with necessary medical care and the services he needed because of his disabilities. These failures included a failure to provide him with a ventilator that he needed to assist with his breathing, a failure to address his pneumonia, and a failure to provide him with enough food and water. On September 24, 2004, Jonathan Magbie died as a result of these and other failures. His mother seeks monetary damages for the Defendants' failures, as set forth in more detail below.

### JURISDICTION

1.     Plaintiff seeks to vindicate rights protected by the Eighth Amendment of the Constitution of the United States, as well as the laws of the United States and the District of Columbia. This Court has subject matter jurisdiction in this civil action over the plaintiff's civil

3

rights claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). The claims include civil rights violations governed by 42 U.S.C. §§ 1983 and 1988 and 42 U.S.C. §§ 12132 and 12182. This Court has supplemental jurisdiction over the claims asserted pursuant to District of Columbia law pursuant to 28 U.S.C. § 1367.

## VENUE

2.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the District of Columbia.

## PARTIES

3.      Plaintiff Mary Scott is the mother of Jonathan Magbie, his next of kin, and the personal representative of his estate. Ms. Scott brings this action pursuant to the District of Columbia Survival Act, D.C. Code § 12-101 *et seq.*, for claims on behalf of Mr. Magbie's estate, and pursuant to the District of Columbia Wrongful Death Act, D.C. Code § 16-27021 *et seq.,* for claims on her own behalf.

4.      Defendant District of Columbia operates the Central Detention Facility ("the Jail") and was responsible for transferring Jonathan Magbie to the Correctional Treatment Facility ("CTF") and Greater Southeast Community Hospital. Mr. Magbie remained in the custody and control of the District of Columbia at all times relevant to this Complaint.

5.      Defendant Odie Washington was the Director of the District of Columbia Department of Corrections at all times relevant to this Complaint. Defendant Washington had a duty to formulate, adopt, execute and maintain policies, standards, procedures and practices that were consistent with the civil rights of prisoners, including Jonathan Magbie, under the Eighth

4

Amendment of the United States Constitution and under the laws of the United States and the District of Columbia. These necessary policies include policies to assure that prisoners are provided with proper and necessary medical treatment and that prisoners are not housed in facilities lacking the care and services necessary to sustain the prisoner and that prisoners do not suffer discrimination and exclusion from services by reason of their disabilities.

6.      Pursuant to a contract for services with the District of Columbia, Defendant Center for Correctional Health and Policy Studies, Inc. ("CCHPS") provides medical care to prisoners in the Jail and the CTF.

7.      Defendant Joseph Bastien, M.D. was at all times relevant to this Complaint the medical director of CCHPS.

8.      Defendant T. Wilkins Davis, M.D. is a radiologist providing medical services to prisoners at the Jail pursuant to the CCHPS contract with the District of Columbia.

9.      Defendant Corrections Corporation of America, Inc. ("CCA") is a for-profit corporation operating the CTF pursuant to a contract with the District of Columbia.

10.     Defendant Malek Malekghasemi, M.D. was at all times relevant to this Complaint the Chief Medical Officer of the CTF.

11.     Defendant Sunday Nwosu, M.D. was at all times relevant to this Complaint in charge of the infirmary operated at the CTF.

12.     Defendants Pauline Ojelfo and Gbenga Ogundipe were at all times relevant to this Complaint licensed practical nurses ("LPNs") employed at the CTF.

5

13.     Defendant Officer Singley was at all times relevant to this Complaint a correctional officer in charge of custody at the CTF infirmary.

14.     Defendant Greater Southeast Community Hospital Corporation operates as a duly licensed and accredited District of Columbia hospital, providing health care services within the District of Columbia.

15.     Defendant William S. Vaughn, M.D. is a licensed physician providing emergency medical services within the District of Columbia

16.     Defendant Rotimi A. Iluyomade, M.D. is a licensed physician providing emergency medical services within the District of Columbia.

17.     At all relevant times, all Defendants acted under color of law of the District of Columbia and pursuant to their authority as officials, agents, contractors or employees of the District of Columbia.

18.     All Defendants except the District of Columbia are sued in their individual and official capacities.

## FACTS COMMON TO ALL CLAIMS

19.     On September 20, 2004, Jonathan Magbie was ordered to serve a sentence of ten days imprisonment at the Jail as punishment for possession of a marijuana cigarette. This was his first incarceration.

