| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | 1. Contract Number<br>7005-AA-NS-4-MW | Page of Pages<br>1 / 6 |
|---|---|---|

| 2. Amendment/Modification Number<br>M0004 | 3. Effective Date<br>4/1/2003 | 4. Requisition/Purchase Request No. | 5. Solicitation Caption<br>Correctional Treatment Facility |
|---|---|---|---|

| 6. Issued By:<br>OFFICE OF CONTRACTING AND PROCUREMENT<br>Public Safety Cluster<br>1923 Vermont Avenue, N.W., Room No. N-224<br>Washington, D.C. 20001 | Code FL0 | 7. Administered By (If other than line 6)<br>The Department of Corrections<br>1923 Vermont Avenue, N.W.<br>Washington, D.C. 20001 |
|---|---|---|

| 8. Name and Address of Contractor (No. Street, city, country, state and ZIP Code)<br><br>Corrections Corporation of America<br>10 Burton Hills Blvd.<br>Nashville, TN 37215 | | 9A. Amendment of Solicitation No. |
|---|---|---|
| | | 9B. Dated (See Item 11) |
| | | 10A. Modification of Contract/Order No.<br>7005-AA-NS-4-MW |
| | X | 10B. Dated (See Item 13)<br>17-Jul-03 |
| Code | Facility | |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers [ ] is extended. [ ] is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment: (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or fax which includes a reference to the solicitation and amendment number. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by letter or fax, provided each letter or telegram makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

**12. Accounting and Appropriation Data (If Required)**
THIS IS A "NO ADDITIONAL COST" MODIFICATION

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14**

| X | A. This change order is issued pursuant to: (Specify Authority) | Paragraph 19 "Changes Clause" of the Standard Contract Provisions for use with the District of Columbia Government Supply and Services Contract, dated April 2003 |
|---|---|---|
| X | The changes set forth in Item 14 are made in the contract/order no. in item 10A. | |
| | B. The above numbered contract/order is modified to reflect the administrative changes (such as changes in paying office, appropriation date, etc.) set forth in item 14, pursuant to the authority of 27 DCMR, Chapter 36, Section 3601.2. | |
| X | C. This supplemental agreement is entered into pursuant to authority of: WHICH REFLECTS AGREEMENTS BETWEEN THE PARTIES TO MODIFY THE TERMS OF THE CONTRACT | Paragraph 7.1.4.2 Decrease in Per Diem Rate, Contract Ref. 10A |
| | D. Other (Specify type of modification and authority) | |

**E. IMPORTANT:** Contractor [ ] is not, [X] is required to sign this document and return __2__ copies to the issuing office.

**14. Description of amendment/modification** (Organized by UCF Section headings, including solicitation/contract subject matter where feasible.)

THE CONTRACT REFERENCED IN BLOCK 10A HEREBY MODIFIED AS SPECIFIED IN THE ATTACHED 5 PAGES.

ATTACHMENTS:
Standard Contract Provisions, dated April 2003

Except as provided herein, all terms and conditions of the document referenced in Item (9A or 10A) remain unchanged and in full force and effect

| 15A. Name and Title of Signer (Type or print)<br>Damon Hininger, VP, Fed, Govt Rel. | 16A. Name of Contracting Officer<br>John Soderberg | |
|---|---|---|
| 15B. Name of Contractor<br>(Signature of person authorized to sign) | 15C. Date Signed<br>4/1/03 | 16B. District of Columbia<br>(Signature of Contracting Officer) | 16C. Date Signed<br>4/1/03 |

# MODIFICATION #4 OF THE OPERATIONS AND MANAGEMENT AGREEMENT

by and between

THE DISTRICT OF COLUMBIA

and

CORRECTIONS CORPORATION OF AMERICA

THIS MODIFICATION OF THE OPERATIONS AND MANAGEMENT AGREEMENT (the "Agreement") is made and entered into as of April 1, 2003, by and between **THE DISTRICT OF COLUMBIA**, a municipal corporation **(the "District")** and **CORRECTIONS CORPORATION OF AMERICA**, a corporation duly organized and existing under the laws of Delaware **(the "Operator" or "CCA")**.

