# DISTRICT OF COLUMBIA

## CORRECTIONAL TREATMENT FACILITY PRIVATIZATION

### *CONTRACTUAL DOCUMENTS*

*Operations and Management Agreement*
*Lease Agreement*
*Memorandum of Lease*
*Quitclaim Deed*

**DOC Procurement Office**

Exh 4

# OPERATIONS AND MANAGEMENT AGREEMENT

## by and between

## THE DISTRICT OF COLUMBIA

### and

## CORRECTIONS CORPORATION OF AMERICA

THIS OPERATIONS AND MANAGEMENT AGREEMENT (the "Agreement") is made and entered into as of January 30, 1997 by and between THE DISTRICT OF COLUMBIA, a municipal corporation (the "District") and CORRECTIONS CORPORATION OF AMERICA, a corporation duly organized and existing under the laws of Delaware (the "Operator" or "CCA").

## W I T N E S S E T H:

WHEREAS, the District wishes to provide the public with prison services that are cost efficient and effective with respect to the purposes and goals of incarceration;

WHEREAS, the District wishes to provide inmates with proper care, custody, treatment, rehabilitation and reformation;

WHEREAS, the District wishes to provide the public and inmates with prison services that meet the requirements of the Court Orders (hereinafter defined), the standards of the American Correctional Association and other standards that may be promulgated by the District;

WHEREAS, the District's Correctional Treatment Facility (the "CTF") is currently a medium security facility which houses a reception and diagnostic program, a female offenders program, a substance abuse program, and units designated for general population and special management inmates. The CTF also contains an infirmary providing medical, dental and mental health services to inmates in the entire prison system;

WHEREAS, the Operator has submitted a proposal, including a best and final offer, to operate and maintain the CTF for a period of twenty (20) years;

WHEREAS, the District wants the Operator, and the Operator has agreed, to operate and maintain the CTF;

WHEREAS, the District's Department of Corrections shall administer this Agreement on behalf of the District;

EXECUTION COPY

# OPERATIONS AND MANAGEMENT AGREEMENT

## by and between

## THE DISTRICT OF COLUMBIA

## and

## CORRECTIONS CORPORATION OF AMERICA

\45196\011\OPERATNG.018

# TABLE OF CONTENTS

Page No.

ARTICLE 1    DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2
   1.1    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2
   1.2    Interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

ARTICLE 2    REPRESENTATIONS AND WARRANTIES . . . . . . . . . . . . . .    6
   2.1    Representations of the District . . . . . . . . . . . . . . . . . . .    6
   2.2    Representations of Operator . . . . . . . . . . . . . . . . . . . .    6
   2.3    Continuing Representations . . . . . . . . . . . . . . . . . . . .    9
   2.4    Survival of Representations . . . . . . . . . . . . . . . . . . . .    9

ARTICLE 3    TERM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9
   3.1    Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

ARTICLE 4    FACILITY AND EQUIPMENT . . . . . . . . . . . . . . . . . . . . .    10
   4.1    Use of the CTF . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10
   4.2    Additional Property . . . . . . . . . . . . . . . . . . . . . . . . .    10
   4.3    Office Space . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

ARTICLE 5    SCOPE OF SERVICES . . . . . . . . . . . . . . . . . . . . . . . .    10
   5.1    General Duties and Obligations; Operating Standards and DOC Policies . .    10
   5.2    Transition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11
   5.3    Repairs and Improvements to the CTF . . . . . . . . . . . . . . .    13
   5.4    Operation of CTF . . . . . . . . . . . . . . . . . . . . . . . . . .    13
   5.5    Operator Policies and Procedures . . . . . . . . . . . . . . . . .    20
   5.6    Out-of-State Inmates . . . . . . . . . . . . . . . . . . . . . . . .    22

ARTICLE 6    MAINTENANCE,    CAPITAL    IMPROVEMENTS,    AND
           CONDEMNATION . . . . . . . . . . . . . . . . . . . . . . . . . . .    22
   6.1    Maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22
   6.2    Capital Improvements . . . . . . . . . . . . . . . . . . . . . . . .    22
   6.3    Damage, Destruction and Condemnation . . . . . . . . . . . . . .    22
   6.4    Maintenance Letter of Credit . . . . . . . . . . . . . . . . . . . .    23
   6.5    Restrictions Regarding Hazardous Substances . . . . . . . . . . .    23
   6.6    Compliance with Hazardous Substance Handling Laws . . . . . . . . . . . .    23
   6.7    Operator's Indemnification of the District . . . . . . . . . . . . . .    24
   6.8    Remedial Action . . . . . . . . . . . . . . . . . . . . . . . . . . .    24
   6.9    Discovery of Hazardous Substances . . . . . . . . . . . . . . . . .    25

ARTICLE 7    COMPENSATION AND OTHER PAYMENTS . . . . . . . . . . . . . .    25
   7.1    Daily Service Fee . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

\45196\011\OPERATNG.018

7.2    Billing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
7.3    Nonappropriation . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
7.4    Operating Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . 29
7.5    Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
7.6    Termination for Convenience . . . . . . . . . . . . . . . . . . . . . 29

ARTICLE 8    EMPLOYEES . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
8.1    Independent Contractor . . . . . . . . . . . . . . . . . . . . . . . . 29
8.2    Subcontractors . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
8.3    Employee Training and Background Investigation . . . . . . . . . . . . . 30
8.4    Performance of Duties . . . . . . . . . . . . . . . . . . . . . . . . 30

ARTICLE 9    DEFAULT AND TERMINATION . . . . . . . . . . . . . . . . . . 30
9.1    Default by Operator . . . . . . . . . . . . . . . . . . . . . . . . . 30
9.2    Default by the District . . . . . . . . . . . . . . . . . . . . . . . . 32
9.3    Further Opportunity to Cure . . . . . . . . . . . . . . . . . . . . . 32
9.4    Cancellation of Cure Period . . . . . . . . . . . . . . . . . . . . . 32
9.5    Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
9.6    Termination Due to Third Party Action . . . . . . . . . . . . . . . . 33
9.7    Delay; Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
9.8    No Remedy Exclusive . . . . . . . . . . . . . . . . . . . . . . . . 33
9.9    Agreement to Pay Attorney's Fees and Expenses . . . . . . . . . . . . 33
9.10   No Additional Waiver Implied by One Waiver . . . . . . . . . . . . . 33
9.11   Transfer of Information . . . . . . . . . . . . . . . . . . . . . . . . 33

ARTICLE 10   INDEMNIFICATION, INSURANCE AND DEFENSE OF CLAIMS . . . 34
10.1   Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
10.2   Books and Records . . . . . . . . . . . . . . . . . . . . . . . . . . 35
10.3   Maintenance of Corporate Existence and Business . . . . . . . . . . . 35
10.4   Non-Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . 35
10.5   Liability Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . 36
10.6   Other Insurance Requirements . . . . . . . . . . . . . . . . . . . . 36

