Change of Law and the amount of the Operator's increased costs. The District shall advise the Operator if it accepts the Operator's proposed increases to the Per Diem Rate within thirty (30) days of receipt of the schedule of rate increases. In lieu of accepting an increase to the Per Diem Rate, the District has the option of: (i) terminating this Agreement with the termination being considered at termination for cause for purposes of the Lease; or (ii) modifying the Operator's scope of work hereunder in order to permit it to continue operating or assisting in the operation of the CTF at the then current Per Diem Rate. If the District and the Operator have not agreed on the amount of the increase, if any, to the Per Diem Rate because of a Change of Law within sixty (60) days after receipt of the schedule of proposed increases to the Per Diem Rate, either Party may invoke the dispute resolution provisions of Article 11 hereof. If the effect of the Change(s) of Law, individually or cumulatively, is sufficient to require under applicable law a new procurement of the services being provided hereunder, this Agreement shall be terminated upon the transfer of the operation of the CTF at the District's option to either the District or to a successor operator, and such a termination shall be considered a termination for cause for purposes of the Lease.

7.1.3.2       Decrease in Per Diem Rate. The District shall be entitled to an equitable adjustment to the Per Diem Rate if the Change(s) in Law individually or in the aggregate has the effect of materially decreasing the cost to the Operator of discharging its obligations hereunder. The reduced Per Diem Rate shall be an amount sufficient to compensate the Operator for the services to be performed hereunder. The District shall identify for the Operator the Change of Law, the perceived reductions in Operator costs and a proposed Per Diem Rate. The Operator shall advise the District if it accepts the District's proposed decreases to the Per Diem Rate within thirty (30) days of receipt of the schedule of rate decreases. If the District and the Operator have not agreed on the amount of the decrease to the Per

Diem Rate because of a Change of Law within sixty (60) days after receipt of the schedule of proposed decreases to the Per Diem Rate, either Party may invoke the dispute resolution provisions of Article 11 hereof.

7.1.4  <u>Changes in Mission</u>.

7.1.4.1  <u>Increases in Per Diem Rate</u>.  Upon the occurrence of a Change in Mission, the Operator shall use its best efforts to continue to operate the CTF for the existing Per Diem Rate.  The Operator shall be entitled to an equitable adjustment to the Per Diem Rate if the Change(s) in Mission, individually or in the aggregate has the effect of materially increasing the cost to the Operator of discharging its obligations hereunder.  The adjustment to the Per Diem Rate shall be an amount sufficient to compensate the Operator for the increased costs it incurs in complying with the Change in Mission. The Operator shall submit to the District a proposed schedule of increases to the Per Diem Rate and documentation identifying the Change in Mission, the Operator's suggestions for complying with the Change in Mission, alternatives available for complying with the Change in Mission and the amount of the Operator's increased costs.  The District shall advise the Operator if it accepts the Operator's proposed increases to the Per Diem Rate within thirty (30) days of receipt of the schedule of rate increases.  In lieu of accepting an increase to the Per Diem Rate, the District has the option of: (i) terminating this Agreement with the termination being considered at termination for cause for purposes of the Lease; or (ii) modifying the Operator's scope of work hereunder in order to permit it to continue operating or assisting in the operation of the CTF at the then current Per Diem Rate.  If the District and the Operator have not agreed on the amount of the increase, if any, to the Per Diem Rate because of a Change in Mission within sixty (60) days after receipt of the schedule of proposed increases to the Per Diem Rate, either Party may invoke the dispute resolution provisions of Article 11 hereof.  If the effect of the Change(s)

in Mission, individually or cumulatively, is sufficient to require under applicable law a new procurement of the services being provided hereunder, this Agreement shall be terminated upon the transfer of the operation of the CTF at the District's option to either the District or to a successor operator, and such a termination shall be considered a termination for cause for purposes of the Lease.

7.1.4.2     <u>Decrease in Per Diem Rate</u>. The District shall be entitled to an equitable adjustment to the Per Diem Rate if the Change(s) in Mission individually or in the aggregate has the effect of materially decreasing the cost to the Operator of discharging its obligations hereunder. The adjustment to the Per Diem Rate shall be an amount sufficient to compensate the Operator for the services to be performed hereunder. The District shall identify for the Operator the Change in Mission, the perceived reductions in costs to the Operator and a proposed Per Diem Rate. The Operator shall advise the District if it accepts the District's proposed decreases to the Per Diem Rate within thirty (30) days of receipt of the schedule of rate decreases. If the District and the Operator have not agreed on the amount of the decrease to the Per Diem Rate because of a Change in Mission within sixty (60) days after receipt of the schedule of proposed decreases to the Per Diem Rate, either Party to this Agreement may invoke the dispute resolution provisions of Article 11 hereof.

7.1.5     <u>Limitation on Adjustments</u>. The Per Diem Rate shall not be adjusted except as provided in Sections 7.1.2, 7.1.3 and 7.1.4 hereof.

7.2     <u>Billing</u>. The Operator shall bill the District monthly in arrears for the Daily Service Fees due under Section 7.1. Each invoice shall be a certified statement identifying the number of inmates included in each day's Daily Service Fee. Invoices shall be delivered to the District Representative. Payment by DOC shall be due forty five (45) days after its receipt of a properly documented invoice. The Operator shall provide to the District, upon request, information sufficient to enable the District to audit the Daily Service Fees submitted for payment.

