UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY R. SCOTT,

       Plaintiff,

v.                                      No. 05-cv-1853 (RWR)

DISTRICT OF COLUMBIA, *et al.*,

       Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION
TO DISMISS**

**I. INTRODUCTION**

      This case was filed on behalf of Mary Scott, mother of Jonathan Magbie, and on behalf of

his estate. According to the Complaint, in September 2004, Mr. Magbie, a 27 year-old man

received a ten-day sentence, as a first offense, for possession of a single marijuana cigarette. Mr.

Magbie was paralyzed from the neck down and required a ventilator to breathe at times. He was

sent to the Central Detention Facility of the District of Columbia on September 20, 2004. During

the next four days, he was transferred between the Central Detention Facility, Greater Southeast

Community Hospital, and the Correctional Treatment Facility.

      Over a four-day period, the staff at all three facilities failed to provide him with necessary

medical care and the services that Mr. Magbie needed because of his disabilities, despite staff's

knowledge of the dangers their actions posed. These actions included the failure to provide him

with a ventilator, the failure to address his pneumonia, and even a failure to provide him with

1

enough food and water. On September 24, 2004, Jonathan Magbie died an agonizing and

preventable death because of these and other failures.

The District of Columbia has filed a motion to dismiss the Complaint. While a review of

Plaintiff's Complaint, and the cases cited by the District of Columbia's brief, would by

themselves be sufficient to refute the claims in the District's motion, Plaintiff sets forth below a

full statement of the reasons for denying the District's motion in all respects.

## II.  PLAINTIFF'S COMPLAINT ALLEGES AN UNCONSTITUTIONAL CUSTOM, AS WELL AS A DISTRICT POLICYMAKER'S FAILURE TO ACT DESPITE KNOWLEDGE OF THAT CUSTOM.

### A. Plaintiff Has Alleged the Elements Necessary to Show Municipal Liability.

The District quotes the following passage from the seminal case of *Monell v. Department*

*of Social Services of the City of New York,* 436 U.S. 658 (1978), in support of a claim that

Plaintiff has failed to allege the elements necessary to establish the District's liability for

Plaintiff's civil rights claim filed pursuant to 42 U.S.C. § 1983:

> [A] local government may not be sued under § 1983 for an injury
> inflicted solely by its employees or agents. Instead, it is when
> execution of a government's policy or custom, whether made by
> its lawmakers or by those whose edicts or acts may fairly be said
> to represent official policy, inflicts the injury that the government
> as an entity is responsible under § 1983.

*Id.* at 694.[1]

As shown, from the time that the Supreme Court first recognized that municipalities

could in appropriate cases be liable for constitutional violations, the Court has recognized that

such liability can be founded on custom as well as formal policy. Indeed, in *City of St. Louis v.*

---

[1]  Plaintiff has included a portion of the quotation omitted by the District in its brief. *See* Dist. Br. at 6.

*Praprotnik,* 485 U.S. 112 (1988), the Supreme Court more precisely defined municipal "custom"
as a subspecies of municipal policy that could lead to liability. The Court in *Praprotnik* reasoned
that if a series of actions by subordinates manifested a "custom or usage" of which the supervisor
must have been aware, "the supervisor could realistically be deemed to have adopted a policy
that happened to have been formulated or initiated by a lower-ranking official." *Id.* at 130.

In *Baker v. District of Columbia,* 326 F.3d 1302 (D.C. Cir. 2003), a case cited but not
fully explicated by the District, the court of appeals reversed dismissal of the complaint of a
District prisoner sent to Virginia. In *Baker,* the court of appeals noted that a municipal
policymaker's knowing failure to act in the face of actions of subordinates that are so consistent
that they become "custom" results in municipal liability for the subordinates' unconstitutional
acts. *Baker,* 326 F.3d at 1306 (citing *Praprotnik,* 485 U.S. at 130).

One of the defendants named in the Complaint is Odie Washington, who at all relevant
times was the Director of the Department of Corrections. As Director of the Department of
Corrections, Mr. Washington had policymaking authority. Complaint, Sept. 20, 2005, ¶ 5.[2]  The
Complaint further alleges that District of Columbia agents and employees acted pursuant to a
custom or policy of accepting prisoners who could not safely be held in Department of
Corrections facilities. *Id.,* ¶ 51.

Since Mr. Washington was an employee of the District, Paragraph 51 of the Complaint
necessarily alleges that he acted pursuant to this custom of accepting prisoners who could not
safely be held in Department of Corrections facilities. In order to act pursuant to such a custom,

---

[2] The District admits that Plaintiff has alleged that Mr. Washington was a policymaker
for the District. *See* Dist. Br. at 8 n.6.

3

Mr. Washington logically had to know of the custom. Further, the same paragraph of the
Complaint explains how Mr. Washington knowingly failed to address that custom: despite
knowledge that adequate policies were required to assure that all prisoners were kept in facilities
where they could be provided adequate care for their medical needs and disabilities, he failed to
promulgate or implement such policies. Accordingly, the Complaint sets forth allegations of
both a custom of unconstitutional behavior and a knowing failure to act in the face of the
unconstitutional custom by a municipal policymaker.