20.     Mr. Magbie was a 27 years-old, paralyzed from the neck down as result of a severe childhood accident. He had a battery-operated pulmonary pacemaker that allowed him to breathe. He used a mechanical ventilator at night and other times. He also had a tracheostomy tube to facilitate his breathing, and an indwelling catheter to collect urine.

6

21.     According to an intake medical history at the Jail, in January 2004 Mr. Magbie experienced pneumonia and had a history of osteomyelitis (bone infection). By all accounts, Mr. Magbie was ill and helpless when he began his sentence.

## A. **Magbie's First Confinement in the Jail**

22.     As part of the admission process at the Jail, Mr. Magbie had a chest x-ray, the results of which indicated that he might have pneumonia. Defendant Davis interpreted the x-ray. Despite the fact that Defendant Davis knew from the x-ray that Mr. Magbie had an in-dwelling tracheostomy tube and thus was at substantially heightened risk of pneumonia, he did not request any follow-up on the abnormal x-ray for five (5) to seven (7) days. As a result, Mr. Magbie never received any follow-up for the abnormal x-ray.

23.     The failure to request prompt follow-up of the abnormal x-ray posed a substantial risk of serious harm to someone in Mr. Magbie's condition, and after his death on September 24, Mr. Magbie was determined to have suffered acute pneumonia.

24.     While at the Jail awaiting placement on September 20, Mr. Magbie experienced difficulty breathing. He told the Jail medical staff that he needed a ventilator to breathe at night. As a result, he was transferred to Greater Southeast Community Hospital.

## B. **The First Hospitalization**

25.     On September 20, 2004, Mr. Magbie was taken to Greater Southeast Community Hospital ("the Hospital") with the complaint of shortness of breath. He was noted to be a trachestomy-dependent patient who used a ventilator at night. Exam revealed him to have wheezing and rails, with an oxygen saturation of 90%. Laboratory studies showed he had an elevated white blood cell count and was acidotic. During his stay, his glucose dropped to 56 and his blood pressure

dropped to 68/48. Defendant Vaughn diagnosed hypoglycemia (low blood sugar), hypovolemia
(dehydration), and respiratory distress.

26.     Defendant Vaughn decided to admit Mr. Magbie for diagnosis and treatment of
these conditions after determining that the Jail infirmary did not have the capacity for ventilator
support, mechanical ventilation or oxygen. After speaking with Defendant Bastien, Defendant
Vaughn reversed his course of action and discharged Mr. Magbie to the CTF at the Jail, with
instructions to provide him nasal oxygen via canula at night, as needed. Defendant Vaughn failed
to address Mr. Magbie's critical need for a ventilator. The discharge was ordered and approved by
Defendant Iluyomade on September 21, 2004.

27.     During Mr. Magbie's stay at the Hospital, his low blood sugar was treated with one
amp of 50% dextrose by the hospital staff. His hypoglycemia was never again checked or treated.

## C. Confinement in the Infirmary at CTF

28.     On September 21, 2004, Defendant Vaughn called Defendant Bastien, Medical
Director for CCHPS. Defendant Bastien then told Defendant Vaughn that the Jail could not provide
a ventilator for Mr. Magbie, but it could provide oxygen. Defendant Bastien directed Defendant
Vaughn to contact Defendant Malekghasemi regarding the possibility of transfer of Mr. Magbie to
the CTF infirmary, even though Dr. Bastien knew that the CTF infirmary did not have the equipment
to deal with Mr. Magbie's respiratory needs, and that the infirmary lacked physician staffing during
the night.

29.     Defendant Vaughn subsequently spoke to Defendant Malekghasemi, CTF's Chief
Medical Officer. Defendant Malekghasemi learned no later than September 22, 2004 that Mr.
Magbie required ventilator support at night. Notwithstanding that fact, and that Defendant

8

Malekghasemi knew that the CTF infirmary could not provide ventilator support, he failed to transfer Mr. Magbie from the infirmary.   Defendant Malekghasemi's sole attempt to  provide for Mr. Magbie's care in a facility equipped to care for him was to ask the sentencing court for an order requiring the Hospital to re-admit Mr. Magbie. He did not contact the Hospital to attempt to arrange a readmission.