WITNESSETH:

WHEREAS, the District entered into the Agreement, dated January 30, 1997, with the Operator to operate and maintain the Correctional Treatment Facility;

WHEREAS, the District desires to assume Operator's food service obligations under the Agreement;

WHEREAS, the District has assumed Operator's medical service obligations under the Agreement; and

WHEREAS, the Parties desire to amend the Agreement accordingly;

NOW, THEREFORE, for and in consideration of the foregoing and the promises and mutual covenants hereinafter contained, and subject to the conditions herein set forth, the District and the Operator hereby covenant, agree, and bind themselves as follows:

Section 5.4.5 shall be deleted and replaced with the following: "The District shall assume all liability for the provision of all medical services for inmates housed at the Facility and shall render such services in accordance with the Operating Standards, and the Operator shall have no liability therefor. In the event the District fails to provide proper medical services and/or the District's manner of providing medical services interferes with the Operator's ability to comply with Operating Standards shall be considered a material failure for the purposes of Section 9.2.2. The Contract Monitor

Exh 5

shall administer all inmate grievances related to medical service, and the Operator shall have no responsibility or liability therefor except as set forth herein. The District shall indemnify, hold harmless and defend CCA, its employees, agents, servants and representatives from and against any and all claims and demands of whatever nature, regardless of the merit thereof, which may be asserted against CCA its employees, agents, servants or representatives related to the provision of medical service by the District or the District's subcontractor. The District's indemnity obligation shall not extend to any act or failure to act by Operator that inhibited the District's ability to render proper medical service, and the Operator shall indemnify the District for any such act or failure to act. In the event CCA desires the District to provide medical screening for potential CCA employees, the District shall provide such service at a rate of $100.00 per potential employee. Other medical services provided by the medical services provider for CCA employees will be charged at the prevailing rates within the District. The District shall reimburse Operator for compensation paid by Operator to CCHPS for services rendered to Facility inmates from November 1, 2002 through March 31, 2003."

Section 5.4.6 shall be deleted and replaced with the following: "As of April 1, 2003, the District shall be responsible for all food service to inmates and shall assume all obligations set forth in Section 5.4.6 of the Operations and Management Agreement as entered into January 30, 1997. The parties acknowledge and agree that proper food service is essential to inmate morale and Facility security. In the event the District fails to provide proper food service and/or the District's manner of provision of food service interferes with the Operator's ability to meet Operating Standards or to otherwise comply with the terms of the Agreement, it shall be considered a material failure on the part of the District for the purposes of Section 9.2.2. The Contract Monitor shall administer all inmate grievances related to food service, and the Operator shall have no responsibility or liability therefor, except as set forth herein. In accordance with Operating Standards, the District shall maintain, repair and replace all inventory and equipment related to food service and shall be responsible for all pest control and sanitation related to the kitchen and food service. The Operator shall use inmate labor to assist in food preparation and or deliver the food to the housing unit and pay inmate wages for such labor as the parties agree. The District shall indemnify, hold harmless and defend Operator, its employees, agents, servants and representatives from and against any and all claims and demands of whatever nature, regardless of the merit thereof, which may be asserted against Operator, its employees, agents, servants or representatives related to food service. The District's indemnity obligation shall not extend to any act or failure to act by Operator that inhibited the District's ability to render proper food service, and the Operator shall indemnify the District for any such act or failure to act. In the event Operator desires the District to provide food service for its employees such service will be provided at the rate of $1.20 per meal, and the food service contractor will invoice Operator directly based on the number of meals served. The Operator shall not bill the District for any services associated with the temporary use of the CTF Kitchen by the CDF for the preparation of food to be delivered from the CTF to the CDF. The District shall discontinue full-time use of the CTF kitchen for purposes of the CDF on or before October 31, 2003.