ARTICLE 11   CONTRACT MONITOR/PERFORMANCE EVALUATION . . . . . . . 37
11.1   Contract Monitor . . . . . . . . . . . . . . . . . . . . . . . . . . 37
11.2   Access to Facilities . . . . . . . . . . . . . . . . . . . . . . . . . . 38
11.3   Right to Audit . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
11.4   Monitoring of Performance by the District . . . . . . . . . . . . . . 39

ARTICLE 12   CERTAIN PROHIBITIONS . . . . . . . . . . . . . . . . . . . . . 39
12.1   Certain Prohibitions . . . . . . . . . . . . . . . . . . . . . . . . . 39

ARTICLE 13   MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . 39
13.1   Binding Nature . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
13.2   Invalidity and Severability . . . . . . . . . . . . . . . . . . . . . . 40

13.3   Defense/Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
13.4   Notice of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
13.5   Prohibition Against Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
13.6   Third Party Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
13.7   Governing Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
13.8   Notices  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
13.9   Entire Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
13.10  Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
13.11  Headings  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
13.12  Counterparts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

EXHIBITS:

Exhibit A    -    DOC Policies
Exhibit B    -    Staffing Plan

WHEREAS, this Agreement is being entered into pursuant to the proposal, as amended, submitted by the Operator.

NOW, THEREFORE, for and in consideration of the foregoing and the promises and mutual covenants hereinafter contained, and subject to the conditions herein set forth, the District and the Operator hereby covenant, agree, and bind themselves as follows:

## ARTICLE 1
## DEFINITIONS

1.1    <u>Definitions</u>.  Unless the context otherwise requires, the following terms shall have the meanings set forth below:

"ACA Standards" means the American Correctional Association Standards for the Adult Correctional Institutions (Third Edition), together with any future amendments or additions.

"Agreement" means this Operations and Management Agreement by and between the District and the Operator.

"American Correctional Association" means the American Correctional Association, a non-profit corporation with the corporate headquarters in Lanham, Maryland or if the American Correctional Association ceases to exist, to issue accreditation standards for correctional facilities or to offer accreditation services for correctional facilities, another organization designated by the District that provides such services.

"Business Day" means any day other than a Saturday, Sunday or legal holiday in the District as specified in the District of Columbia Code.

"Change in Mission" means any decision by the District to make a material modification to the services required to be provided to inmates at the CTF, or to how the CTF functions within the District's prison system.

"Change of Law" means an amendment or addition to the ACA Standards, a final order of a court of competent jurisdiction affecting the CTF or an amendment to or adoption of laws or regulations of the United States government or the District affecting the CTF, which become effective after October 1, 1996 and which individually or in the aggregate have the effect of increasing the cost of operating the CTF.

"Contract Monitor" shall have the meaning given in Section 11.1.

"Court Orders" means <u>Women Prisoners of the District of Columbia Department of Corrections v. District of Columbia</u>, 877 F. Supp. 634 (D.D.C. 1994) as modified by <u>Women Prisoners of the District of Columbia Department of Corrections v. District of Columbia</u>, No.

95-7041 (D.C. Cir. Aug. 30, 1996); <u>Twelve John Does v. District of Columbia</u>, C.A. No. 80-2136 (June L. Green, J.), Consent Decree Amending Final Settlement Agreement and Consent Decree of April 28, 1982, the Amended Decree of August 18, 1983 and the Amended Decree of March 4, 1985, filed December 17, 1990; and <u>Campbell v. McGruder</u>, C.A. No. 1462-71 (WBB) and <u>Inmates of D.C. Jail v. Jackson</u>, C.A. No. 75-1668 (cases consolidated before Judge William B. Bryant) and any other Court Order made applicable to the Facility during the term of the Agreement.

"Critical Positions" means the following job categories identified in the Staffing Plan:  Correctional officers, physicians and physician assistants, nurses, and diagnostic personnel.

"CTF" means the District's Correctional Treatment Facility and the tangible personal property therein at the time of its transfer to the Operator, as more particularly described in Exhibit A to the Lease.

"Daily Service Fee" shall have the meaning given such term in Article 7 hereof.

"DCGH" means the D.C. General Hospital in Washington, D.C.

"Deed" means that certain quitclaim deed from the District as grantor conveying certain interests in and to the CTF to the Operator.

"District" means the District of Columbia, a municipal corporation.

"District Representative" shall be the executive deputy director of the DOC, or his or her designee.

"DOC" means the Department of Corrections, a department of the District, and its successors.

"DOC Policies" means those operating policies of DOC which are listed on Exhibit A and incorporated herein by reference.

"Event of Default" means an event of default set forth in Article 9 hereof.

"Event of Nonappropriation" means the failure of the Congress of the United States to appropriate in any Fiscal Year funds sufficient to pay the Daily Service Fee or other amounts due during the succeeding Fiscal Year.

"Fiscal Year" means the fiscal year of the District which is currently the period commencing October 1 and ending the succeeding September 30, as such period may be changed from time to time.

"Hazardous Substance Laws" shall have the meaning given such term in Section 6.5 hereof.

"Indemnified Parties" shall have the meaning given such term in Section 6.7 hereof.

"Inmate General Welfare Fund" means that fund supporting the morale and welfare of the inmates as described in Section 5.4.12 hereof.

"Lease" means that certain Lease Agreement by and between Operator as lessor and the District as lessee relating to the Lease of the CTF.

"Midnight Census Report" means the Operator's report of the number of inmates housed at the CTF at 12:01 a.m. each day during the Term of this Agreement.

"Operating Standards" means the standards for operating the CTF listed in Section 5.1 hereof.

"Operational Positions" mean the job categories identified in the Staffing Plan other than those job categories considered Critical Positions.

"Operations Manual" means the manual prepared by the Operator pursuant to Section 5.2 hereof.

"Operator" means Correction Corporation of America, its successors and permitted assigns.

"Operator's Persons" shall have the meaning given such term in Section 6.5 hereof.

"Operator's Proposal" means collectively Volumes I, I-A and II dated August 8, 1996, the Best and Final Offer dated August 20, 1996, and the letter to Wanda Moorman of the Department of Administrative Services dated August 29, 1996 from Linda A. Staley, regarding the Correctional Treatment Facility Privatization Program, Clarification - Best and Final Offer, all submitted by the Operator with respect to the privatization of the operations of the CTF, as amended and supplemented in writing during the negotiation of this Agreement.

"Operator Representative" shall be the Operator's vice president of operations, or his or her designee.

"Party" means the District or the Operator as the context may require. References to "Parties" mean collectively the DOC and the Operator.

"Per Diem Rate" means the daily fee per prisoner payable by the District to the Operator for the services it provides hereunder.

"Quality Assurance Plan" means the Quality Assurance Plan portion of the Solicitation.

"Requirements" means the Requirements section of the Solicitation.

"Service Commencement Date" means the date on which the Operator shall begin providing operation and management services at the CTF in accordance with the terms of this Agreement.

"Solicitation" means the information distributed to the Operator prior to preparation of the Operator's Proposal, together with Amendment No. 1 thereto. The distributed information consisted of the following: Instructions to Offerors, Requirements, Project Terms and Conditions and the Quality Assurance Plan.