7.3    Nonappropriation.  Upon the occurrence of an Event of Nonappropriation, this Agreement shall terminate and be cancelled upon the exhaustion of the funding authorized for the current Fiscal Year and the District shall have no further obligation to pay a Daily Service Fee to the Operator upon the exhaustion of such funding; provided, however, this Agreement shall remain in full force and effect for so long as the Congress of the United States has failed to approve a budget for the District for such Fiscal Year, and funds are lawfully available to the District for the payment of the Daily Service Fee and any other amounts coming due hereunder during such period.   The District shall provide the Operator with written notice of such nonappropriation as soon as possible after the Event of Nonappropriation occurs.

7.4    Operating Expenses.  The Operator shall be responsible for payment of all costs and expenses, other than taxes as provided in Section 7.5 hereof, incurred in connection with the operation of the CTF.

7.5    Taxes.  The Operator shall pay all taxes assessed in connection with the operation and use of the CTF during the Term of this Agreement except for those taxes for which the District is liable under the terms of the Lease.

7.6    Termination for Convenience.   DOC may terminate this Agreement for convenience without cause by giving written notice to the Operator, at least ninety (90) days prior to the effective date of such termination.   Upon a termination for convenience, the Operator shall be entitled to receive, and shall be limited to, just and equitable compensation for any satisfactory authorized work completed as of the date of termination.

## ARTICLE 8
## EMPLOYEES

8.1    Independent Contractor.  The Operator is associated with the District only for the purposes of and to the extent set forth in this Agreement.  In respect to the delivery of the services provided for in this Agreement, the Operator is and shall remain an independent contractor and, subject to the terms of this Agreement, shall have the sole right to supervise, manage, operate, control, and direct the performance of its duties under this Agreement. Nothing contained in this Agreement shall be deemed or construed to create a partnership or joint venture, to create the relationships of an employer-employee or principal-agent, or to otherwise create any liability for the District whatsoever with respect to the indebtedness, liabilities, and obligations of the Operator, its subcontractors, or any other party.  The Operator shall be solely responsible for, and the District shall have no obligation with respect to, payment of all Federal income, F.I.C.A., and other taxes owed or claimed to be owed by the Operator, arising out of the Operator's association with the District pursuant to this Agreement.  The Operator shall indemnify and hold the District harmless from and against, and shall defend the District against any and all losses, damages, claims, costs, penalties, liabilities, and expenses howsoever arising or incurred because of, incident to, or otherwise with respect to any such taxes.  The Operator, its agents and employees shall not, as a result of this Agreement, accrue

leave, retirement, insurance, bonding, the right to use of District vehicles, or any other benefits afforded to employees of the District.

8.2    Subcontractors.  The Operator shall not subcontract any of its material obligations and responsibilities hereunder without the prior written consent of the District.  If the District agrees to the Operator subcontracting some of the services or work to be performed under this Agreement, the Operator hereby guarantees that any subcontractor shall comply with the terms of this Agreement, including the delivery of its services or the performance of its work in accordance with the Operating Standards.  The Operator shall remain responsible for the delivery of all services and the performance of all work in accordance with the terms of this Agreement, regardless of whether some or all of such services or work are subcontracted.  A subcontractor's failure to comply with the terms of this Agreement shall be deemed a failure by the Operator to comply with the terms of this Agreement.  No contractual relationship shall exist between the District and any subcontractor and the District shall accept no responsibility whatsoever for the conduct, actions, or commissions of any subcontractor selected by the Operator.  The Operator shall deliver to the District a copy of each contract with a subcontractor within thirty (30) days after its execution of such contract.   In connection with its entering into contracts with subcontractors, the Operator shall cause the representations, warranties and covenants of the subcontractor in each such contract to be assigned to the District.

8.3    Employee Training and Background Investigation.  The Operator shall provide at a minimum the training described in the Requirements and the Operator's Proposal.  The Operator shall perform a background investigation and drug testing for each employee it hires for the CTF as set forth in the Requirements and the Operator's Proposal.  The Operator shall not assign any employee to the CTF who does not pass the background investigation and drug test.  The Operator shall include in each monthly operational report to be provided pursuant to Section 5.4.9 hereof the termination report for each employee terminated during the prior month. The Operator will present joint training sessions with DOC on topics selected by DOC or will incorporate DOC's curriculum with respect to these topics in its own training sessions.   In connection with the training of correctional officers for the CTF, DOC shall make available to the Operator its firing range and weapons qualification facilities at a price to be agreed upon by the parties.

8.4    Performance of Duties.  The Operator shall use the same degree of care and skill in the performance of its duties hereunder as a prudent person would exercise or use under the circumstances in the conduct of his or her affairs.

## ARTICLE 9
## DEFAULT AND TERMINATION

9.1    Default by Operator.  Each of the following shall constitute an Event of Default on the part of the Operator:

9.1.1       A failure to keep, observe, perform, meet or comply with any covenant, agreement, term, or provision of this Agreement to be kept, observed, met, performed, or complied with by the Operator hereunder, which failure individually or in the aggregate is material and which failure continues for a period of thirty (30) days after the Operator has received a written notice of deficiency from the District, including a failure to obtain American Correctional Association accreditation of the CTF within the twenty-four (24) months after the Service Commencement Date or to thereafter maintain such accreditation.

9.1.2       A material failure of the Operator to meet or comply with any applicable federal or state and local requirement or law, which failure continues for a period of thirty (30) days after the Operator has received a written notice of deficiency from the District.

9.1.3       A material failure of the Operator to comply with any of the Operating Standards for which the Operator has not received a prior written waiver from the District, which failure continues for a period of thirty (30) days after the Operator has received a written notice of deficiency from the District.