The Complaint also alleges municipal liability under a "deliberate indifference" theory.
Under that theory, a plaintiff is required to allege that a municipal policymaker either knew or
should have known of the need to address a particular issue because the failure to address the
issue posed an obvious likelihood of violation of constitutional rights, but the policymaker failed
to act. *See City of Canton v. Harris,* 489 U.S. 378, 389-91 & n.10 (1989) (establishing the
"deliberate indifference" standard for municipal liability for failure to train); *Daskalea v. District
of Columbia,* 227 F.3d 433, 441 (D.C. Cir. 2000) ("[T]he Supreme Court and this court have held
that a city's inaction, including its failure to train or supervise its employees adequately,
constitutes a 'policy or custom' under *Monell* when it can be said that the failure amounts to
'deliberate indifference' towards the constitutional rights of persons in its domain.") (citations
and internal quotation marks omitted); *Baker,* 326 F.3d at 1306-07 ("deliberate indifference"
requires that municipality knew or should have known of the risk of constitutional violations).

No technical forms of pleadings are required to allege such deliberate indifference, just as
a complaint need not even define the specific custom or policy that caused the plaintiff's injury.
While a plaintiff will be required to prove more about policymaker's actions to prevail at trial, all

4

that the plaintiff must allege in the complaint is deliberate indifference to a need for training (or

some other action to prevent constitutional violations) and a constitutional violation caused by

that failure. *Atchinson v. District of Columbia,* 73 F.3d 418, 421-23 (D.C. Cir. 1996). The

Complaint in this case alleges that the Eighth Amendment was violated by the failure to provide

Mr. Magbie with needed medical care; this violation was causally related to Mr. Washington's

failure to promulgate and implement policy to assure appropriate treatment for those prisoners

who, because of their medical needs or disabilities, could not be safely housed in District

facilities; and that Mr. Washington knew of the need to promulgate or implement such a policy.

The complaint thus alleges deliberate indifference on the part of a policymaker for which the

District is responsible and a resulting constitutional injury.[3] Complaint, ¶ 51.

Moreover, even if there were any ambiguity in the Complaint about these allegations,

which there is not, ambiguity in a complaint's allegations regarding municipal liability is not

ground for a Rule 12(b)(6) dismissal:

> However, if a complaint alleging municipal liability under § 1983 may
> be read in a way that can support a claim for relief, thereby giving the
> defendant fair notice of the claim, that is sufficient. *See
> Leatherman v. Tarrant County Narcotics Intelligence and
> Coordination Unit,* 507 U.S. 163, 118 S. Ct. 1160, 122 L. Ed. 2d
> 517 (1993); *Anyanwutaku v. Moore,* 151 F.3d 1053, 1058 (D.C.
> Cir. 1998); Atchinson [v. District of Columbia, 73 F 3d 418, 421-23
> (D.C. Cir. 1996)].

---

[3] As noted above, establishing "deliberate indifference" for *Monell* purposes requires a
showing that the municipality knew or should have known of the risk. *See Baker,* 326 F.3d at
1307. Given that the Complaint alleges that Defendant Washington did know, Plaintiff has
clearly met that standard. *Cf. Farmer,* 511 U.S. at 841-42 (noting that the Eighth Amendment
"deliberate indifference" standard is higher than the municipal liability "deliberate indifference"
standard; while "deliberate indifference" in the municipal liability context requires only a
showing of an "obvious" risk, so that the municipality "should have" known of the risk, Eighth
Amendment liability requires demonstrating that the defendant had actual knowledge of the risk).

*Baker,* 326 F.3d at 1307. In light of authoritative decisions of the the court of appeals, as well as

the Supreme Court, Plaintiff has thus alleged the necessary elements of municipal liability.

B. Plaintiff Has Adequately Pleaded the Factual Basis of Her Claim of Custom

1. Plaintiff has satisfied the requirements of notice pleading.

      The District's motion floats a number of red herrings. The first of these is the contention

that the Complaint's *Monell* allegations lack sufficient factual detail. The law is to the contrary.

By pleading the existence of a custom, and Mr. Washington's knowledge of the custom and

failure to act, Plaintiff has met the notice pleading requirements of the Federal Rules. Particularly

because a court may dismiss a complaint for failure to state a claim only if it is clear that no relief

could be granted under any set of facts that could be proven consistent with the allegations,

*Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984), there is no basis for dismissing Plaintiff's

claim when the necessary elements of the claim have been pled.

      The District cites *Milligan v. City of Newport News,* 743 F.2d 227 (4th Cir. 1984), in which

that court rejected the complaint's allegations regarding municipal liability as simply legal

conclusions. *Id.* at 230. Milligan, however, is no longer good law, in light of the fate of a very

similar decision, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,*

954 F.2d 1054 (5th Cir. 1992), *rev'd,* 507 U.S. 163, 168 (1993). In the latter case, the Fifth Circuit

noted the following:

> [Plaintiffs'] amended complaint alleged generally that the municipalities
> failed to formulate and implement an adequate policy to train its
> officers on the proper manner to execute search warrants and
> respond when confronted by family dogs. The allegations were
> of the "boilerplate" variety, alleging no underlying facts other than
> the events described above [referring to a description of the
> events directly involving the plaintiffs] to support the assertions

> that the municipalities had adopted policies, customs, and practices
> condoning the conduct of the officers involved.

*Id.* at 1056 (footnote omitted).

The Fifth Circuit held that the district court had properly dismissed the complaint under its

"heightened pleading standard" for § 1983 claims against municipalities, reasoning that "[w]hile

plaintiffs' complaint sets forth the facts concerning the police misconduct in great detail, it fails to

state any facts with respect to the adequacy (or inadequacy) of the police training." *Id.* at 1058.