30.     Defendant Sunday Nwosu was in charge of the CTF infirmary and performed the admitting examination for Mr. Magbie. Defendant Nwosu also made no attempt to refuse admission to Mr. Magbie, although he knew that the infirmary was not equipped to care for a patient with ventilator needs.

31.     Defendant Nwosu did not examine Mr. Magbie's lungs although he knew that the patient had a tracheostomy and a pulmonary pacemaker and that Mr. Magbie stated that he was ventilator-dependent at night.

32.     Defendant Nwosu also knew that the Hospital had treated Mr. Magbie for dehydration and low blood sugar. Although he knew that Mr. Magbie, in view of his quadriplegia and tracheostromy-dependent condition, would require follow-up on the hospital findings of low blood sugar and dehydration, Defendant Nwosu did not order monitoring of Mr. Magbie's fluid and caloric intake.

33.     Although Defendant Nwosu's admission note states that it was done on September 21, 2004, the note was not signed until three (3) days later. At the time the record was signed, on September 24, Mr. Magbie was already in severe respiratory distress and would soon die.

34.     Despite Defendant Nwosu's knowledge that Mr. Magbie required close monitoring by higher-level medical staff, no doctor monitored him, even in his state of rapid

9

declining health. The only medical staff who provided any care to Mr. Magbie were LPNs.

35.     Notwithstanding Defendant Nwosu's knowledge of Mr. Magbie's needs and conditions, he failed to intervene although the LPNs documented that Mr. Magbie was eating almost nothing and had falling urine output between September 21 and September 24.

36.     Defendant Nwosu knew that he was required to review Mr. Magbie's medical records. On the basis of the medical records from the Hospital and the CTF infirmary, Defendant Nwosu knew that Mr. Magbie was at enormous risk of dehydration and low blood sugar from the lack of nutrition and fluid support in the infirmary, and that these conditions would be overwhelmingly likely to trigger another respiratory crisis in light of Mr. Magbie's frail condition.

37.     Defendants Pauline Ojeifo and Gbenga Ogundipe failed to perform tracheal suctioning on Mr. Magbie during their shifts, even though they knew that they were required to suction him to protect him from respiratory distress.

38.     Mr. Magbie could speak only in a soft, low weakened voice. His only available way to notify staff of his needs was to move his wheelchair, which he controlled with a mouth-operated device, near staff to attract their attention.

39.     Notwithstanding that fact, Defendant Singley caused Mr. Magbie to be placed in an infirmary room with a door that staff were able to lock. The room had no panic button nor any other means that Mr. Magbie could use to communicate with the staff while locked in his room, so when his cell was locked, he was completely isolated and helpless to communicate his needs.

40.     Defendant Ogundipe knew that Mr. Magbie required tracheal suctioning, fluids, and nutrition. Defendant Ogundipe displayed personal hostility towards Mr. Magbie and failed to provide him with necessary care including tracheal suctioning. Defendant Ogundipe did not provide

10

Mr. Magbie with the fluids needed to prevent dehydration, nor did Defendants Ogundipe communicate Mr. Magbie's needs to colleagues so that someone else could provide the necessary care.

41.     On various occasions while confined in the CTF infirmary, Mr. Magbie attempted to get water from the prisoner porters because of Defendant Ogundipe's hostility. Despite his health condition, staff prohibited him from doing so. On the night before Mr. Magbie's death, Defendant Singley enforced that order by locking his door. Defendant Ogundipe also failed to monitor Mr. Magbie's condition, despite being told that Mr. Magbie needed assistance. This chain of events contributed to Mr. Magbie's dehydration and subsequent respiratory crisis.

42.     On the morning of September 24, during a period of time that Mr. Magbie was not being observed by medical staff, he developed an acute respiratory crisis. The level of oxygen in his blood fell to dangerous levels. He was unable to speak intelligibly and was subsequently transferred back to the Hospital.

### D. The Second Hospitalization

43.     On September 24, 2004 at 9:50 a.m. Mr. Magbie was readmitted to the Hospital, unresponsive and in respiratory distress. An order for a "tracheal toilet" procedure was given and noted, but no further suctioning or other respiratory treatment was given, other than oxygen saturation readings. Initial vital signs indicated an oxygen saturation of 100%. This level dropped to 95% at 2:05 p.m.; to 92% at 4:00 p.m.; and to 80% at 5:40 p.m. The hospital staff failed to properly manage the patient during these hours and did not notify a physician until Defendant Iluyomade was called to attend the patient at 5:40 p.m nearly (8) hours later.