The Operator agrees to have all equipment in the CTF culinary repaired and fully operational before the District will assume responsibility for the CTF Kitchen maintenance. A new Dishwasher scheduled for replacement at the CTF shall be installed prior to the District assuming responsibility for the maintenance of the equipment located at the CTF Kitchen. The District will accept responsibility for all kitchen maintenance at the CTF upon inspection by District personnel who will provide the Operator with a written acceptance document. The District shall conduct the inspection upon the installation of an operational dishwasher by Operator. The Operator must provide sufficient food trays, utensils, pots, pans and associated equipment to accommodate the maximum inmate population for the CTF Facility".

Section 5.7 shall be deleted and replaced with the following: "In the event any of the contracted facility beds are vacant, the Operator shall have the option to fill those beds with inmates from other jurisdictions subject to the District approval, said approval not to be withheld without compelling justification. Any compelling public safety reason for housing inmates by the District shall be exempt from this paragraph. The District shall not at any time execute an agreement with another jurisdiction for the housing of that jurisdiction's inmates, if the District has first disapproved the housing of those inmates at the Facility by the Operator. All inmates held in the Facility shall have the same rights that would be afforded them under the Interstate Correction Compact. Operator shall indemnify the District for all claims brought by inmates related to the conditions of their confinement, with the exception of claims related to food and/or medical services as more specifically explained herein. The District shall not impede the Operator's effort to pursue opportunities for housing federal inmates at the Facility. The Operator shall retain all compensation paid by the applicable entity for the first 4650 inmate days provided pursuant to this section prior to November 30, 2003, with the exception of a one-time initial payment of $25.00 per inmate for the cost of medical intake. Thereafter, the District shall also receive a $28.60 per diem as full reimbursement of the medical costs, food service costs and administrative costs and as compensation for the lease of the bed. The District shall provide the Operator documentation of all outside medical costs, including prescriptions, incurred in relation to the inmates so that CCA may seek reimbursement from the appropriate jurisdiction. The District shall not withhold medical documentation without reasonable cause and in accordance with applicable laws and regulations. If medical costs increase, the costs to the Operator pursuant to this paragraph shall increase proportionately. In the event such an increase is necessary, the District will work in good faith with the Operator to obtain a proportionate adjustment in compensation from the federal entity supplying inmates."

Section 6.1 shall be amended to add: "The provisions of this paragraph shall be subject to the exceptions expressed in Section 5.4.6"

Section 7.1.1 shall be amended to read as follows: "The Daily Service Fee for each day shall be equal to the product of the Per Diem Rate multiplied by the number of DOC inmates recorded on the Midnight Census Report for such day. A copy of each Midnight Census Report shall be sent to the Contract Monitor within twenty-four hours. Commencing on November 1, 2002, the Per Diem Rate shall be $55.00. Commencing on

May 1, 2003, the Per Diem Rate shall be $51.40. If the Operator is housing federal inmates at the facility prior to November 30, 2003, the Per Diem Rate shall be $55.90 from January 1, 2004 through June 30, 2004 and $56.90 from July 1, 2004 through December 31, 2004. Otherwise the Per Diem Rate for 2004 shall be $56.90. Thereafter the rate shall be adjusted in accordance with Section 7.1.2. As evidenced by its representative's signature below, the District accepts the reduction in per Diem from the period of November 1, 2002 through December 31, 2003 as full and final settlement of any and all claims the District may have against the Operator related to the Management Contract and Operator's alleged non-compliance, known and documented by the Department of Corrections (DOC) as of January 1, 2003.

Section 10.1 shall be amended to add: " The Operator shall have no indemnification responsibilities related to the provision of medical or food services except as specifically stated in Sections 5.4.5 and 5.4.6."

This Modification shall be effective on April 1, 2003.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first above written.

**THE DISTRICT OF COLUMBIA**
("District")

By: _[signature]_

Title: Contracting Officer

**CORRECTIONS CORPORATION OF AMERICA**
("Operator")

BY: _[signature]_

Title: VP, Federal Cust Relations

REVIEWED BY:

_____
G. A. PURYEAR IV
GENERAL COUNSEL


_____
DAVID M. GARFINKLE
VICE PRESIDENT, FINANCE