"Staffing Plan" means the Staff Deployment Plan attached hereto as Exhibit B.

"Term" shall have the meaning provided in Article 3 hereof.

"Vacancy Deficiency" shall have the meaning given such term in Section 5.4.2 hereof.

1.2   Interpretation.

1.2.1   Titles and headings are included for convenience only and shall not be used for the purposes of construing or interpreting this Agreement.

1.2.2   Words denoting the singular only also include the plural, and vice versa, where the context requires. Words denoting natural persons or parties shall include firms and corporations and any organization having legal capacity. Any reference to a particular gender shall include the other gender.

1.2.3   The word "include" and "including" shall be deemed to be followed by the words "without limitation."

1.2.4   All references contained herein to contracts or other documents shall be deemed to mean such contracts or documents, as the same may be modified, supplemented or amended from time to time.

1.2.5   References to any recitals, clauses or exhibits are, unless the context otherwise clearly requires, references to the recitals, clauses of, and exhibits to, this Agreement. References in this Agreement containing terms such as "hereof," "hereto," "hereby," "hereinafter," and other terms of like import are not limited in

applicability to the specific provision within which such references are set forth but instead refer to this Agreement taken as a whole.

1.2.6    Any provision requiring that the District or the Operator obtain the approval, consent, or concurrence of the other shall be deemed to include a requirement that the approval, consent or concurrence of the other shall not be unreasonably withheld or delayed, unless such approval, consent or concurrence is stated to be within the sole discretion of a Party.

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES

2.1   <u>Representations of the District</u>.  The District represents and warrants to and for the benefit of the Operator with the intent that the Operator shall rely thereon for purposes of entering into this Agreement as follows:

2.1.1    <u>Authorization</u>.  Pursuant to the laws of the District of Columbia, the District has the requisite power to enter into this Agreement and perform its obligations hereunder and by proper action has duly authorized the execution, delivery, and performance of this Agreement.

2.1.2    <u>No Violation of Agreements</u>.  The consummation of the transactions contemplated by this Agreement and the fulfillment of the terms hereof do not conflict with, nor will they result in a breach of any of the terms and provision of, or constitute a default under any other agreement or instrument to which the District is a party or by which its properties are bound, except for any conflict, breach, or default which would not materially and adversely affect the District's ability to perform its obligations under this Agreement.

2.1.3    <u>No Litigation</u>.  There is not now pending any action, suit or proceeding to which the District is a party, before or by any court or governmental agency or body, which challenges the right or the authority of the District to enter into this Agreement or to perform its obligations hereunder.

2.2   <u>Representations of Operator</u>.  The Operator represents and warrants to and for the benefit of the District, with the intent that the District shall rely thereon for purposes of entering into this Agreement, as follows:

2.2.1        <u>Organization and Qualification</u>.  The Operator has been duly incorporated and is validly existing as a corporation in good standing under the laws of the State of Delaware with power and authority to own or lease its properties and conduct its business as presently conducted. The Operator is duly qualified to do business as a foreign corporation in good standing in the District of Columbia.

2.2.2        <u>Authorization</u>.  This Agreement has been duly authorized, executed, and delivered by the Operator and, assuming due execution and delivery by the District, constitutes a legal, valid, and binding agreement enforceable against the Operator in accordance with its terms.

2.2.3        <u>No Violation of Agreements, Articles of Incorporation or Bylaws</u>. The consummation of the transactions contemplated by this Agreement and the fulfillment of the terms hereof do not conflict with, nor will they result in a breach of any of the terms and provisions of, or constitute a default under any indenture, mortgage, deed of trust, lease, loan agreement, license, security agreement, contract, governmental license or permit, or other agreement or instrument to which the Operator is a party or by which its properties are bound, or any order, rule, or regulation of any court or any regulatory body, administrative agency, or department, except for any such conflict, breach, or default which would not materially and adversely affect the Operator's ability to perform its obligations under this Agreement, and do not conflict with, nor will they result in a breach of any of the terms and provisions of, or constitute a default under, the Articles of Incorporation (or other corresponding charter document) or Bylaws of the Operator.

2.2.4        <u>No Defaults Under Agreements</u>. The Operator is not in default, nor is there any event in existence which, with notice or the passage of time or both, would constitute a default by the Operator, under any indenture, mortgage, deed of trust, lease, loan agreement, license, security agreement, contract, governmental license or permit, or other agreement or instrument to which it is a party or by which any of its properties are bound and a default under which would materially and adversely affect the Operator's ability to perform its obligations under this Agreement.

2.2.5        <u>Compliance with Laws</u>. Neither the Operator nor its officers or directors purporting to act on behalf of the Operator have been advised, and have no reason to believe, that the Operator or such

officers and directors have not been conducting business in compliance with all applicable laws, rules, and regulations of the jurisdictions in which the Operator is conducting business including all safety laws and laws with respect to discrimination in hiring, promotion or pay of employees or other laws affecting employees generally, except where failure to be so in compliance would not materially and adversely affect the Operator's ability to perform its obligations under this Agreement.

2.2.6     <u>No Litigation</u>. There is not now pending or, to the knowledge of the Operator, threatened, any action, suit, or proceeding to which the Operator is a party, before or by any court or governmental agency or body, which might result in any material adverse change in the Operator's ability to perform its obligations under this Agreement, or any such action, suit, or proceeding related to environmental or civil rights matters; and no labor disturbance by the employees of the Operator exists or is imminent which might be expected to materially and adversely affect the Operator's ability to perform its obligations under this Agreement.

2.2.7     <u>Court Orders</u>. The Operator has reviewed and is familiar with the Court Orders.

2.2.8     <u>Taxes</u>. The Operator has filed all necessary federal, state, and foreign income and franchise tax returns and has paid all taxes as shown to be due thereon; and the Operator has no knowledge of any tax deficiency which has been or might be asserted against the Operator which would materially and adversely affect the Operator's ability to perform its obligations under this Agreement.

2.2.9     <u>Financial Statements</u>. The Operator has delivered to the District copies of the following 10-K Reports filed with the Securities and Exchange Commission and audited financial statements contained in its annual reports, with appended notes and summary of significant accounting policies which are an integral part of the statements at December 31, 1991, 1992, 1993, 1994 and 1995, statements of income, shareholders' equity, and changes in financial position of the Operator for the years ending December 31, 1991, 1992, 1993, 1994 and 1995. Such financial statements fairly present the financial position of the Operator at the dates shown and the results of its operations for the periods covered, and have been prepared in conformity with generally accepted accounting principles applied on a consistent basis, except as discussed in the notes to the financial statements.

2.2.10    <u>No Adverse Change</u>.  Since the date of the Operator's most recent balance sheet provided to the District, there has not been any material adverse change in the Operator's business or condition, nor has there been any change in the assets or liabilities or financial condition of the Operator from that reflected in such balance sheet which is material to the Operator's ability to perform its obligations under this Agreement and which was not disclosed in its 10-Q filed with the Securities and Exchange Commission for the Operator's Quarterly Period ended June 30, 1996 and furnished to the District.