9.1.4       A default by the lessor under the Lease.

9.1.5       If the Operator:

(a)     admits in writing its inability to pay its debts;

(b)     makes a general assignment for the benefit of creditors;

(c)     suffers a decree or order appointing a receiver or trustee for it or substantially all of its property to be entered and, if entered without its consent, not to be stayed or discharged within sixty (60) days;

(d)     suffers a proceeding under any law relating to bankruptcy, insolvency, or the reorganization or relief of debtors to be instituted by or against it and if contested by it, not to be dismissed or stayed within sixty (60) days; or

(e)     suffers any judgment, writ of attachment or execution, or any similar process to be issued or levied against a substantial part of its property.

9.1.6      The discovery by the District that any statement, representation or warranty in any writing submitted is false, misleading, or erroneous in any material respect.

9.2    <u>Default by the District</u>. Each of the following shall constitute an Event of Default on the part of the District:

9.2.1      Failure by the District to pay <u>any undisputed Daily Service Fee</u> due hereunder within thirty (30) days after written notice such payment is due and unpaid.

9.2.2      Failure by the District to observe and perform any material covenant, condition, or agreement on its part to be observed or performed, or its failure or refusal to substantially fulfill any of its material obligations hereunder which failure continues for a period of thirty (30) days after the District has received written notice of deficiency from the Operator.

9.3    <u>Further Opportunity to Cure</u>. If an Event of Default of the type specified in Section 9.1 or 9.2 hereof has occurred, and the defaulting party reasonably believes: (a) that such Event of Default cannot be cured within the time, if any, allowed to cure such Event of Default in Section 9.1 or 9.2 hereof, and (b) that such Event of Default can be cured, through a diligent, continuing and conscientious effort on the part of the defaulting party, within a reasonable period not to exceed ninety (90) days, then the defaulting party may, within the thirty (30) day cure period, submit to the non-defaulting party a plan for curing the Event of Default. The plan shall show in detail by what means the defaulting party proposes to cure the Event of Default. Upon receipt of any such plan, the non-defaulting party shall promptly review the plan and in its sole discretion, determine if it shall grant the defaulting party the additional time to pursue its plan of cure. If the non-defaulting party permits the defaulting party to pursue its plan for curing the Event of Default, it agrees that it shall not exercise its remedies hereunder with respect to such Event of Default for so long as the defaulting party diligently, conscientiously, and timely undertakes to cure the Event of Default in accordance with the approved plan. If the non-defaulting party does not grant the defaulting party an extension of the cure period, the thirty (30) day cure period shall be tolled during the period the proposed plan of cure is pending before the non-defaulting party.

9.4    <u>Cancellation of Cure Period</u>. Notwithstanding anything to the contrary in this Agreement if any action, or failure to act, by the Operator results in any risk to the safety or welfare of the inmates assigned to the CTF, the staff of the CTF or the general public, the District may immediately initiate the action it deems appropriate to eliminate or reduce such risk, including assumption of the operation of the CTF.

9.5    <u>Remedies</u>. Upon the occurrence of an Event of Default pursuant to Section 9.1 or 9.2 hereof by one party, the other party shall have the right to pursue any remedy it may have at law or in equity, including: (a) seeking specific performance, (b) reducing its claim to

judgment, (c) taking action to cure the Event of Default, (d) terminating this Agreement and, if the Event of Default is a default of the Operator, replacing the Operator with DOC personnel or the personnel of a substitute operator, and (e) in the case of an Event of Default by the Operator, offsetting against payments due the Operator under this Agreement or the Lease amounts expended by the District to cure the Event of Default or amounts expended as a result of the Event of Default. A termination of this Agreement pursuant to this Section 9.5 shall be considered a termination for cause for purposes of this Agreement and the Lease.

9.6    Termination Due to Third Party Action. In the event that any final court order is issued enjoining the use of the CTF for the incarceration of inmates, this Agreement shall terminate, without penalty to the District or the Operator, effective as of the date that such injunction becomes effective and such termination shall be considered a termination for cause for purposes of the Lease. In such event, the Operator shall be entitled to the Daily Service Fee and payment of other amounts due for each day to and including the termination date.

9.7    Delay; Notice. No delay or omission to exercise any right or power accruing upon any Event of Default shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. In order to entitle any party to exercise any remedy reserved to it in this Agreement, it shall not be necessary to give any notice other than such notice as may be required herein.

9.8    No Remedy Exclusive. No remedy herein conferred upon the Parties in this Article 9 is intended to be exclusive, and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement or now or hereafter existing at law or in equity.

9.9    Agreement to Pay Attorney's Fees and Expenses. In the event either party to this Agreement should default under any of the provisions hereof and the non-defaulting party should employ attorneys or incur other expenses for the collection of funds or the enforcement or performance or observance of any obligation or agreement on the part of the defaulting party, the defaulting party agrees that it will on demand, in the case of the District to the extent funds are appropriated or are otherwise legally available, pay to the non-defaulting party the reasonable fee of such attorneys and such other expenses so incurred by the non-defaulting party.

9.10    No Additional Waiver Implied by One Waiver. In the event any agreement contained in this Agreement should be breached by either party and thereafter waived by the other party, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder.

9.11    Transfer of Information. Upon a termination of this Agreement for any reason, all data on the Operator's computer and information systems related to the CTF, its operation and maintenance and inmates who have been or are currently housed at the CTF shall be transferred to information systems designated by the District in a manner that such information is immediately accessible and usable on the systems to which the data has been transferred.