The Supreme Court reversed, holding that Rule 12(b)(6) did not allow application of a

"heightened pleading standard" to allegations of municipal liability. *Leatherman v. Tarrant Co.*

*Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993). Significantly, on appeal,

the defendants claimed that the Fifth Circuit had not really applied a "heightened pleading

standard," but had simply applied general federal pleading rules in light of the complexity of the

substantive law of municipal liability. The Supreme Court rejected this argument:

> [E]xamination of the Fifth Circuit's decision in this case makes it
> quite evident that the "heightened pleading standard" is just what
> it purports to be: a more demanding rule for pleading a complaint
> under § 1983 than for pleading other kinds of claims for relief.
>
> * * *
>
> We think that it is impossible to square the "heightened pleading
> standard" applied by the Fifth Circuit in this case with the liberal
> system of "notice pleading" set up by the Federal Rules. Rule
> 8(a)(2) requires only "a short and plain statement of the claim
> showing that the pleader is entitled to relief." In *Conley v.*
> *Gibson,* 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), we said
> in effect that the Rule meant what it said[.]

*Id.* at 167-68.

Significantly, the District cites no cases that post-date the Supreme Court decision in

7

*Leatherman* in its argument that Plaintiff's allegations of a policy are too conclusory to state a claim, and in fact the instant case cannot be meaningfully distinguished from *Leatherman*.[4]  The complaint at issue in *Leatherman* was certainly no more detailed than Plaintiff's Complaint regarding the allegation of an unconstitutional policy.  *See supra* at 3-4.  Like the complaint in *Leatherman*, the instant Complaint provides appropriate notice to the District of the allegations that it must meet.

Indeed, our court of appeals has fully recognized the import of *Leatherman*.  In *Warren v. District of Columbia*, 353 F.3d 36 (D.C. Cir. 2004), the court of appeals considered a complaint from a prisoner who alleged that he had suffered harm of constitutional dimension while incarcerated at a Corrections Corporation of America facility in Youngstown, Ohio, which operated under a contract with the District.  The district court dismissed his complaint, and the prisoner appealed.  As in this case, the District argued that the prisoner had failed to plead "facts" establishing knowledge by the District.  The court of appeals, in the course of reversing dismissal of the complaint, responded as follows:

> But at this stage of the litigation, Warren needed only to supply a short and plain statement of the claim showing that the pleader is entitled to relief, which he has done. *See, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 517 (1993); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 1 (1993).  It is of no moment that Warren's allegation of actual or constructive knowledge on the part of the District was conclusory.  Many well-pleaded complaints are conclusory.  And while we do not have to accept conclusions of law as true, conclusions of fact are another matter.

---

[4] *See* Dist. Br. at 12, 17.  Although *Leatherman* directly concerns the validity of a "heightened pleading standard" in municipal liability cases, the Supreme Court's reasoning is broader, based on the fundamental principle of notice pleading incorporated into the Federal Rules. *Leatherman*, 507 U.S. at 168.

*Id.* at 39 (some citations and internal quotation marks omitted).

*Atchinson v. District of Columbia,* 73 F.3d at 422, is also inconsistent with the District's position. In that case, the court of appeals reversed the dismissal of a complaint against the District, despite the fact that the complaint did not identify a specific custom related to the plaintiff's allegation that the District, with deliberate indifference, failed to "appoint, supervise, train and/or promote" police who would enforce the laws." *Id.* The court of appeals also noted that a plaintiff seeking municipal liability under § 1983 could satisfy Rule 8 by "alleging both a failure to train and an unusually serious instance of misconduct that, on its face, raises doubts about a municipality's training policies." *Id.* at 422-23.

The instant case, in which the allegations of the Complaint suggest that multiple Defendants could have prevented Mr. Magbie's death by attending to his obvious needs, exemplifies "an unusually serious instance of misconduct" that supports an inference that the event reflects such ongoing systemic failures that policymakers should have known of them. *Cf. Farmer,* 511 U.S. at 842 (circumstantial evidence may be used to prove that defendants in an Eighth Amendment conditions of confinement case had actual knowledge of the unreasonable risk to the plaintiff).

Finally, the court of appeals in *Atchinson* explicitly relied on *Leatherman* to reject any requirement of factual allegations to flesh out a claim of municipal liability. It pointed out that the model forms included in the Federal Rules of Civil Procedure "permit a plaintiff to allege a state of mind without providing any factual basis for that allegation." *Atchinson,* 73 F.3d at 423 (citing Form 9 from the Appendix of Forms of the Federal Rules, a model form for pleading negligence, which simply recites in pertinent part: "defendant negligently drove a motor vehicle

9

against plaintiff who was then crossing said highway.").

Accordingly, under the Supreme Court's decision in *Leatherman* and subsequent decisions in this circuit, the District cannot successfully argue that the allegations of the Complaint fail to state a cause of action.

2. Notice pleading does not require alleging that the custom was "long-standing."

The District also argues that the Complaint is insufficient under *Triplett v. District of Columbia,* 108 F.3d 1450, 1454 (D.C. Cir. 1997), noting that *Triplett* indicates that acquiescence in a "long-standing" custom or practice by policymakers could result in municipal liability. Significantly, however, *Triplett* did not concern pleading requirements, but rather the sufficiency of proof on the merits of a claim.  Under the notice pleading regime established by the Federal Rules, there is a clear distinction between pleading standards and evidentiary standards; for example, plaintiffs need not plead the requirements of a *prima facie* case. *Sweirkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-12 (2002).