44.     The patient's tracheostomy tube, which was not secured, was noted to be

11

protruding at 5:40 p.m. Dr. Iluyomade pushed the tube back in, but failed to assess the patient's respiratory status. Suctioning was not performed. Saline was not given. An inner canula, if present, was not removed. The protruding trachestomy tube was neither removed nor replaced with a smaller tube.

45. As culmination of these doctors' brutal insensitivity to Magbie's health and vulnerability, Mr. Magbie coded and subsequently expired at 6:40 p.m.

## E. Jonathan Magbie's Disabilities

46. Jonathan Magbie suffered from a disability by reason of his paralysis and associated problems. He was excluded from services provided by Defendants for which he was otherwise eligible including basic provisions such as food and water and reasonably safe housing, by reason of this disability.

47. The District of Columbia and Defendant Odie Washington failed to provide reasonable policies for assuring medical care, basic needs and reasonably safe housing for persons suffering from paralysis and related disabilities.

48. The District of Columbia and Defendant Odie Washington failed to make reasonable accommodations in policies, practices, and procedures to enable Jonathan Magbie to participate fully and equally in the Jail and CTF's public services, programs and activities

49. The Hospital discriminated against Jonathan Magbie by reason of his disability and failed to enable him to participate fully and equally in the Hospital's and CTF's services, programs and activities.

50. The Hospital failed to provide reasonable accommodations to Jonathan Magbie to allow him to participate fully and equally in the Hospital's services, programs and activities.

12

## F. Other

51.     Defendant Washington, despite knowledge that adequate policies were required to assure that no prisoners were kept in custody for whom the Department of Corrections lacked safe and appropriate medical services and facilities, failed to promulgate or implement such policies. The District of Columbia agents and employees acted pursuant to a policy or custom of accepting custody of persons, who, because of disabilities and medical needs, could not be safely confined at the Jail or CTF.

52     All actions and omissions of Jail employees and agents as described in this Complaint were taken pursuant to and as a result of the policies and customs of their employer and principal the District of Columbia.

53.     All actions and omissions of CTF employees and agents as described in this Complaint were taken pursuant to and as a result of the policies and customs of their employer and principal CCA.

54.     Plaintiff has complied with the provisions of D.C. Code §12-309 by providing timely written notice to the Mayor of her intention to file civil claims against the District of Columbia based upon the death of Jonathan Magbie.

55.     All actions and omissions of staff members at the Hospital were taken by agents, servants and employees of that hospital, acting within the course and scope of that agency, servantship and employment.

56.     At all times preceding Mr. Magbie's expiration, he experienced conscious physical pain and suffering including embarrassment, humiliation and loss of self-esteem, as a result of Defendants' actions.

13

57.     Mr. Magbie, at the time of his death, was the beneficiary of a life annuity.

58.     Plaintiff Mary Scott, mother of the deceased, had a past experience and a reasonable future expectation of substantial economic support from the deceased.

## CLAIMS FOR RELIEF

## COUNT ONE

## (42 U.S.C. § 1983 Eighth Amendment)

59.     Plaintiff repeats, realleges and incorporates by reference herein each and every relevant allegation in paragraphs 1-58, *supra,* and, in addition, alleges:

60.     Albeit all Defendants acted under color of state law and had actual knowledge of the substantial risks of serious harm to Mr. Magbie, they still acted or failed to act without regard for those risks. Defendants' acts and omissions deprived Mr. Magbie of appropriate medical care, reasonably safe housing in light of his disabilities, and basic needs of food and water. Defendants further exposed Mr. Magbie to humiliation, embarrassment, and a shameful state of helplessness. Further, they were fully cognizable that their actions violated Mr. Magbie's rights under the Eighth Amendment to the United States Constitution to be free from such cruel and unusual punishment.

61.     Defendants' acts and omissions clearly violated Mr. Magbie's constitutional rights and proximately caused his death.

62.     The individual Defendants acted with wilful disregard of the rights of Jonathan Magbie and their conduct toward him was outrageous and reckless.