2.2.11    <u>Disclosure</u>.  There is no material fact which materially and adversely affects, or in the future, which could (so far as the Operator can now reasonably foresee) materially and adversely affect the Operator's ability to perform its obligations under this Agreement which has not been accurately set forth in this Agreement or otherwise accurately disclosed in writing to the District by the Operator prior to the date hereof.

2.3    <u>Continuing Representations</u>.  On or before January 1 of each year during the Term, the Operator shall deliver to the District Representative a certificate that the representations, warranties and covenants of the Operator were true when made and are true as of the date of the certificate.

2.4    <u>Survival of Representations</u>.  The representations, warranties and covenants of the District and the Operator made pursuant to the terms of this Agreement shall survive the termination of this Agreement.

## ARTICLE 3
## TERM

3.1    <u>Term</u>.  This Agreement shall become effective on the date first written above. The term of this Agreement shall commence on the Service Commencement Date and shall continue in full force and effect until midnight of the last day of the 240th calendar month following the Service Commencement Date, unless earlier terminated upon the occurrence of one of the following events:

(a)    the end of the Fiscal Year in which an Event of Nonappropriation occurs or, if the Congress of the United States has not adopted at the end of a Fiscal Year a budget for the District for the succeeding Fiscal Year, the end of the period for which funds have been appropriated and are available for payment of amounts due hereunder;

(b)     the occurrence of an Event of Default and the District elects to terminate this Agreement pursuant to Section 9.1 hereof; or

(c)     the District's exercise of its option to terminate this Agreement pursuant to Section 7.6 hereof.

## ARTICLE 4
## FACILITY AND EQUIPMENT

4.1     Use of the CTF.  On the Service Commencement Date, the District shall grant the Operator the use, possession and control of the CTF, subject to the District's rights to enter and inspect the CTF, as provided herein.   The District makes no representation as to the condition of, or its title to, the CTF, except as provided herein or in the Deed.  The District shall assign to the Operator any warranties related to the CTF, to the extent permitted by the terms of such warranties, from construction contractors or subcontractors or from manufacturers or suppliers of items used in the CTF.  The District hereby appoints, to the extent permitted by law, the Operator to prosecute any claims in the District's behalf with respect to warranties that cannot be assigned to the Operator.

4.2     Additional Property.  From time to time during the Term of this Agreement, the Operator, at its cost and expense, may place additional property at the CTF.   Upon the expiration of the Term of this Agreement, such additional property shall become the property of the District.

4.3     Office Space.  The Operator shall permit the District to continue using, at no cost, the office space currently assigned to DOC's human resources, case management and inmate finance department at the CTF, and shall provide adequate office space, in the CTF, at no cost to the District, for the District Representative, the Contract Monitor and a staff of four (4) person(s).   The Operator shall permit these employees to use its office equipment and telecommunications equipment except DOC shall be liable for payment of long distance charges. The offices provided to DOC staff shall be sufficiently close to the offices of the Operator's administrative staff so as to permit reasonable access to and communication with the administrative staff of the Operator assigned to the CTF.

## ARTICLE 5
## SCOPE OF SERVICES

5.1     General Duties and Obligations: Operating Standards and DOC Policies.  The Operator shall operate, maintain and manage the CTF in compliance with this Agreement and all applicable provisions of the Constitution and laws of the United States and the District, the ACA Standards, Court Orders, the Requirements, the Solicitation, the Operator's Proposal and DOC Policies (collectively, the "Operating Standards"), which provisions are effective as of the Service Commencement Date or become effective during the Term of this Agreement.  The terms of the Solicitation and the Operator's Proposal are incorporated herein and made a part

of this Agreement by reference.  The services provided by the Operator shall, at a minimum, provide the level of prison services and protection to the inmates and the public that are currently being offered as of the date of this Agreement.  The Operator will not accept more than 898 inmates, including inmates assigned to the infirmary and the special management unit, for incarceration at the CTF.

The accreditation and/or reaccreditation of the CTF's operations by the American Correctional Association shall be determinative of the Operator's compliance with ACA Standards with respect to the operation of the CTF.  The CTF is not currently accredited by the American Correctional Association.  The Operator shall obtain such accreditation of the CTF not later than two years after the Commencement Date.  In addition, beginning not later than six months after the Commencement Date, the Operator shall cause the CTF to be operated and maintained in accordance with the standards required by the Court Orders.

5.1.1    Priority of Standards for Operation.  If there is a conflict regarding the standards for operation among the terms of this Agreement, the Solicitation, the Operator's Proposal, the Requirements, the Court Orders, the Standards and DOC Policies, the conflict shall be resolved by compliance with the most stringent terms of the various standards, as determined by DOC.  Notwithstanding the foregoing, if there is a conflict between the Requirements and this Agreement, the terms of this Agreement shall control.

If the Operator concludes that a waiver of or a deviation from a term of this Agreement, the Requirements, the Standards and/or DOC Policies is appropriate, the Operator shall request in writing the District's approval of the waiver or deviation.  No such waiver or deviation shall be permitted until approved by the District in writing.

5.1.2    Meetings of DOC and Operator's Representative.  The District Representative shall be responsible for the day-to-day activities of the District with respect to this Agreement and the Operator's Representative shall be responsible for the Operator's day-to-day activities under this Agreement.  The DOC and the Operator's Representatives shall meet regularly, but no less often than weekly, to review the operation of the CTF and in particular to identify and address any issues with respect to the Operator's performance under this Agreement.  All notices with respect to the Operator's discharge of its duties, including those performed by its subcontractors, shall be delivered to the Operator's Representative.

5.2    Transition.  DOC and the Operator shall consult in the development of a transition plan providing for the orderly transfer of the operation of the CTF to the Operator.  The parties shall use their best efforts to complete the transition plan by December 5, 1996.  If DOC has

not accepted a transition plan by January 1, 1997, the District, at its option, may extend the Service Commencement Date or may terminate this Agreement. The Operator shall confer with such agencies and departments of the District and the United States government, as the District may request from time to time, regarding its operation of the CTF and the procedures for effecting the transfer of the CTF to private operation.

5.2.1    Operations Manual. The Operator shall prepare a manual (the "Operations Manual") providing detailed instructions to its personnel regarding the operation of the CTF. The Operations Manual shall be in form and substance satisfactory to the District. The Operator shall deliver a draft of the Operations Manual to the District by December 5, 1996. The District shall furnish the Operator its comments within thirty (30) days after its receipt of the draft of the Operations Manual. The District and the Operator shall use their respective best efforts to complete the negotiation of the Operations Manual by January 15, 1997. If the District has not approved the Operations Manual and the Operator's policies and procedures not contained in the Operations Manual by January 15, 1997, the District, at its option, may extend the Service Commencement Date or may terminate this Agreement.