# ARTICLE 10
## INDEMNIFICATION, INSURANCE AND DEFENSE OF CLAIMS

10.1   Indemnification.  The Operator shall protect, defend, indemnify, save and hold harmless the District, its officers, agents, servants, employees and volunteers from and against any and all claims, demands, expenses and liability arising out of acts or omissions of the Operator, its agents, servants, subcontractors and employees in the performance of this Agreement regardless of whether any damage resulting from the Operator's act, omission or default is caused in part by the District, and any and all costs, expenses and attorneys' fees incurred as a result of any such claim, demand or cause of action including, but not limited to, any and all claims arising from:

      (a)   any breach or default on the part of the Operator in the performance of its duties and obligations under this Agreement;

      (b)   any claims or losses arising from or related to services rendered by the Operator, by any person or firm performing or supplying services, materials or supplies in connection with the performance of this Agreement;

      (c)   any claims or losses by any person or firm injured or damaged by the Operator, its officers, agents, or employees by the publication, translation, reproduction, delivery, performance, use, or disposition of any data processed under this Agreement in a manner not authorized by this Agreement, or by federal, state, or local statutes or regulations; and

      (d)   any failure of the Operator, its officers, agents, or employees to observe the laws of the United States and the District of Columbia, including but not limited to labor laws and minimum wage laws.

The Operator shall also pay to the District, in addition to any other amounts due hereunder, six hundred dollars ($600) per day, per incident for incidents which are a breach of the Operator's duties under this Agreement but do not constitute an Event of Default and one thousand two hundred dollars ($1,200) per day, per incident for incidents which, individually or collectively, constitute an Event of Default.  If the Operator disputes the District's claim that it is liable to DOC for the daily payments provided for in this Section 10.1 and the District and the Operator cannot resolve the dispute within thirty (30) days after DOC requests payment from the Operator, either party may submit the matter to the dispute resolution procedures provided for in Article 11 hereof.

This indemnification provision shall not be applicable to injury, death or damage to property arising exclusively from the negligent or intentional acts of the District, its officers, agents, servants or independent contractors (other than the Operator and its subcontractors) who are directly responsible to the District and incur such liability in the performance of duties for the District.  The Operator shall not waive, release, or otherwise forfeit any possible defense

the District may have regarding claims arising from or made in connection with the operation of the CTF by the Operator without the consent of the District. The Operator shall preserve all such available defenses and cooperate with the District to make such defenses available to the maximum extent allowed by law.

In case any action or proceeding is brought against the District by reason of any such claim, the Operator, upon written notice from the District, shall defend against such action by counsel satisfactory to the District, unless such action or proceeding is defended against by counsel for any carrier of liability insurance provided for herein.

The Operator's obligation to defend any claim or action provided for by this Section 10.1 shall not be affected by a claim that negligence of the District or any other indemnitee hereunder, caused or contributed to such claim or cause of action.

> 10.1.1    Compliance with the insurance requirements of this Agreement shall not relieve the Operator from any liability under the indemnity provision of Sections 6.7 and 10.1 hereof.

10.2    _Books and Records_.  The Operator shall keep proper and complete books, records, and accounts with respect to the operation of the CTF and shall permit the District to inspect the same and make and take away copies thereof.  The Operator shall maintain all records in accordance with the Operating Standards.

> 10.2.1    Operator shall establish appropriate safeguards to protect the confidentiality of inmate records and minimize the possibility of their theft, loss, or destruction.  Any and all records delivered by the District to the CTF or any employee or subcontractor of the Operator are deemed confidential and privileged information.

10.3    _Maintenance of Corporate Existence and Business_.  The Operator shall at all time maintain its corporate existence and authority to transact business and remain in good standing in its jurisdiction of incorporation and in the District of Columbia.  The Operator shall maintain all licenses, permits, and franchises necessary for its businesses where the failure to so maintain might have a material adverse affect on the Operator's ability to perform its obligations under this Agreement.

10.4    _Non-Discrimination_.    The Operator shall at all times provide its services hereunder in compliance with all laws with respect to discrimination in hiring, promotion or pay of employees.  No person shall be subjected to discrimination on the grounds of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, matriculation or political affiliation.  Upon request, the Operator shall show proof of such non-discrimination, and shall post in a conspicuous place, available to employees and job applicants, notice of such non-discrimination. The Operator shall provide the District with information at least annually with respect to its compliance with the


representations in the Operator's Proposal regarding use of small businesses and local and disadvantaged businesses.

10.5    Liability Insurance.  The Operator shall continuously maintain and pay for such insurance as will protect the Operator and the District as a named insured, from:

(a)    all claims, including death and claims based on violations of civil rights, arising from the services performed under this Agreement;

(b)    all claims arising from the services performed under this Agreement by the Operator; and

(c)    actions by a third party against the Operator as a result of this Agreement.

10.6    Other Insurance Requirements.  This Agreement shall not be enforceable against the District unless insurance policies evidencing the insurance coverages required by this Agreement are received prior to the Service Commencement Date in a form satisfactory to the District.  At all times during the term of this Agreement, the Operator shall carry, at its own cost and expense:

(a)    A comprehensive general liability insurance policy with minimum limits of $5,000,000 for personal injury or death and $500,000 and $1 million aggregate for property damage; and

(b)    A comprehensive fire and extended coverage insurance policy for the full replacement value of the CTF (including coverage for sprinkler damage) on the building, all improvements, and all furniture, fixtures and equipment furnished to or placed by the Operator within the CTF.

The proceeds collected upon any and all comprehensive fire and extended coverage insurance policies shall be used to repair and/or replace the building, improvements, furniture, fixtures and equipment so damaged or destroyed, and such repairs or replacements shall be executed promptly by the Operator with such insurance funds pursuant to Section 6.3 of this Agreement. Such policies shall include appropriate clauses waiving all rights of subrogation against the District with respect to losses payable under such policies.