Further, the discussion in *Triplett* cited by the District is *dictum*; the actual issue in *Triplett* was whether a final policymaker was shown to have had any awareness of the claimed custom.[5] In fact, the court of appeals noted that "the testimony suggests that the policymakers intended that District officers abide by the municipality's stated policy." *Id.* at 1453.  Nothing in *Triplett* or any other case suggests that a plaintiff is required to plead that a particular custom is "long-standing" in order to survive a Rule 12(b)(6) motion. Indeed, it is apparent that the complaints at

---

[5] How "long-standing" a practice must be to qualify as a "custom" for *Monell* purposes would seem to depend on whether the custom has been in existence long enough for the policymaker to know of the practice and fail to take action; it is the knowledge and duty to act that are critical, not the length of time, considered in the abstract, that the custom has existed.

issue in neither the *Baker* or *Warren* cases contained such allegations. Even though these cases postdate *Triplett*, the court of appeals had no trouble reversing the district courts and holding that the complaints stated claims for relief.

    C. The Attachments to the District's Brief Are Inadmissible on a Motion to Dismiss, as Well as Irrelevant.

    The next red herring is the District's claim that various contracts with its for-profit providers are relevant or admissible regarding its motion to dismiss. The District states that its motion is filed pursuant to Fed. Rule Civ. P. 12(b)(6), which allows a defendant to present by motion a defense that the complaint fails to state a claim upon which relief may be granted. A motion to dismiss based on Rule 12(b)(6), of course, does not allow a court to consider factual matters outside of the complaint. Rather, consideration of such extraneous factual matters is possible only if the defendant's motion is converted into a motion for summary judgment pursuant to Fed. R. Civ. P. 56; such a conversion requires notice and an opportunity to respond by the plaintiff. Fed. R. Civ. P. 12(b); 2 James William Moore, *Moore's Federal Practice* § 12.34[3][b] (3d ed. 2000) (discussing procedure for providing the plaintiff with notice and an opportunity to respond when a court converts a motion filed pursuant to Rule 12(b)(6) to a motion for summary judgment pursuant to Rule 56).

    The District implicitly recognizes that Rule 12(b)(6) motions are ordinarily limited to consideration of the contents of the Complaint, but nonetheless argues that the contracts with the District's vendors may be considered because the Complaint notes that a contractual relationship exists between the District and various Defendants. *See* Dist. Br. at 9. The authority cited by the District, Dist. Br. at 9, however, does not support consideration of the attachments submitted by

11

the District in this case.

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994), involved review of a district court's order dismissing a complaint. In that complaint, the plaintiff claimed that statements in an affidavit that resulted in issuance of a search warrant were knowingly or recklessly misleading. The affidavit in question was purportedly based in substantial part on information supplied by a witness. The complaint alleged that deposition testimony by that witness demonstrated the misleading nature of the affidavit, but the plaintiff did not attach the deposition to his complaint. The defendant submitted the deposition with his motion to dismiss, and the district court considered the deposition in granting dismissal. The Ninth Circuit affirmed that dismissal, holding that documents whose contents are alleged in a complaint and whose authenticity is unquestioned, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss. *Id.* at 454.

The issues here are not remotely comparable to the issues in *Branch.* Nowhere in Plaintiff's Complaint does she refer to the contents of the contracts between the District and its vendors. Rather, the Complaint simply notes that various defendants–the Center for Correctional Health and Policy Studies, Inc.; T. Wilkins Davis, M.D.; and Corrections Corporation of America–provide services to the District pursuant to contracts. *See* Complaint, ¶¶ 6, 8, 9. There are no other references to contracts in the Complaint. Accordingly, because Plaintiff did not allege anything about the contents of the contracts, these contracts do not come within the limited exception approved in the *Branch* case, and there is no basis for submitting them into evidence.[6]

---

[6] The District cites another Ninth Circuit case, *Molina v. Los Angeles County, Department of Mental Health*, 58 Fed. Appx. 311 (9th Cir. 2003). That case involved appeal of a decision dismissing the plaintiff's Title VII claims, some of which were dismissed on the basis

Even if the content of these contracts were to be considered by the Court, however, these contracts would not support dismissal of the Complaint. The District cites the contracts for provisions that, it says, require Defendants Corrections Corporation of America and the Center for Correctional Health and Policies Studies, Inc., to operate in a manner consistent with the District's constitutional obligations. Dist. Br. at 9-10.

These provisions are, of course, irrelevant to Plaintiff's theory of municipal liability. By definition, promulgation of a formal constitutional policy cannot defeat liability if the custom of the municipality, known to decision-makers, remains unconstitutional. Otherwise, unconstitutional customs of a municipality would, for all practical purposes, be immunized. *See, e.g., Praprotnik,* 485 U.S. at 131 ("We nowhere say or imply, for example, that a municipal charter's precatory admonition against discrimination or any other employment practice not based on merit and fitness effectively insulates the municipality from any liability based on acts inconsistent with that policy. . . . Refusals to carry out stated policies could obviously help to show that a municipality's actual policies were different from the ones that had been announced.") (internal quotation marks and citation omitted); *see also Daskalea v. District of Columbia,* 227

---

that the plaintiff did not file with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the occurrences on which the employment charge was based. Although the complaint referred to plaintiff's filing with the EEOC, neither her filing, nor the EEOC right-to-sue letter, was attached to her complaint. The court of appeals held that the district court nonetheless appropriately relied on the EEOC documents in granting the motion to dismiss, because the complaint specifically referred to these documents. *Id.* at 313-14. In contrast, this Complaint does not specifically refer to any contract; it simply notes the existence of contractual relationships among some of the parties.

Further, under the rules of the Ninth Circuit, the unpublished decision in *Molina* cannot be cited to any federal courts within that circuit, with certain limited exceptions, such as citation for the purpose of establishing a claim of law of the case, *res judicata,* or collateral estoppel. Ninth Circuit Rule 36-3 (2005). Because this case is not considered authoritative by the issuing court itself, the decision should be given little weight by this Court.