WHEREFORE, Mary Scott, Plaintiff demands:

(A)     Compensatory damages against all Defendants, jointly and severally, in an amount in excess of fifty million dollars ($50,000,000);

14

(B)     Punitive damages against each individual Defendant other than the District of

Columbia, in an amount in excess of fifty million dollars ($50,000,000);

(C)     Reasonable attorneys' fees under 42 U.S.C. § 1988; and

(D)     Costs and expenses of this action.

## COUNT TWO

### (Americans with Disabilities Act)

63.     Plaintiff repeats, realleges and incorporates by reference herein each and every

relevant allegation in paragraphs 1-62, *supra,* and, in addition, alleges:

64.     The District of Columbia violated Jonathan Magbie's rights pursuant to Title II of

the  Americans with Disabilities Act, 42 U.S.C. § 12132, and those violations proximately caused

his death.

65.     The Hospital violated Mr. Magbie's rights pursuant to Title III of the

Americans with Disabilities Act, 42 U.S.C. § 12182, and those violations proximately caused his

death.

WHEREFORE, Mary Scott, Plaintiff, demands:

(A)     Compensatory damages against Defendants District of Columbia and the Hospital,

jointly and severally, in an amount in excess of fifty million dollars ($50,000,000);

(B)     Reasonable attorneys' fees under 42 U.S.C. § 1988 and 42 U.S.C. §12205;

(C)     Costs and expenses of this action.

## COUNT THREE

### ( Medical Negligence)

66.     Plaintiff repeats, realleges and incorporates by reference herein each and every

relevant allegation in paragraphs 1-65, *supra,* and, in addition, alleges:

67.    At all times referred to above, Jonathan Magbie enjoyed the status of a medical patient within a patient/provider relationship, and relied upon the care, skill and judgment of those who provided or failed to provide treatment to him.

68.    Each defendant had a duty to treat Mr. Magbie with the same degree of skill, care or knowledge which a reasonable and prudent person of the medical profession  would have exercised under the same or similar circumstances, and to treat Mr. Magbie within the prevailing standard of care which existed at the time of the subject events and which still exists today.

69.    Defendants, and each of them, negligently acted or failed to act, resulting in the denial of necessary medical care to Mr. Magbie, and those acts and omissions proximately caused Mr. Magbie's considerable pain and suffering, including mental anguish, and ultimately his death, all in violation of the applicable standards of medical care.

WHEREFORE, Mary Scott, Plaintiff, demands:

(A)    Compensatory damages against all Defendants, jointly and severally, in an amount in excess of fifty million dollars ($50,000,000);

(B)    Costs and expenses of this action.

## COUNT FOUR

### ( District of Columbia Human Rights Law)

70.    Plaintiff hereby repeats, realleges and incorporates by reference herein each and every relevant allegation of paragraphs 1-69, *supra,* and, in addition, alleges:

71.    The District of Columbia violated Mr. Magbie's rights pursuant to the District of Columbia Human Rights Law, D.C. Code §§ 2-1402.67, 2.1402.73 & 2.1403.16, and those

16

violations proximately caused Mr. Magbie's death.

72.  The Hospital violated Mr. Magbie's rights pursuant to the District of Columbia

Human Rights Law, D.C. Code §§ 2-1402.31 & 2.1403.16, and those violations proximately caused

Mr. Magbie's death.

WHEREFORE, Mary Scott, Plaintiff, demands:

(A)  Compensatory damages against Defendants District of Columbia and the Hospital

in an amount of fifty million dollars ($50,000,000);

(B)  Reasonable attorneys' fees pursuant to D.C. Code §§ 2-1403.13(a) and 2-1403.16;

(C)  Costs and expenses of this action.

Donald M. Temple ea
Donald M. Temple, #408749
1229 15th Street, NW
Washington, DC 20005
(202) 628-1101

Edward J. Connor ea
Edward J. Connor #321505
5210 Auth Raod, #304
Camp Springs, MD 20746
(301) 899-7801

Elizabeth Alexander ea
Elizabeth Alexander, #412904
National Prison Project of the ACLU
915 15th Street, NW
7th Floor
Washington, DC 20005
(202) 393-4930

Arthur B. Spitzer ea
Arthur B. Spitzer, #235960
American Civil Liberties Union
    of the National Capital Area
1400 20th Street, N.W. #119
Washington, DC 20036
(202) 457-0800

## JURY DEMAND

Plaintiff demands trial by jury.

Donald M. Temple, #408749