5.2.2    Staffing Plan. In connection with the development of the transition plan, the District and the Operator shall cooperate in reformatting the Staffing Plan so that the Vacancy Deficiencies provided for in Section 5.4.2 of this Agreement can be determined by reference to the Staffing Plan.

5.2.3    Employment of Current Employees. The Operator shall make a bona fide offer of employment, as an employee of the Operator, on a right of first refusal basis to each DOC employee coded to and assigned to the CTF. Additionally, any DOC employee impacted by an agency-wide reduction-in-force (RIF) as a result of the implementation of this Agreement shall be treated as a CTF employee, and therefore shall also be granted first-right-of-refusal status with the Operator. The only condition for employment shall be passing a drug test and a criminal background investigation. All such CTF employees hired by the Operator shall be offered positions at their respective current salaries and with comparable benefits. Any CTF employee accepting a position with the Operator shall be credited with his or her accrued District government sick leave up to a maximum of forty (40) hours.

5.2.4    Collective Bargaining. The Operator recognizes the right of employees at the CTF to organize and join labor unions and shall

recognize any properly constituted and duly elected bargaining unit of its employees at the CTF.

5.2.5    DOC Policies.  At or prior to the time the District delivers its comments on the initial draft of the Operations Manual pursuant to Section 5.2.1 hereof, the District shall notify the Operator of what additional District policies and procedures, if any, it believes should be included as part of the DOC Policies.  The Operator shall promptly advise the District if it agrees to the addition of those District policies and procedures to the DOC Policies and the adjustment, if any, to the Per Diem Rate required by the amendment to the DOC Policies.  A copy of each of the DOC Policies shall be included in the Operations Manual.

5.3    Repairs and Improvements to the CTF.  The Operator shall arrange for the repairs and improvements to the CTF described in Exhibit B of the Lease.

5.4    Operation of CTF.  The Operator shall assume responsibility for operation of the CTF on the Service Commencement Date, which will be no later than 90 days after execution of this Agreement by the District.  The Operator shall provide the services specified in this Agreement and the Solicitation, including the Requirements and Quality Assurance Plan, and the Operator's Proposal and shall deliver these services in accordance with the Operating Standards. The Operator shall be obligated to provide at its own expense all equipment and furnishings, supplies and personnel necessary to discharge its obligations hereunder (except that the initial items of equipment and furnishings listed in Exhibit A of the Lease shall be made available to the Operator by the District, but shall be replaced when necessary at Operator's expense).  By way of explication and not limitation, the Operator's duties and obligations hereunder shall include, but are not limited to, each of the following:

5.4.1    Staffing.  At all times during the Term, the Operator shall provide adequate staffing for the CTF.  At a minimum, the Operator shall provide staffing for the CTF in accordance with the terms of the Staffing Plan.  The Operator shall not amend or modify the Staffing Plan without the prior written consent of DOC.

5.4.2    Staff Vacancies.  If at any time during the Term, the vacancy rate in any of the job categories identified in the Staffing Plan is more than five percent (5%) of the designated staffing level for that category of job, a Vacancy Deficiency shall be deemed to exist with respect to such job category.  The Operator shall use its best efforts to eliminate the Vacancy Deficiency by filling those positions with full time employees as soon as possible but no later than sixty (60) days after the Vacancy Deficiency occurs with respect to Critical Positions and no later than ninety (90) days after the Vacancy Deficiency occurs with respect to Operational

Positions. During the applicable cure period, the Operator may use temporary employees or transfer employees from other assignments to fill the positions creating the Vacancy Deficiency provided that the employees utilized for these purposes are qualified for the job assignment and their transfer does not adversely affect the Operator's ability to provide the services to be delivered by the unit from which the employees are transferred. The Operator shall use its best efforts to minimize the use of employee overtime to meet staffing needs created by staff vacancies. In addition to any other rights or remedies the District may have hereunder, and except where the District has consented to an extension of time following a written request for an extension submitted by the Operator, the Operator shall pay the District $100 per day for each vacant position in any job category for which there is a Vacancy Deficiency for more than sixty (60) days with respect to Critical Positions and for more than ninety (90) days with respect to Operational Positions. For purposes of determining the Operator's liability for the $100 per day penalty only, the use of temporary or transferred personnel as permitted by this Section 5.4.2 during the applicable cure period shall be considered as personnel staffing the vacant positions.

5.4.3      Transfer/Assignment of Inmates. The Operator shall have no authority to transfer and/or assign inmates into or out of the CTF, whether or not such inmates are or are not inmates in the custody of DOC. DOC shall transfer inmates into and out of the CTF in accordance with DOC's practices and policies in effect at the time of each transfer. DOC will assign only medium security and minimum security inmates to the CTF general population. DOC may assign maximum security inmates to the CTF special management unit. DOC may assign inmates of any classification to the system-wide infirmary at the CTF. The Operator may not refuse to accept the assignment of any inmate to the CTF, but if the Operator believes that an inmate has been erroneously assigned to the CTF or warrants transfer, it may request his or her transfer in accordance with DOC policies and practices. DOC will use its best efforts, consistent with the requirements of the entire prison system, to transfer inmates to facilities other than the CTF who are not classified as medium security prisoners as soon as the reason for their assignment to the CTF has been satisfied.

5.4.4      Religious Services. The Operator shall provide separate physical space for, and shall offer, religious programs for all recognized faith groups at the CTF in accordance with applicable Operating Standards.

5.4.5        Medical Services.  In providing the medical services required by this Agreement, the Operator shall adhere to a system of delivery in accordance with the Operations Manual and guidelines established by the American Correctional Association and the National Commission on Correctional Health Care.

Services shall include the following:

1.    Diagnostic/intake services, including inter-institutional transfers;
2.    Primary care services, including sick call to general and lock-down populations;
3.    Medical and surgical specialty clinics;
4.    Emergency care;
5.    System-wide infirmary services;
6.    Dental services;
7.    Pharmacy services;
8.    Special medical and dental diets;
9.    Reproductive and pregnancy-related care;
10.   Vision services;
11.   Laboratory services;
12.   Radiology services;
13.   Physical medicine and physical therapy services;
14.   Medical records;
15.   Quality assurance/quality improvements;
16.   Mortality and peer review;
17.   Biohazardous waste collection and disposal;
18.   Infection control;
19.   Management information system;
20.   Staff development and training;
21.   Chronic illness care;
22.   Treatment, management, and control of TB, HIV/AIDS and other infectious diseases;
23.   Mental health services;

The primary care patient management program shall be under the guidance of a health care administrator, supported by a physician medical director who in conjunction with the appropriate care provider shall have final responsibility for clinical decisions.

To provide for cost-effective inmate care, Operator shall be responsible for (a) all outpatient costs except for outpatient services delivered at DCGH, and (b) all costs for inpatient care delivered at DCGH which is not in conformity with Medicare utilization review guidelines.  Operator shall establish a system of on-site

specialty clinics which minimizes the need for off-site medical services. For outpatient care at DCGH and for DCGH inpatient care provided in conformity with Medicare Utilization Review guidelines, ~~Operator will verify all billings and forward such to the District for direct payment to the service provider~~. Operator will cooperate fully and completely with any concurrent and/or retrospective DOC utilization review program, and shall complete and provide to DOC monthly utilization reports for all off-site services.