All insurance policies required under this Agreement must provide no less than thirty (30) days advance notice to the District of any contemplated cancellation.  The District shall have the right, but not the obligation, to advance money to prevent the insurance required herein from lapsing for nonpayment of premiums.  If the District advances such amount, then the Operator shall be obligated to repay the District the amount of any advances plus interest thereon at the lesser of 18% per annum or the legal maximum rate.  The District shall be entitled to set off and deduct such amount from any amounts owed the Operator pursuant to this Agreement or the Lease.  No election by the District to advance money to pay insurance

premiums shall be deemed to cure the default by the Operator of its obligation to provide insurance. All insurance policies shall name the District as an additional insured or joint loss payee as its interest may appear.

## ARTICLE 11
## CONTRACT MONITOR/PERFORMANCE EVALUATION

11.1    Contract Monitor.  The District shall appoint a representative (the "Contract Monitor") for this Agreement who shall work for and be paid by the District. The Contract Monitor or other person(s) designated by the District shall be the official representative of the District with respect to matters related to the Operator's compliance with the terms of this Agreement and the delivery of the services required by this Agreement. The review of the delivery of medical services required by this Agreement may be performed by the Contract Monitor or by a separate DOC Health Monitor retained and paid by the District and any such DOC Health Monitor shall have the all of the powers and duties of the Contract Monitor with respect to matters within the scope of the DOC Health Monitor's assignment. The DOC Health Monitor shall have the right to consult with the Medical Society of the District of Columbia and other medical professional organizations to develop and implement an annual medical services review process and for such other assistance as the DOC Health Monitor may require. Such assistance may include review of medical records and facilities at the CTF.

11.1.1    Contract Monitor.  If the Contract Monitor determines that the CTF is not being operated in compliance with the Requirements, the Quality Assurance Plan or other portions of the Operating Standards, it shall notify the Operator in writing of the non-compliance. The notification to the Operator shall identify the provisions of this Agreement, the Requirements, the Quality Assurance Plan or the other portions of the Operating Standards which the Operator is failing to meet and, if possible, shall specify the nature of the deficiencies in operation. If the deficiencies do not constitute an Event of Default hereunder and so long as the District elects, the District and the Operator shall utilize the procedures specified in Section 11.1.1 hereof for the resolution of the Contract Monitor's determination of deficiency. Within fifteen (15) days after receipt of the notification of the deficiencies in operation, the Operator shall notify the Contract Monitor in writing that the deficiency has been cured or shall propose a plan for correcting the deficiency. If the Contract Monitor and the Operator cannot agree on the nature of the deficiency or the method for correcting the deficiency, either the District or the Operator may refer the matter for resolution by management as provided in Section 11.1.2 hereof.

11.1.2 Management Resolution.  The DOC's executive deputy director and the Operator's vice president for operations shall be responsible for administering the management resolution procedures regarding claims with respect to a failure to comply with this Agreement, the Requirements, the Quality Assurance Plan or other portions of the Operating Requirements.  The DOC's executive deputy director and the Operator's vice president for operations shall attempt to settle such claim.  If they are unable to resolve the claim within thirty (30) days after either party notifies the other that the claim has been referred for management resolution, either party may declare that an impasse has been reached.  Upon the declaration of an impasse,  each party shall appoint a mediator within five (5) Business Days of the declaration of the impasse  The mediators appointed by the District and the Operator shall select a third mediator.  If one of the Parties fails or refuses to appoint a mediator, the mediator appointed by the other party shall resolve the issue of the claimed deficiency.

11.1.3 Mediation Process.  In the absence of an agreement to the contrary by the District and the Operator, the mediation process shall be conducted in accordance with the Center for Public Resources Model Mediation Procedure of Business Disputes.  The mediators shall conduct all hearings and meeting in Washington, D.C. and within thirty (30) days of their appointment the mediators shall notify the District and the Operator in writing of their decision stating separately findings of fact and determinations of law.  The decision of the mediators can be appealed to a court of competent jurisdiction within the District of Columbia as to decisions of law but not as to findings of fact.

11.1.4 Indemnification Payments.  If the mediators determine there are deficiencies in the Operator's operation of the CTF pursuant to Section 11.1.3, the Operator shall be liable, at the District's option, for the indemnification payments provided for by Section 10.1 hereof in addition to any other amounts due hereunder.

11.1.5 Continuation of Performance.  The Operator shall continue to discharge its obligations, and the District shall pay the Daily Service Fee, in accordance with the terms of this Agreement, during the pendency of the mediation process.

11.2 Access to Facilities.  The District Representative and the Contract Monitor shall have unrestricted access to the CTF at all times.

11.3    Right to Audit.  The District shall, subject to limitations provided by law with respect to rights of privacy, have the right to examine records of the Operator and its subcontractors, related to the CTF, including without limitation, financial books and records, maintenance records, employee records, and inmate records generated by the Operator, its subcontractors or any other related parties in connection with performance of this Agreement. Any contract between the Operator and a subcontractor shall grant the District the right to audit the subcontractor's books and records under the same terms and conditions the District may audit the Operator's books and records.  The provisions of this Section 11.3 shall not apply to a subcontractor for any year that the subcontractor receives payments of less than $500,000 for material and services provided in connection with this Agreement.

11.4    Monitoring of Performance by the District.  The District shall utilize the Quality Assurance Plan included in the Solicitation in connection with its monitoring of the quality of Operator's performance under this Agreement and the Operator shall cooperate fully with the District in obtaining the requisite information needed to complete the Quality Assurance Plan and to assess the quality of the Operator's performance.  Such monitoring by the District shall not relieve the Operator of any of its obligations under this Agreement.