F.3d 433, 442 (D.C. Cir. 2000) (rejecting argument that, because sexual harassment of prisoners

violated formal District policy, the District could not be liable for deliberate indifference to such

harassment).

Accordingly, the formal contractual provisions cited by the District are not inconsistent

with Plaintiff's claim of a custom of unconstitutional actions by the District's employees and

agents, or Plaintiff's claim that a District policymaker had actual knowledge of the custom, but

failed to act. Indeed, these documents are particularly irrelevant because none of the policies the

District attempts to cite specifically addresses the requirement that prisoners whose medical needs

or disabilities cannot be safely treated or accommodated in Department of Corrections facilities be

placed in a safe environment. Thus, consideration of the contract provisions would not assist the

District in obtaining dismissal of the Complaint, and the Court should decline to consider them.

D. The Fact that the District Acted Through Its Agents Rather Than Its Employees Does Not
Insulate It from Liability.

The District emphasizes that the various horrifying failures to provide proper medical care

to Mr. Magbie were actually executed by various contractors, not District employees. Dist. Br. at

8 n.6,13-16. This is the reddest of herrings. The District has an affirmative duty to provide for

the basic needs of the prisoners that it incarcerates, and it cannot shed that duty simply by

contracting out medical services or responsibility for other basic needs of those it chooses to

incarcerate:

> Contracting out prison medical care does not relieve the State of its
> constitutional duty to provide adequate medical treatment to those in
> its custody, and it does not deprive the State's prisoners of the means
> to vindicate their Eighth Amendment rights. The State here bore an
> affirmative obligation to provide adequate medical care to West[.]

14

*West v. Atkins,* 487 U.S. 42, 56 (1988) (footnote omitted).

Further, the court of appeals for this circuit has recognized that, under circumstances such as these, the District is liable for constitutional violations directly caused by its contractors. In *Baker,* the complaint alleged that the District had transferred a prisoner to the Virginia Department of Corrections, which had contracted with a medical provider; the medical provider had failed to provide for the prisoner's medical needs; and the violation had been made possible by the District's failure to supervise its contract. Although the constitutional violations were allegedly directly caused by contractors, the court of appeals reversed dismissal of the complaint against the District. *Baker,* 326 F.3d at 1307; *see also Warren v. District of Columbia,* 353 F.3d at 39 (reversing dismissal of a complaint seeking municipal liability against the District based on acts of private prison operated under a contract with the District); *cf. Ali v. District of Columbia,* 278 F.3d 1, 8 (D.C. Cir. 2002) (dismissing a complaint against the District based on the alleged use of excessive force at a Virginia prison because the complaining prisoner had not alleged that the District had a policy of sending prisoners to Virginia prisons that routinely mistreat prisoners).

Indeed the court of appeals in *Baker* directly addresses the District's specific contention that a plaintiff cannot demonstrate liability under *Monell* absent allegations that some District of Columbia employee was directly involved in the events causing the injury to that plaintiff. The court of appeals noted that, in cases involving a claim of a *Monell* violation, the district court is to engage in a two-part inquiry. The first inquiry is whether the complaint states a claim for a constitutional violation. The second, and separate, inquiry is whether the complaint alleges that a custom or policy of the municipality caused the constitutional violation:

Under the first prong, the district court should have addressed whether

15

> Baker's complaint stated a predicate claim of deliberate indifference
> by prison officials to Baker's serious medical needs in violation of his
> Eighth Amendment rights[.]  To show deliberate indifference, Baker
> had to allege that officials[7] had subjective knowledge of the serious
> medical need and recklessly disregarded the excessive risk to inmate
> health or safety from that risk. *In order to establish this predicate
> violation, neither District of Columbia policy makers nor employees
> need be implicated.*  All that is being established is that there is
> some constitutional harm suffered by the plaintiff, not whether the
> municipality is liable for that harm.

326 F.3d at 1306 (citations omitted) (emphasis supplied).

The court in *Baker* proceeded to analyze whether the plaintiff in that case had successfully

pled municipal liability in his complaint by alleging that the District of Columbia had caused the

constitutional violation actually executed by the Virginia Department of Corrections.  In order to

do so, the court noted, the plaintiff would have to have alleged a policy or custom of the District.

The court concluded that he had done so by alleging that the District had failed in its duty to

protect him, due to inadequate policies and a deliberate failure to supervise the operations in

Virginia. *Id.* at 1307.[8]

The District does not raise any issue as to the adequacy of the Complaint's allegations of

the underlying Eighth Amendment violation regarding various Defendants' failures to provide

necessary medical care to Mr. Magbie, nor could it. *See* Complaint, ¶¶ 22-24, 28-42, 60 (alleging,

in specific detail, that various Defendants had actual knowledge of substantial risks of serious

harm to Mr. Magbie by reason of his medical needs and disabilities, but that despite such

---

[7] *West,* 487 U.S. at 55-56, holds that medical providers are state actors subject to liability
under § 1983 when they provide medical services to prisoners pursuant to contracts with a
governmental entity.

[8] Some of the allegations considered by the court apparently came from other filings by
the plaintiff, rather than the challenged complaint. *See id.*

16

knowledge, these Defendants acted, or failed to act, without regard to those risks); *see Farmer v. Brennan,* 511 U.S. at 837 (prison officials violate Eighth Amendment when the official knows of and disregards an excessive risk to prisoner health or safety). Accordingly, Plaintiff has pled both the first and second prong of the elements of municipal liability.