If there is a disagreement as to whether medical services were provided in accordance with Medicare utilization review guidelines and otherwise in accordance with this Agreement, the dispute resolution process shall determine whether the District or the Operator shall pay the costs for such care.

The Operations Manual shall contain complete policies and procedures to address all components of the health care delivery system. The policies and procedures for the delivery of medical and mental health services shall be modelled on, and contain provisions of similar content and detail as, the policies for Metro-Davidson County submitted as part of Operator's Proposal. On-site medical facilities shall be adequately equipped and staffed to meet the guidelines of the American Correctional Association and the National Commission on Correctional Health Care and to fulfill the current mission of the facility.

All health care personnel shall comply with District and Federal regulations regarding all aspects of professional practice. All practitioners shall provide care only within the legal scope of their licensure, and all non-physician/non-dentist providers will practice under applicable protocols.

The Operator, designated DOC personnel, the Medical Receiver of the Central Detention Facility, and other parties involved in the direct delivery of clinical care to DOC inmates shall develop admission and discharge criteria for the system-wide infirmary to ensure continuity of care. These criteria shall be submitted to the Director of DOC for review and approval at least 60 days before the Service Commencement Date.

5.4.6    Food Service. The Operator shall provide food services for all inmates in compliance with applicable Operating Standards. The menu of meals for inmates on regular diets will be prepared so as to provide a minimum of 3000 calories per day. The Operator

shall provide supplemental diets, as prescribed by physicians or dieticians, to inmates with HIV/AIDS, to pregnant inmates and to inmates with other medical conditions requiring supplements to the regular diet. Food shall not be withheld for disciplinary reasons. Restricted or special diets, prescribed by recognized medical or religious authority, will be provided as required. Food service personnel will be responsible for knife, key and tool control, safety standards and sanitation procedures. A professional pest control company shall also be retained to provide fumigation and extermination services on at least a monthly basis.

5.4.7    Inmate Furnishings and Laundry. The Operator shall ensure that, at a minimum, each inmate room shall have a bed, mattress, pillow, study desk, supply of bed linen, chair, adequate lighting, ventilation and closet or locker space. The Operator shall provide full inmate laundry services and inmate clothing in compliance with applicable Operating Standards.

5.4.8    Transportation and Off-Site Security. The District shall provide, at its expense, full transportation and security services with respect to all inmates transported to and from the CTF in connection with transfers to and from other facilities in the District prison system and to and from other correctional facilities. The Operator, at its expense, shall arrange for or directly provide transportation and security services for inmates assigned to the CTF with respect to travel outside of the CTF, including transfers to and from courts, medical service providers located outside the CTF and visitations at locations other than the CTF; such transportation services shall be provided within a fifty mile radius of the District of Columbia.

5.4.9    Reports. The Operator shall furnish the District Representative monthly reports regarding the operational and financial aspects of the CTF. The Operator shall also provide DOC a report describing any repairs or capital improvements planned for or undertaken at the CTF during the month. The operational report shall call for disclosure of any difficulties experienced by the Operator in satisfying the requirements of this Agreement or any difficulties or defaults encountered by the Operator in its dealings with a subcontractor. Each report shall be delivered to the District Representative within thirty (30) days after the end of the month for which the report has been prepared. The report shall be in a form acceptable to the District Representative and the operational report shall at a minimum summarize the information currently contained in the DOC's executive management summary report in

addition to other information requested by DOC to be included in such reports.

5.4.10    Library.  The Operator shall provide a library consisting of literary, legal, educational and reference materials which is in compliance with the applicable Operating Standards.  The legal materials in the library together with any attorneys and paralegals made available to inmates at the Operator's expense shall be sufficient to provide inmates with adequate access to the courts. The Operator shall also provide adequate paper, pens, typewriters, postage and envelopes to those inmates who are indigent and shall provide adequate facilities for the visually and hearing impaired.

5.4.11    Visitation.  The Operator shall provide adequate space, furniture, equipment and the supervision necessary to implement a visitation program.  The Operator shall maintain a non-contact visitation program for inmates in the special management unit of the CTF, inmates undergoing evaluation in the reception and diagnostic unit and special handling inmates assigned to the CTF infirmary.  The Operator shall also maintain a contact visitation program for other inmates.  The visitation programs shall be operated in accordance with the applicable Operating Standards.

5.4.12    Inmate Finance and Canteen Services.  The inmate finance and canteen services to be provided by the Operator shall include the operation of a commissary for the inmates and the establishment and maintenance of a system to account for inmate funds as provided for in the Operating Standards.  Only commercially prepared and purchased items shall be offered for sale in the commissary.  No contraband items, homemade items or donated items shall be sold.  The Operator shall charge prices for goods that are consistent with the prices charged for similar goods in other commissaries within the DOC prison system.  Any profits, which shall be considered to be gross revenues minus expenses, realized from the operation of the commissary shall be deposited in the Inmate General Welfare Fund which fund shall be dedicated to providing for the morale and welfare of the inmates and which cannot be used to pay expenses for which the Operator is liable under this Agreement.

5.4.13    Inmate Work, Training and Substance Abuse Programs.  The Operator shall have sufficient programming to allow every general population prisoner to participate in meaningful educational, vocational, drug treatment or work programs complying with the ACA Standards and the Operating Standards.  The Operator will

give priority to women in the selection of participants for training programs and in the placement in jobs within the CTF. In recognition of the CTF's role as the principal prison for women inmates in the District prison system, the Operator shall continue the DOC's practice of providing programs focused on the needs of women inmates, including intensive vocational and educational programs, substance abuse programs, services for pregnant inmates and other programs required by the Court Orders. The Operator shall develop, in consultation with DOC, a substance abuse program that is satisfactory to DOC. Portions of the program requiring services outside of the CTF, such as half-way house counseling services, shall be administered by DOC.

5.4.14    Discipline.    The Operator will adopt DOC's policies and procedures with respect to discipline.

5.4.15    Cooperation.    The Operator shall cooperate with the District and third party service providers, in connection with the management of the entire prison system. The Operator shall cooperate with the District and replacement operators for the CTF upon the termination of this Agreement.

5.4.16    KRONOS System.    The Operator shall purchase the KRONOS automated time and attendance system installed at the CTF at a price to be agreed upon between the Parties.

5.4.17    Use of Force.

(a)    The Operator's employees shall be authorized to carry and use weapons only:

1.    While patrolling the perimeter grounds of the CTF;
2.    While transporting inmates;
3.    While pursuing escapees from the CTF; and
4.    While CTF is in a state of emergency.

and then only in accordance with the Operating Standards and the Operations Manual.