## ARTICLE 12
## CERTAIN PROHIBITIONS

12.1    Certain Prohibitions.  Notwithstanding any other section of this Agreement, nothing contained herein shall be interpreted to grant to Operator the authority to, and Operator shall not have any final authority to:

12.1.1    Approve inmate release and parole eligibility dates;

12.1.2    Award good conduct time to applicable inmates; or

12.1.3    Approve inmates for work training, medical transfers, temporary furloughs, or for pre-parole transfers outside of the CTF.

DOC shall make a recommendation with respect to the parole of each inmate eligible for parole.  The Operator shall prepare and assemble all evaluations, reports and other information as required by the Parole Board of the District of Columbia and forward such information to DOC's case management unit within a timeframe sufficient to permit the unit to form a basis for its recommendation as to parole for inmates at the CTF.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1    Binding Nature.  This Agreement shall not be binding upon the Parties until it is approved and executed by both Parties.  This Agreement shall inure to the benefit of the District

and Operator and shall be binding upon the District and Operator and their respective successors and assigns, subject to the limitations set forth in Section 13.5 and elsewhere in this Agreement.

13.2    Invalidity and Severability.   In the event that any provision of this Agreement shall be null and void, the validity of the remaining provisions of the Agreement shall not in any way be affected thereby.

13.3    Defense/Immunity.   By entering into this Agreement, neither the District nor the Operator waives any immunity defenses which may be extended to either of them by operation of law, including limitations on the amount of damages which may be awarded or paid.

13.4    Notice of Claims.   Within ten (10) days after receipt of a summons in any action against the District or the Operator, or of any agent, employee or officer thereof, or within ten (10) days of receipt of notice of claim against the District or the Operator or of any agent, employee or officer thereof, the Party receiving such summons or claim shall notify the other Party in writing of such summons or notice of claim.   If any of the insurance described herein or any portion thereof becomes commercially unavailable, the District, at its option, may terminate this Agreement upon thirty (30) days prior written notice.

13.5    Prohibition Against Assignment.   It is hereby agreed by the Parties that the Operator may not assign or transfer all or any part of its interest or contractual rights hereunder.

13.6    Third Party Beneficiary.   Except as specifically provided in this Agreement, the provisions of this Agreement are for the sole benefit of the Parties hereto and shall not be construed as conferring any rights on any other person.

13.7    Governing Law.   The Agreement shall be governed by and construed in accordance with the laws of the District of Columbia.

13.8    Notices.   All notices called for or contemplated hereunder shall be in writing and shall be deemed to have been duly given when personally delivered or forty-eight (48) hours after mailed to the address below by personal delivery or by certified mail, return receipt requested, postage prepaid.


All notices to DOC shall be addressed to the District Representative at the following address:

> Department of Corrections
> 1923 Vermont Avenue, N.W.
> Washington, D.C.  20001
> Attention:  Executive Deputy Director

With a copy delivered to the Contract Monitor at the following address:

> Office of Contract Monitor
> Correctional Treatment Facility
> 1901 E Street, S.E.
> Washington, D.C.  20003
> Attention:  Regina Gilmore

All notices to the Operator shall be addressed to the Operator's Representative at the following address:

> Corrections Corporation of America
> 102 Woodmont Boulevard, Suite 800
> Nashville, TN  37205
> Attention: Vice President, Legal Affairs

13.9    Entire Agreement.  This Agreement incorporates all the agreements, covenants, and understandings between the Parties hereto concerning the subject matter hereof, and all such covenants, agreements and understandings have been merged into this Agreement.  No other prior agreement or understandings, verbal or otherwise, of the Parties or their agents shall be valid or enforceable unless embodied in this Agreement.

13.10    Amendment.  No changes to this Agreement shall be made except upon written agreement of both Parties.

13.11    Headings.  The headings used herein are for convenience of reference only and shall not constitute a part hereof or effect the construction or interpretation of this Agreement.

13.12    Counterparts.  This Agreement may be executed in any number of and by the different Parties hereto on separate counterparts, each of which when so executed shall be deemed to be an original, and such counterparts shall together constitute but one and the same instrument.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date first above written.

**THE DISTRICT OF COLUMBIA**
**("District")**

BY: _Wanda E. Moorman_

TITLE: _Contracting Officer_

**CORRECTIONS CORPORATION OF AMERICA**
**("Operator")**

BY: _[signature]_

TITLE: _Chairman & CEO_

42.

# EXHIBIT A

## D.C. DEPARTMENT OF CORRECTIONS POLICIES

| SUBJECT NUMBER | | EFFECTIVE DATE |
|---|---|---|
| N/A | Lorton Regulation Approval Act of 1982 | 02/18/81 |
| 1230.2 | Pick-up and Delivery of Sensitive, Urgent, and Special Department and Intradepartmental Mail | 02/01/74 |
| 1260.1B | Official Communications | 01/05/95 |
| 1290.1A | Lorton Public Information Alert Phone System | 05/04/93 |
| 1311.1A | Screening and Control for Non-Departmental Research | 09/04/92 |
| 1320.1A | Inquiries & Requests from Governmental Officials & Agencies | 08/31/90 |
| 1340.2A | Relationship with the Media | 09/07/89 |
| 1340.3 | Media Emergencies | 10/14/91 |
| 3310.4C | Sexual Harassment of Employees | 12/14/94 |
| 3800.2 | Section 504 Handicap/American with Disabilities Act Accommodations | 08/10/92 |
| 4030.1D | Inmate Grievance Procedure | 05/04/92 |
| 4060.1 | Standard Inmate Forms and Records | 02/22/73 |
| 4060.2 | Inmate Institutional Files | 12/10/90 |
| 4090.3 | Department Classification Operations Manual | 07/15/87 |
| 4160.6 | Inmate Marriages | 12/10/90 |
| 4161.1 | Recording Legally Changed Names | 03/15/79 |
| 4311.2A | Youth Diagnostic Evaluations | 02/26/90 |
| 4311.3 | Female Youth Rehabilitation Act Programs and Operations | 04/15/74 |
| 4354.3 | Programming of Youth Act Commitments and Adult Sentences | 04/15/74 |
| 4354.4B | Classification and Institutional Assignment of Youth Act Offenders | 12/07/84 |
| 4370.1A | Prison Overcrowding EPA | 10/01/93 |
| 4920.2 | Furlough Policy for Youth Institutions | 02/06/74 |