E. The District's Other Contentions Regarding Its § 1983 Liability Are Without Merit.

The District also argues that "a mere failure to adopt a policy that might have prevented the constitutional violation cannot be sufficient to satisfy *Monell.*" Dist. Br. at 12; *see also id.* at 18. Plaintiff does not disagree, but again the claim is a red herring. Plaintiffs' claim regarding policy or custom is not based on a mere failure to adopt a policy that might have prevented the harm, but on the District's practice, known to policymakers, of confining prisoners who, because of their medical needs or disabilities, cannot be safely held in Department of Corrections facilities.

Finally, the District claims that the fact that Mr. Magbie at one point actually managed to obtain an overnight transfer to a hospital disproves Plaintiff's allegation in the Complaint of a custom of failing to transfer prisoners with medical needs or disabilities that could not be safely treated in Department of Corrections facilities to safe facilities. Dist. Br. at 17. There is no such contradiction. According to the Complaint, Mr. Magbie's first overnight hospitalization occurred after he experienced difficulty breathing at the Central Detention Facility. Complaint, ¶¶ 24-25. Mr. Magbie's first transfer to Greater Southeast Community Hospital, as well as his second transfer when he was close to death, demonstrate that the District may transfer prisoners with acute illnesses to a hospital. The custom implicated in Mr. Magbie's death involves different concerns. Persons like Mr. Magbie with serious chronic illnesses and disabilities require placement in facilities designed to care for them appropriately. Without such care, such persons

17

lose functions and deteriorate–in Mr. Magbie's case, with tragic results. Thus, what the facts

emphasized by the District actually show are instances of the District's custom of failing to assure

that prisoners with chronic needs for specialized care to sustain their health and life receive that

desperately needed care.

## III. PLAINTIFF'S STATUTORY CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT AND THE D.C. HUMAN RIGHTS ACT ARE SUFFICIENTLY PLED TO SURVIVE DISMISSAL

The District's arguments with respect to Plaintiff's claims under the Americans with

Disabilities Act (ADA) and the D.C. Human Rights Act (DCHRA) are difficult to discern.[9]

Plaintiff understands the District to be making two distinct arguments: (1) that Plaintiff failed to

allege facts sufficient to support a claim of discrimination under the ADA and the DCHRA,

because the District accommodated Mr. Magbie's needs by transferring him to the Hospital on

September 20, 2005 (*see* Dist. Br. at 21-22); and (2) that even if Plaintiff has sufficiently pled her

statutory claims, she cannot recover money damages under the ADA without proving that the

District acted out of "discriminatory animus or ill will." *See* Dist. Br. at 20-21. Neither argument

has merit.

A. Plaintiff Has Alleged Facts that Fully Support Her ADA and DCHRA Claims

As an initial matter, the Complaint contains numerous allegations that the District, through

its agents and employees, failed to provide reasonable accommodations required by law to ensure

that Mr. Magbie was able to participate in the services offered by the District, including medical

care, food and water, and reasonably safe housing. *See, e.g.*, Complaint, ¶¶ 46-48. Plaintiff need

---

[9] For purposes of Plaintiff's reply to the District's motion to dismiss, Plaintiff accepts the District's premise that these two statutory claims may be treated in tandem. *See* Dist. Br. at 19 n.9.

only provide a "short and plain statement of the claim" to satisfy the notice pleading requirement of Fed. R. Civ. P. 8(a)(2). *See Swierkiewicz*, 534 U.S. at 512. It can hardly be argued that Plaintiff's pleadings are so deficient that the District lacks "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. Whether or not the District successfully discharged its statutory obligations to Mr. Magbie when it transferred him to the Hospital is not an issue to be decided at this early stage of litigation.

Even if this were the proper time to consider the District's argument, the flaws in its position are clear. The District's motion does not contest that Mr. Magbie was disabled within the meaning of the ADA, and in fact concedes that he was in need of accommodation on account of his "unique medical needs." Dist. Br. at 21. However, the District argues that it provided Mr. Magbie with an accommodation by transferring him from the D.C. Jail to the Hospital on September 20, 2004, and that any subsequent failure on the part of the Hospital, CCHPS, or CTF to accommodate Mr. Magbie's needs cannot create liability for the District. The sole argument in support of this position is that after Mr. Magbie was transferred to the Hospital, "[h]e never returned to the physical custody of the District." *Id.*

It is immaterial whether Mr. Magbie was in the *physical* custody of the District until the moment of his death. Title II of the ADA creates affirmative obligations on the part of public entities, and those entities cannot evade liability by contracting their duties to private entities. In explaining the regulation that describes the applicability of Title II of the ADA, the Department of Justice writes "All governmental activities of public entities are covered, even if they are carried out by contractors. For example, a State is obligated by title II to ensure that the services, programs, and activities of a State park inn operated under contract by a private entity are in

19

compliance with title II's requirements." Nondiscrimination on the Basis of Disability in State and Local Government Services, 28 C.F.R., pt. 35, app. A (commentary § 35.102). *Cf. Henrietta D. v. Bloomberg*, 331 F.3d 261, 286 (2d Cir. 2003) (concluding that there is supervisory liability on the state defendant under the Rehabilitation Act, and citing the above DOJ commentary for support).

Moreover, municipal liability under Title II of the ADA does not have to rely upon the existence of a municipal policy or custom. *See, e.g., Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 575 (5th Cir. 2002) (holding that "[a] plain reading of the ADA evidences that Congress intended to impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability. Thus, although it is true that for claims asserted under § 1983, an official policy must be identified, the same rule cannot be reconciled with Congress's legislative objectives in enacting the ADA . . . .") (internal citation omitted); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001) (holding that the doctrine of *respondeat superior* applies to claims asserted directly under the ADA "in part because the historical justification for exempting municipalities from *respondeat superior* liability does not apply to [the ADA], and in part because the doctrine would be entirely consistent with the policy of that statute, which is to eliminate discrimination against the handicapped") (internal quotation omitted); *Rosen v. Montgomery County Maryland*, 121 F.3d 154, 157 n.3 (4th Cir. 1997) (rejecting the argument that a municipality may be held liable under Title II of the ADA only for "a *policy* of discrimination", and instead holding that "liability may be imposed on a principal for the statutory violations of its agent.") (emphasis in original). Thus, the District will be subject to vicarious liability for the unlawful acts that the Complaint alleges were committed by District employees and agents if these

20

allegations are established.