(b)    The Operator's employees shall be authorized to use non-deadly force as the circumstances require and then only in the following situations:

1.    To prevent the commission of a felony or misdemeanor, including escape;

2.    To defend themselves or others against physical assault;

3.    To prevent serious damage to property;

4.    To enforce institutional regulations and orders; and

5.    To prevent or quell a riot.

(c)    The Operator's employees shall use deadly force in accordance with federal law, the laws of the District and the Operating Standards. Deadly force is to be used only as a last resort and then only in the following situations: to prevent escape from inside the perimeter of the CTF, or to prevent the loss of life or serious bodily harm.

Employees of the Operator shall be authorized to carry and use firearms in the course of their employment only after completion of a training program with a score that would qualify the employee under DOC policies to serve as a correctional officer able to transport inmates. The training program shall be comparable to DOC's firearm training program and is in accordance with regulations and procedures of the Operator which DOC has reviewed and approved.

5.5    Operator Policies and Procedures.

5.5.1    The Operator shall develop and submit to the District Representative for its review and approval pursuant to Section 5.2.1 hereof, as soon as each is available, but not later than thirty (30) days prior to the Service Commencement Date, all policies and procedures related to the operation and management of the CTF in addition to those contained in the Operations Manual. Such policies and procedures shall include, if not adequately addressed in the Operations Manual, a training plan, an emergency response plan, an inmate record and report system and a grievance procedure for inmates. Amendments and revisions to such policies and procedures shall be submitted to the District Representative as soon as each is available but no later than forty-five (45) days prior to the proposed effective date of the amendment or revision. No amendment or revision shall become effective if prior to its effective date the District Representative advises the Operator that DOC does not accept the proposed amendment or revision. If DOC and the Operator cannot agree on the terms of the proposed amendment or revision within thirty (30) days of its scheduled effective date, either DOC or the Operator may invoke the dispute resolution provisions of Article 11 hereof.

The Operator shall implement and strictly adhere to the policies set forth in the Operations Manual. The failure to do so shall constitute a material breach of this Agreement.

The Operations Manual shall contain, at a minimum, policies and procedures that govern:

(a)     the delivery of medical, mental health and dental services (theses policies shall include, but not be limited to, each element of the policies and procedures for health services contained in the Operator's Proposal, appropriately revised to accommodate the specific conditions at the CTF);

(b)     the delivery of educational, vocational and rehabilitative programs to prisoners;

(c)     the operation of the inpatient, intensive drug treatment program; and

(d)     reception and diagnostic services.

5.5.2     DOC shall furnish the Operator a Quality Assurance Plan at least fifteen (15) days prior to the Service Commencement Date revised to reflect the negotiations between the Parties subsequent to the issuance of the Solicitation. The Quality Assurance Plan shall set forth some, but not all, of the criteria to be considered in the evaluation of the Operator's performance. Amendments and revisions to the Quality Assurance Plan shall be deemed mandatory if the amendments and revisions are made in response to Changes of Law. Amendments and revisions to the Quality Assurance Plan which are not mandatory shall be delivered to the Operator thirty (30) days prior to their respective effective dates and the Operator shall provide DOC with its comments, if any, on the amendment or revision no later than ten (10) days prior to the effective date of the amendment or revision as stated in such amendment or revision.

5.5.3     The Operator shall audit at least annually, using personnel other than employees assigned to the CTF, its compliance with the terms of this Agreement and the Operating Standards. A written report of the results of the audit shall be prepared within thirty (30) days of the completion of the audit. The Operator shall furnish DOC a copy of the audit results within fifteen (15) days of completion of the audit report.



5.6    <u>Out-of-State Inmates</u>.  DOC shall have the right to place appropriately classified, out-of-state inmates at the CTF consistent with the District's witness protection program and interstate agreements.  DOC shall pay the Operator for the housing of such inmates as if they were inmates of DOC.


# ARTICLE 6
## MAINTENANCE, CAPITAL IMPROVEMENTS, AND CONDEMNATION

6.1    <u>Maintenance</u>.  Throughout the Term of this Agreement, the Operator shall, at its own expense, maintain the physical structure of the CTF and all tangible personal property contained therein in accordance with the Operating Standards, and shall, in so doing, maintain, preserve and keep the CTF in good repair, working order and condition, subject to normal wear and tear.  The Operator shall, from time to time, make, or cause to be made, all repairs and replacements necessary for the CTF and the tangible personal property therein to be maintained in accordance with applicable Operating Standards.

6.2    <u>Capital Improvements</u>.  During the Term of this Agreement renovations and capital improvements to the CTF in addition to the repairs and improvements referred to in Section 5.3 hereof, will be required in order for the CTF to meet the Operating Standards and the accreditation requirements of the American Correctional Association.  Although the specific, additional renovations and capital improvements to be made cannot be identified at the time this Agreement is executed, the Operator acknowledges that such renovations and capital improvements will be required and agrees that it, at its own expense, shall make the necessary renovations and capital improvements for the CTF and the tangible personal property therein to satisfy the conditions set forth in the Operating Standards and for the CTF to maintain its accreditation by the American Correctional Association.

6.3    <u>Damage, Destruction and Condemnation</u>.  The Operator shall promptly notify the District Representative of any damage to or loss of the CTF that materially affects the continued operation of the CTF.  The Operator shall repair, rebuild or replace the CTF to restore it to its condition prior to such damage or loss.  The District shall make available to the Operator the proceeds of any property insurance it receives in connection with the damage to or loss of the CTF.  The District shall have the right to approve all plans for the repair, rebuilding or replacement of the CTF prior to the commencement of any repair or construction and shall have the right to inspect the CTF during any period of such repair or construction and upon completion thereof.  Upon completion of the repair or construction, the Operator shall obtain the appropriate reaccreditation, if any, of the CTF.  The Operator, at its sole cost and expense, shall immediately arrange for the incarceration of the inmates assigned to the CTF during any period of repair or construction of the facility.  If the federal government condemns the CTF in an exercise of its eminent domain powers, the taking shall be deemed a termination of this Agreement for cause.  Any payment received by the Operator in connection with the taking shall be paid to the District.

6.4    Maintenance Letter of Credit.  On or before the Service Commencement Date, the Operator shall post a letter of credit in the face amount of $250,000 issued by First Union National Bank of Tennessee, or other bank acceptable to the District, for the benefit of the District.  The letter of credit shall be in a form acceptable to the District.  The letter of credit shall provide for the immediate payment to the District of an amount up to $250,000 no later than two (2) Business Days after receipt of a notification executed by the Mayor, the City Administrator for the District or the District Representative that the Operator has failed to meet its obligations with respect to the repair and maintenance of the CTF in accordance with the terms of this Agreement, to maintain letter(s) of credit in favor of the District in the amount of $250,000 as required by this Agreement or to deliver to the District a satisfactory replacement letter of credit thirty (30) days prior to the expiration of the then outstanding letter of credit. If there is a draw on the letter of credit, the Operator shall deliver to the District a new or additional letter of credit within thirty (30) days of such draw so that upon the expiration of such thirty (30) day period, letter(s) of credit in the aggregate amount of $250,000 shall have been issued for the benefit of the District.  The Operator shall deliver to the District thirty (30) days prior to the expiration of the letter of credit then outstanding, a replacement letter of credit in form satisfactory, and issued by a bank acceptable, to the District.