| SUBJECT NUMBER | | EFFECTIVE DATE |
|---|---|---|
| 4920.3C | Work Training Furlough Program | 01/20/94 |
| 4920.4A | Resocialization Emergency Furloughs | 09/01/77 |
| 5140.1A | Washington Area Law Enforcement System (WALES) | 03/27/81 |
| 6010.1A | D.C. Mental Health Information Act of 1978 (MHIA) | 07/26/93 |
| 6011.2A | Notification of Next of Kin or Designee | 11/06/95 |
| 6012.2 | Reporting AIDS Cases | 03/12/84 |
| 6050.4 | Mandatory Employee Drug and Alcohol Drug Test (MEDAT) | 06/14/96 |
| 8011.1 | Medical and Geriatric Parole Act of 1992 | 07/30/93 |

---------------------------------------------------------------------------------

### Policies To Be Developed

1.  Transportation of inmates to and from Correctional Treatment Facility by Department of Corrections and the Contractor

2.  Admissions criteria and transfer procedures to and from Correctional Treatment Facility

# EXHIBIT B

## <u>STAFFING PLAN</u>

8-17-96

Subject to fu
revision durin
Transition

# WASHINGTON, D.C
# CORRECTIONAL TREATMENT FACILITY
## STAFF DEPLOYMENT BY SHIFT AND POSITION

| | |
|---|---|
| MANAGEMENT/SUPPORT | 18.00 |
| SECURITY/OPERATIONS | 91.00 |
| SECURITY/HOUSING | 200.00 |
| SUPPORT SERVICES | 33.00 |
| CLASSIFICATION | 52.00 |
| MEDICAL | 38.00 |
| EDUCATION | 11.00 |
| TOTAL | 443.00 |

| MANAGEMENT/SUPPORT | 1st Shift | 2nd Shift | 3rd Shift | Days Covered | Relief Factor | Total Staff |
|---|---|---|---|---|---|---|
| Warden | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Asst Warden (Security) | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Asst. Warden (Treatment) | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Compliance/Grievance Coord. | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Business Manager | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Bookkeeper | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Personnel Coordinator | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Training Manager | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Secretary | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Administrative Clerk | 2 | 0 | 0 | 5 | 1.00 | 2.00 |
| Records Supervisor | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Records Clerk | 2 | 0 | 0 | 5 | 1.00 | 2.00 |
| Mail Clerks | 2 | 0 | 0 | 5 | 1.00 | 2.00 |
| Safety Manager | 1 | | 0 | 5 | 1.00 | 1.00 |
| Chaplain | 1 | | 0 | 5 | 1.00 | 1.00 |
| Total | | | | | | 18.00 |

| SECURITY/OPERATIONS | 1st Shift | 2nd Shift | 3rd Shift | Days Covered | Relief Factor | Total Staff |
|---|---|---|---|---|---|---|
| Chief of Security | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Shift Supervisor | | | | | 2.00 | 6.00 |
| Asst. Shift Supervisor | | | | | 1.72 | 5.00 |
| Central Control C/O | | | | | 1.72 | 9.00 |
| Count Room (Command Center) | | | | | 1.72 | 5.00 |
| Pedestrian Checkpoint | | | | | 1.72 | 5.00 |
| Visitation C/O | 2 | | 0 | | 1.72 | 7.00 |
| Utility/Search/Escort C/O | 4 | 4 | 3 | | 1.72 | 19.00 |
| Armory/Key Control C/O | | | 0 | 5 | 1.00 | 1.00 |

| | 1st Shift | 2nd Shift | 3rd Shift | Days Covered | Relief Factor | Total Staff |
|---|---|---|---|---|---|---|
| Kitchen C/O | 1 | 1 | 1 | 7 | 1.72 | 5.00 |
| Medical | 1 | 1 | 1 | 7 | 1.72 | 5.00 |
| Intake/Orientation C/O | 1 | 1 | 0 | 7 | 1.72 | 3.00 |
| Property C/O | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Program/Education C/O | 1 | 1 | 0 | 5 | 1.00 | 2.00 |
| Transportation C/O | 4 | 2 | 0 | 5 | 1.00 | 6.00 |
| C/O Behavior Management | 2 | 2 | 2 | 7 | 1.72 | 10.00 |
| Adm.Clerk | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Total | | | | | | 91.00 |