A parallel to this analysis was explained above in the context of Plaintiff's claims pursuant to Section 1983. The District cannot shed its obligations to inmates simply by sending them to correctional facilities outside of the District, *see, e.g.*, *Warren*, 353 F.3d at 49; *Baker*, 326 F.3d at 1307, nor can the District avoid its "affirmative obligation to provide adequate medical care" by contracting out its medical services, *see West*, 487 U.S. at 55-56. The ADA creates an affirmative duty on the part of public entities (including the District) to ensure that qualified individuals are not discriminated against by reason of their disability. In addition to being liable for the acts committed by its agents and employees, the Complaint properly alleges that the District and Defendant Washington failed to provide reasonable policies and accommodations to ensure that Mr. Magbie participated fully and equally in the Jail and CTF's services, programs and activities. Complaint, ¶¶ 47-48.

## B. Plaintiff May Recover Damages Under Title II of the ADA Upon a Showing of "Deliberate Indifference"

The District additionally argues that Plaintiff cannot obtain money damages under Title II of the ADA unless she demonstrates that the District of Columbia "acted with discriminatory animus or ill will toward Mr. Magbie based on his disability." Dist. Br. at 20. This argument rests upon a fundamental misunderstanding of the law. In fact, Plaintiff can obtain money damages against the District under Title II by demonstrating that the District, or its contractors, acted with "deliberate indifference" to Mr. Magbie's need for an accommodation on account of his disability. *See, e.g.*, *Duvall*, 260 F.3d at 1138-39 (holding that the "deliberate indifference standard . . . is better suited to the remedial goals of Title II of the ADA than is the discriminatory

21

animus alternative noted in *Ferguson [v. City of Phoenix*, 157 F.3d 668 (9th Cir.1998).]"; *Bartlett v. New York State Board of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998) *vacated on other grounds*, 527 U.S. 1031 (1999) (adopting the "deliberate indifference" standard); *cf. Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999) (adopting the "deliberate indifference" standard for an award of compensatory damages under Section 504 of the Rehabilitation Act).

As support for its position, the District cites *Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846, 851 (9th Cir. 2001). Dist. Br. at 20. That case both predates *Duvall* and explicitly chose *not* to endorse the "discriminatory animus" test. *See id.* at 851(declining to decide whether "deliberate indifference" or "discriminatory animus" provides the "appropriate level of intent" for rewarding compensatory damages under Title II of the ADA). The District also cites a series of Second Circuit cases, Dist. Br. at 20, that actually support Plaintiff's position. In *Garcia v. S.U.N.Y. Health Services Ctr. of Brooklyn*, 280 F.3d 98, 111-12 (2d Cir. 2001), the Second Circuit distinguished between the standard for awarding damages in Title II claims against *State* governmental entities and the standard for such claims against *non-State* governmental entities; the distinction was drawn to protect State sovereign immunity under the Eleventh Amendment to the United States Constitution. The Second Circuit explicitly noted that "[a]lthough today's decision alters [the holding in *Bartlett*, 156 F.3d at 321] by requiring proof of discriminatory animus or ill will for Title II damage claims brought against states, nothing we have said affects the applicability of the deliberate indifference standard to Title II claims against non-state governmental entities." *Id.* at 115. It is well-settled that the District of Columbia is treated as a municipality, not as a State, and is therefore not entitled to sovereign immunity. *See, e.g.,*

22

*Dorman v. District of Columbia*, 888 F.2d 159, 162 (D.C. Cir. 1989); *Best v. District of Columbia*, 743 F.Supp. 44 (D.D.C. 1990).[10]

At the pleading stage, Plaintiff has clearly alleged facts sufficient to support a finding of deliberate indifference. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Duvall*, 260 F.3d at 1139 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). *See also Baker*, 326 F.3d at 1306-07 ("Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations . . . ."). Plaintiff's Complaint contains numerous allegations that the District, both through its employees and its agents, knew, or should have known, that Mr. Magbie required an accommodation on account of his disability. *See, e.g.*, Complaint, ¶¶ 22, 24 & 28. The Complaint further alleges that the District's failure to act when alerted to Mr. Magbie's need for an accommodation resulted from a failure to respond with appropriate policies, practices and procedures designed to protect his rights. *See, e.g.*, Complaint, ¶¶ 47, 48, 51 & 52. The District's motion to dismiss plaintiff's statutory claims should be denied in its entirety.

## IV. PLAINTIFF HAS ADEQUATELY ALLEGED A NEGLIGENCE CLAIM AGAINST THE DISTRICT.

The District asserts that, because all health care providers who came into contact with Mr. Magbie did so under contract with the District, it is insulated from liability under *Herbert v. District of Columbia*, 716 A.2d 196 (D.C. 1998). The holding in *Herbert* is expressly limited to

---

[10] Even if Plaintiff did have to show discriminatory animus or ill will, which she does not, Plaintiff has adequately alleged such animus. *See, e.g.*, Complaint, ¶ 40 (alleging that "Defendant Ogundipe displayed personal hostility towards Mr. Magbie and failed to provide him with necessary care including tracheal suctioning" while he was at CTF).

cases alleging ordinary medical negligence. It has no application to cases in which the plaintiff

alleges that failures in providing medical care violated rights under the Eighth Amendment or

applicable civil rights statutes. Nor does it apply to complaints like the current one alleging that

the District itself was negligent in delegating responsibility to contractors. *See* Complaint ¶ 69.