6.5    Restrictions Regarding Hazardous Substances.  The Operator, its agents, employees, contractors, affiliates, subtenants, licensees or invitees (collectively, "Operator's Persons") shall not generate, manufacture, store, dispose of or otherwise use or hold on or under or about the CTF or transport to, from or across the CTF any Hazardous Substances (as defined below in this Section 6.5) without the prior written consent of the District.  The Operator and the Operator's Persons shall at no time permit, suffer or acquiesce in any other person undertaking the foregoing without the District's written consent.  For purposes of this Article 6 and to the extent permitted by law, any acts or omissions of the Operator, the Operator's Persons or others acting for or on behalf of the Operator or the Operator's Persons (whether or not they are negligent, intentional, willful or unlawful) shall be strictly attributable to the Operator.  The Operator shall give the District at least thirty (30) days written notice of the Operator's or the Operator's Persons' intention to generate, manufacture, store, use, dispose of or transport any Hazardous Substance.  The District shall have ten (10) days in which to approve or disapprove such actions in writing.  If the Operator receives notice from any local, state or federal governmental agency of any proposed action against the Operator under or in violation of any Hazardous Substance Law pertaining to the CTF, the Operator shall promptly provide the District with a copy of such notice.  As used herein, "Hazardous Substances" means any oil, flammable explosives, asbestos, radioactive materials or wastes, medical waste, or other hazardous, toxic, contaminated or polluting materials, substances or wastes including, without limitation, any "hazardous" or "toxic" substances, wastes, or materials under any federal, state, or local law, ordinance or regulation relating to industrial hygiene, environmental protection, or the use, analysis, generation, manufacture, storage or transportation of such substances (collectively, "Hazardous Substance Law(s)").

6.6    Compliance with Hazardous Substance Handling Laws.  The Operator shall, at its own expense, comply and cause the Operator's Persons to comply with all Hazardous Substance Laws, including, without limitation, those controlling the discharge of (appropriately



treated) materials or wastes into or through any sanitary sewer serving the CTF.  Except as discharged into the sanitary sewer in strict accordance and conformity with all applicable Hazardous Substance Laws, the Operator, at its sole cost and expense, shall cause any and all Hazardous Substances removed from the CTF to be removed and transported solely by duly licensed haulers to duly licensed facilities for final disposal of such materials and wastes.  If the Operator fails to comply with the terms of this Section 6.6, the Operator shall, at its sole cost and expense, cause all contamination to be cleaned up, or all Hazardous Substances to be removed from the CTF and transported for use, storage or disposal, in accordance and compliance with all Hazardous Substance Laws.

6.7    Operator's Indemnification of the District.  The Operator hereby indemnifies the District, its employees, contractors, agents, heirs, successors, personal and legal representatives and assigns (collectively, the "Indemnified Parties") and agrees to defend (with counsel previously approved by the District in writing) and hold the Indemnified Parties harmless from and against any and all claims, demands, suits, court or administrative proceedings, losses, costs, damages, liabilities, deficiencies, fines, penalties, forfeitures, punitive damages or expenses (including, without limitation, attorneys' fees), or deaths of or injuries to (including without limitation sickness or disease, or fear of sickness or disease) any person or tangible or intangible damage to any real or personal property, whatsoever, incurred by, arising out of, or based upon or resulting from (a) the Operator or the Operator's Persons' failure to perform or observe any of its obligations or agreements under this Article 6; (b) the presence, release, threatened release, use, analysis, generation, discharge, storage, disposal or transportation of any Hazardous Substance under, in or about, to or from the CTF occurring during the Term of this Agreement (and not directly resulting from any negligent or intentional acts of the Indemnified Parties seeking indemnity or conditions in existence as of the Service Commencement Date); and (c) the Operator's or the Operator's Persons' failure to comply with any Hazardous Substance Law.  The Operator's obligations hereunder shall include, without limitation, and whether or not foreseeable, liability for compensation for lost wages, business income, profits, or other economic loss, damage to the natural resources or the environment (including, without limitation, damage to the soil, groundwater or other water supplies), nuisance, pollution, contamination, leak, spill, release or any and all other adverse effects on the environment, and all costs of any remedial action, closure, repair, cleanup or detoxification or decontamination of the CTF (including, without limitation, restoration of water supplies), as determined necessary by the District in its sole discretion.  The foregoing indemnification shall survive the expiration or earlier termination of this Agreement.

6.8    Remedial Action.  Notwithstanding the foregoing, the District may, at its sole option (but without any obligation to do so), (a) undertake any remedial action to remove any Hazardous Substance from the CTF or clean-up any contamination resulting from the Operator's or the Operator's Persons' use of the CTF, and/or (b) participate in any proceeding under any Hazardous Substance Law against the Operator or relating to the CTF arising from the Operator's or the Operator's Persons' use of the CTF.  Such actions or proceedings by the District shall be at the Operator's sole cost and expense unless such actions or proceedings directly result from any negligent or intentional acts of any Indemnified Party or conditions in existence as of the Service Commencement Date.

6.9    Discovery of Hazardous Substances.  If the Operator determines or has reasonable cause to believe that any Hazardous Substance is located on or beneath the CTF, then upon such discovery or suspicion of the presence of the Hazardous Substance the Operator shall immediately give written notice of that condition to the District.

## ARTICLE 7
## COMPENSATION AND OTHER PAYMENTS

7.1    Daily Service Fee.  The District shall pay the Operator a fee (the "Daily Service Fee"), during the Term of this Agreement, beginning on the Service Commencement Date.

    7.1.1    Computation of Daily Service Fee.  The Daily Service Fee for each day shall be equal to the product of the Per Diem Rate multiplied by the number of inmates recorded on the Midnight Census Report for such day.  A copy of each Midnight Census Report shall be sent to the Contract Monitor within twenty-four (24) hours of its preparation.  The Per Diem Rate for the period between the Service Commencement Date and December 31, 1997, shall be $70.40.

    7.1.2    Annual Adjustment to Per Diem Rate.  The Per Diem Rate shall be adjusted annually on each January 1 commencing January 1, 1998 by an amount equal to three percent (3%) of the Per Diem Rate in effect on the prior December 31.

    7.1.3    Change of Law.

        7.1.3.1    Increase in Per Diem Rate.  Upon the occurrence of a Change of Law, the Operator shall use its best efforts to continue to operate the CTF for the existing Per Diem Rate.  The Operator shall be entitled to an equitable adjustment to the Per Diem Rate if the Change(s) in Law individually or in the aggregate has the effect of materially increasing the cost to the Operator of discharging its obligations hereunder.  The adjustment to the Per Diem Rate shall be an amount sufficient to compensate the Operator for the increased costs it incurs in complying with the Change of Law.  The Operator shall submit to the District a proposed schedule of increases to the Per Diem Rate and documentation identifying the Change of Law, the Operator's suggestions for complying with the Change of Law, alternatives available for complying with the