| SECURITY/HOUSING | 1st Shift | 2nd Shift | 3rd Shift | Days Covered | Relief Factor | Total Staff |
|---|---|---|---|---|---|---|
| **GENERAL HOUSING** | | | | | | |
| Unit Manager | 3 | 0 | 0 | 5 | 1.00 | 3.00 |
| Counselor | 3 | 0 | 0 | 5 | 1.00 | 3.00 |
| Recreation Coordinator | 1 | 1 | 0 | 7 | 1.72 | 3.00 |
| Roving Officer | 3 | 3 | 1 | 7 | 1.72 | 12.00 |
| Housing Officer | 7 | 7 | 7 | 7 | 1.72 | 36.00 |
| **SUBSTANCE ABUSE PROGRAM** | | | | | | |
| Program Manager | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Unit Manager | 4 | 0 | 0 | 5 | 1.00 | 4.00 |
| Substance Abuse Counselor | 3 | 0 | 0 | 5 | 1.00 | 3.00 |
| Aftercare Coordinator | 2 | 0 | 0 | 5 | 1.00 | 2.00 |
| Recreation Coordinator | 1 | 1 | 0 | 7 | 1.72 | 3.00 |
| Roving Officer | 1 | 1 | 1 | 7 | 1.72 | 5.00 |
| Housing Officer | 8 | 16 | 8 | 7 | 1.72 | 55.00 |
| Secretary | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Administrative Clerk | 1 | 1 | 0 | 5 | 1.00 | 4.00 |
| **FEMALE PROGRAM** | | | | | | |
| Program Manager | 1 | 1 | 0 | 5 | 1.00 | 1.00 |
| Clinical Social Worker | 1 | 1 | 0 | 5 | 1.00 | 1.00 |
| Unit Manager | 2 | 2 | 0 | 5 | 1.00 | 2.00 |
| Counselor | 3 | 3 | 0 | 5 | 1.00 | 3.00 |
| Recreation Coordinator | 1 | 1 | 0 | 7 | 1.72 | 2.00 |
| Housing Officer | 12 | 12 | 8 | 7 | 1.72 | 55.00 |
| Administrative Clerk | 1 | 1 | 0 | 5 | 1.00 | 1.00 |
| Total | | | | | | 200.00 |

| SUPPORT SERVICES | 1st Shift | 2nd Shift | 3rd Shift | Days Covered | Relief Factor | Total Staff |
|---|---|---|---|---|---|---|
| Warehouse/Commissary Supv | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Warehouse/Commissary Workers | 2 | 0 | 0 | 5 | 1.00 | 2.00 |
| Food Service Manager | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Food Service Supervisor | 1 | 1 | 0 | 5 | 1.00 | 2.00 |

| SUPPORT SERVICES | 1st Shift | 2nd Shift | 3rd Shift | Days Covered | Relief Factor | Total Staff |
|---|---|---|---|---|---|---|
| Food Service Worker | 4 | 4 | 0 | 7 | 1.72 | 14.00 |
| Maintenance Supervisor | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Asst. Maintenance Supervisor | 0 | 1 | 0 | 5 | 1.00 | 1.00 |
| HVAC Mechanic | 2 | 1 | 0 | 5 | 1.00 | 3.00 |
| Electrician | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Plumber | 1 | 1 | 0 | 5 | 1.00 | 2.00 |
| Mechanic | 1 | 1 | 0 | 5 | 1.00 | 2.00 |
| Locksmith/Tool Control | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Administrative Clerk | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| **Total** | | | | | | **33.00** |

| Diagnostic Unit | 1st Shift | 2nd Shift | 3rd Shift | Days Covered | Relief Factor | Total Staff |
|---|---|---|---|---|---|---|
| Unit Manager | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Classification Supervisor | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Classification Counselors | 4 | 0 | 0 | 5 | 1.00 | 4.00 |
| Social Worker | 4 | 0 | 0 | 5 | 1.00 | 4.00 |
| Psychologists | 3 | 0 | 0 | 5 | 1.00 | 3.00 |
| Correctional Officer | 7 | 7 | 7 | 7 | 1.72 | 36.00 |
| Administrative Clerk | 3 | 0 | 0 | 5 | 1.00 | 3.00 |
| Total | | | | | | 52.00 |

| Medical | 1st Shift | 2nd Shift | 3rd Shift | Days Covered | Relief Factor | Total Staff |
|---|---|---|---|---|---|---|
| Medical Services Supervisor | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| RN | 2 | 2 | 2 | 7 | 1.72 | 7.00 |
| LPN | 3 | 3 | 3 | 7 | 1.72 | 15.00 |
| Nursing Asst. | 1 | 1 | 1 | 7 | 1.72 | 5.00 |
| Medical Records Clerk | 2 | 0 | 0 | 7 | 1.72 | 5.00 |
| Mental Health Specialist | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Dental Hygienist | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Physician Assistant ( OB-GYN ) | 2 | 0 | 0 | 5 | 1.00 | 1.00 |
| Physical Therapist | 1 | 0 | 0 | 5 | 1.00 | 1.00 |

| | | | | | |
|---|---|---|---|---|---|
| Health Educator | ** | PRN/CONTRACT | | | |
| Gynecologist | ** | PRN/CONTRACT | | | |
| Psychiatrist | ** | PRN/CONTRACT | | | |
| Dentist | ** | PRN/CONTRACT | | | |
| Physician | ** | PRN/CONTRACT | | | |
| X-ray Technician | ** | PRN/CONTRACT | | | |
| Laboratory Technician | ** | PRN/CONTRACT | | | |
| **Total** | | | | | **38.00** |

| Education | 1st Shift | 2nd Shift | 3rd Shift | Days Covered | Relief Factor | Total Staff |
|---|---|---|---|---|---|---|
| Principal | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Vocational Counselor | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Academic Instructor | 4 | 0 | 0 | 5 | 1.00 | 4.00 |
| Vocational Instructor | 2 | 0 | 0 | 5 | 1.00 | 2.00 |
| Secretary | 1 | 0 | 0 | 5 | 1.00 | 1.00 |
| Library Aide | 1 | 1 | 0 | 5 | 1.00 | 2.00 |
| Librarian ** | PRN/CONTRACT | | | | | |
| Diagnostic ** | PRN/CONTRACT | | | | | |
| **Total** | | | | | | **12.00** |