Significantly, the plaintiff in *Herbert* argued that, even if there were no negligence on the

part of the District, it was liable for malpractice committed by an employee of a District

contractor, because the District's duty to provide medical care for prisoners at the jail could not be

delegated under District of Columbia law. *Id.* at 198. The District of Columbia Court of Appeals

rejected that contention, reasoning that the District should not be liable when it was not at fault:

> Under the "non-delegable duty" doctrine, the District would be obliged
> to compensate the plaintiff even if District officials exercised due care
> in the selection and supervision of a health care provider, and even if the
> District's conduct has been in all respects free of negligence.

*Id.* at 199. The fact that the court of appeals rejected this contention does not remotely suggest

that it would reject Plaintiff's claim here. Indeed, its reasoning indicates the opposite.

The court noted that, under *West*, 487 U.S. at 56, the District has a non-delegable duty

under the Constitution to assure that prisoners are not subjected to cruel and unusual punishment.

Accordingly, the decision in *Herbert* suggests that the District is liable for treatment of a prisoner

by the District's contractors that would amount to an Eighth Amendment violation if committed

by District employees, regardless of proof of *Monell* liability.

Further, and even more significantly, the court in *Herbert* emphasized that the District has

a statutory (under D.C. Code 24-442) and common law obligation to exercise reasonable care in

providing prisoners with access to medical services. Indeed, the court stated that it is "undisputed

that the District may be held liable for its own negligence in the medical treatment of persons confined in correctional facilities." *Id.* at 198. Moreover, the negligence for which the District is liable includes such negligence on the part of city officials or employees. *Id.* at 201.[11]

Because the court of appeals in *Herbert* noted the possibility that the District could be negligent in the selection or supervision of its contractors, *see id.* at 199, and explicitly distinguished such a case from its holding, District of Columbia law permits alleging negligent supervision of a contractor by District agents or officials as a basis of District of liability. This Complaint alleges negligence on the part of all Defendants, necessarily including Defendant Washington, a policymaker for the District of Columbia. *See* Complaint, ¶ 69; *see also supra* at 3 n.2 (demonstrating that the District has admitted that Defendant Washington was at the relevant times a policymaker for it.).

As noted in Section II, *supra,* Fed. R. Civ. P. 8 allows negligence to be pled without factual detail, as Plaintiff has done. In addition, Paragraph 51 of the Complaint alleges that Defendant Washington knew that the District kept persons in custody for which it lacked safe and appropriate medical services and facilities, but failed to take action. This allegation of actual knowledge necessarily includes an allegation that Defendant Washington negligently failed to assure that the District avoided confining persons in facilities that lacked appropriate medical services. Accordingly, Plaintiff has, for purposes of Rule 8, adequately alleged negligence attributable to the District under District of Columbia law, and the District's attempt to dismiss this portion of the Complaint should be denied.

---

[11] "[T]he District cannot be held liable without proof of negligence on the part of its officials or employees."

## V.  IN THE EVENT THAT THE COURT GRANTS THE DISTRICT'S MOTION IN ANY RESPECT, PLAINTIFF WILL AMEND HER COMPLAINT TO CURE THE PLEADING DEFICIENCY.

For the reasons given above, Plaintiff urges the Court to deny Defendants' motion in all

respects.  In the event that the Court disagrees, however, Plaintiff anticipates curing the pleading

deficiency.  Because the District has not filed an Answer to the Complaint, Plaintiff remains

entitled to amend her Complaint as of right.  *See, e.g., Barksdale v. King,* 699 F.2d 744, 747 (5th

Cir. 1983) (holding that the fact that some defendants had answered, and the other defendant had

filed a motion to dismiss, did not deprive the plaintiff of the right to amend his complaint without

leave of court).  Even if Plaintiff did not have such a right, the general policy of the Federal Rules

for determination of cases on the merits would support granting leave for Plaintiff to cure any

pleading deficiency at this initial stage of the litigation:

> The federal rule policy of deciding cases on the basis of the substantive
> rights involved rather than on technicalities requires that the plaintiff be
> given every opportunity to cure a formal defect in the pleadings.  This
> is true even when the district judge doubts that the plaintiff will be able
> to overcome the shortcomings in the initial pleading.  Thus, the cases
> make it clear that leave to amend the complaint should be refused only
> if it appears to a certainty that the plaintiff cannot state a claim.

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 3d* § 1357

(3d ed. 2004) (footnotes omitted).

## VI. CONCLUSION

For the above reasons, Plaintiff requests that the District of Columbia's motion be denied

in all respects.

Respectfully submitted,

_____s/ Donald M Temple_____
Donald M. Temple, D.C. Bar No. 408749
Temple Law Office
1229 15th Street, NW
Washington, DC 20005
202-628-1101

Edward J. Connor, D.C. Bar No. 321505
5210 Auth Road, Suite 304
Camp Springs, MD 20746
301-899-7801

Elizabeth Alexander, D.C. Bar No. 412904
National Prison Project of the ACLU Foundation
915 15th Street, NW, 7th Floor
Washington, DC 20005
202-393-4930

Arthur B. Spitzer, D.C. Bar No. 235960
American Civil Liberties Union
 of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, DC 20036
202-457-0800

Counsel for Plaintiff

January 10, 2006