UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

MARY R. SCOTT, individually and )
as Personal Representative of the Estate )
of JONATHAN MAGBIE, )
 )
     Plaintiff. )
 )
v. )    Civil Action No. 05-1853 (RWR)
 )
 )
DISTRICT OF COLUMBIA, *et al.* )
 )
     Defendants. )
_____)

**DEFENDANT DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFF'S OPPOSITION
TO ITS MOTION TO DISMISS**

     The defendant District of Columbia ("the District") hereby responds to the plaintiff's

Opposition to Defendant District of Columbia's Motion to Dismiss ("Opposition") as follows:

**1.     PLAINTIFF HAS NOT REBUTTED THE DISTRICT'S SHOWING THAT
COUNT III IN THE COMPLAINT, ALLEGING COMMON LAW "MEDICAL
NEGLIGENCE," MUST BE DISMISSED.**

     In its Second Amended Motion to Dismiss ("Motion"), the District argued that Count III

in the plaintiff's complaint, entitled "Medical Negligence," must be dismissed, because the

plaintiff's only factual allegations of medical negligence arise out of the conduct of independent

contractors of the District for whose conduct the District is not vicariously liable.  (Motion at 23-

33.)  The "medically negligent" care alleged in plaintiff's Complaint was provided by the

District's independent contractors—CCHPS and Greater Southeast Community Hospital.

Plaintiff's complaint does not allege any facts to support a claim that District employees were

medically negligent.  Hence, the District's motion explained that Count III must be dismissed.

Plaintiff's Opposition apparently concedes that the District cannot be held liable for the "ordinary negligence" committed by independent contractors that are not employees of the District. (Opposition at 23-24.) However, the Opposition argues that the District may still be held liable under Count III for "medical negligence" based on the conduct of former Director of the Department of Corrections ("DOC") Odie Washington.

Plaintiff's Opposition with regard to Count III must be disregarded, because it is based on allegations that are *not* contained in Count III of her complaint. Specifically, in her Opposition, the plaintiff argues that Count III was actually meant to allege that Odie Washington was negligent in his "selection or supervision of [the District's medical] contractors" and that the District is liable for this under the doctrine of *respondent superior*. (Opposition at 24.) The Opposition contends that the plaintiff's "medical negligence" claim actually alleges that "Defendant Washington negligently failed to assure that the District avoided confining persons in facilities that lacked appropriate medical services." (Opposition at 25.) Plaintiff is not deterred by the fact that Count III contains no such allegations.

Indeed, Count III does not *mention* Odie Washington, nor does it contain *any* allegations regarding the selection or supervision of contractors by Odie Washington. Plaintiff's latest theory, as explained in her opposition, relies on paragraph 63 of the Complaint, which "repeats, realleges, and incorporates by reference …. every relevant allegation" above. This argument cannot save Count III, because the plaintiff does not allege before paragraph 63, or anywhere in Count III, that the District is liable for Mr. Washington's allegedly negligent selection and supervision of contractors. Rather, this argument is the plaintiff's effort to amend her Complaint, *sub silentio.* As such, the plaintiff has not rebutted the District's argument regarding

Count III, at least as it is drafted today.  Count III therefore must be dismissed for failure to state an actionable claim against the District of Columbia.

By its terms, Count III seeks to recover for medical malpractice by a medical practitioner. Count III alleges that "Jonathan Magbie enjoyed the status of a medical patient within a patient/provider relationship, and relied upon the care, skill and judgment of those who provided … treatment to him."  (Complaint at ¶ 67.)  According to the Opposition, this language was meant to refer to Mr. Washington.   However, the plaintiff's complaint does not allege that Mr. Washington had a "patient/provider relationship" with Mr. Magbie, or that Mr. Magbie possibly could have relied upon his "care, skill and judgment" in the context of such a relationship. Clearly, Mr. Washington was not a nurse or a doctor that treated Mr. Magbie.  Rather, according to the plaintiff's complaint, Mr. Washington was the "Director of the Department of Corrections."  (Complaint at ¶ 4.)

Count III further alleges that the District's agent or employee, *viz* Odie Washington, "had a duty to treat Mr. Magbie with the same degree of skill, care or knowledge which a reasonable and prudent person of the *medical profession* would have exercised under the same or similar circumstances." *(Id.* at ¶ 68, emphasis added.)  However, the plaintiff's complaint does not allege that Odie Washington ever was in the "medical profession," or personally provided medical care to Mr. Magbie.

In her Opposition, the plaintiff contends that Count III is adequate under Fed. R. Civ. P. 8, which requires only "notice pleading."  However, this argument does not rebut the District's Motion to Dismiss.  In its Motion, the District does not contend that it has inadequate notice of the plaintiff's claim based on medical negligence.  Rather, the District's argument is that the plaintiff's allegations, which are clear enough, fail to state a basis upon which relief may be

granted.  Thus, assuming that Count III means what it says, it must be dismissed.  Plaintiff

should not be allowed to avoid this result by arguing that it means something other than what it

says.

The facts as alleged show all of the providers of medical care referenced in Count III

were employed by independent contractors.  Moreover, the plaintiff's contention that Count III

seeks to recover from the District based on negligence by Odie Washington must be rejected.

2.    **EVEN IF THE PLAINTIFF'S COMPLAINT HAD ALLEGED "NEGLIGENT SUPERVISION," THAT CLAIM WOULD HAVE BEEN SUBJECT TO DISMISSAL FOR FAILURE TOS TATE A CLAIM.**

As demonstrated above, the allegations of negligence relied upon in plaintiff's

Opposition are not contained in plaintiff's complaint.  However, even assuming that Count III

did actually allege that the District could be held liable based on the conduct of Odie Washington

in supervising its independent medical contractors, that allegation still would be subject to

dismissal.

The Opposition's allegation that the District failed to supervise its independent

contractors is anomalous and fails to state a claim.  Under D.C. law it may be possible to

establish vicarious liability where an employer does not properly supervise an employee, or even

an "agent."  However, this concept is not applicable to independent contractors.

The torts of negligent hiring and supervision are actionable in the District of Columbia.

*See Tarpeh-Doe v. United States*, 307 U.S. App. D.C. 253, 28 F.3d 120, 123 (D.C. Cir. 1994);

*Phelan v. City of Mt. Rainier*, 805 A.2d 930, 937 (D.C. 2002).  As with any negligence action,

the plaintiff must show that in its hiring or supervision, the defendant breached an applicable

duty of care, causing injury to the plaintiff. *See Phelan*, 805 A.2d at 938 (citations omitted). In

addition, to establish a cause of action for negligent supervision, a plaintiff must show: (1) that

the employer "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner," and (2) that the employer, "armed with that actual or constructive knowledge, failed to adequately supervise the employee." *Giles v. Shell Oil Corp*., 487 A.2d 610, 613 (D.C. 1985) (emphasis omitted); see also *Ryczek v. Guest Servs., Inc*., 877 F. Supp. 754, 764 (D.D.C. 1995) (granting summary judgment for defendant in absence of evidence to "suggest that  [defendant] knew or should have known about any improper activity or that [defendants'] negligence caused damages to the plaintiff."

However, these cases are limited to employees of the defendant.  In contrast, in the instant case, the District has demonstrated that it is *not* the employer of the employees whose "medical negligence" allegedly caused Mr. Magbie's death.  Therefore, the District may not be held liable for their medical negligence under the theory of *respondent superior* or under a theory of independent liability based on "negligent supervision."[1]  Both theories require the existence of an employment relationship, which does not exist here.

Indeed, the law in the District as set forth in *Herbert v. District of Columbia*, 716 A.2d 196 (D.C. 1998)(*en banc*), contradicts plaintiff's argument.  In *Herbert* the D.C. Court of Appeals held that the District may delegate its statutory obligation to provide medical care to inmates to an independent contractor and thereby avoid common law liability for the torts of medical providers.  The ability to contract for medical care for inmates allows the District take advantage of the medical and institutional expertise found in the Washington, D.C. area.  However, the thrust of plaintiff's newly minted tort would require the District to "supervise" its independent contractors' employees as if they were its own.  Such an extension of the law defeats the purpose of retaining an independent contractor.

---

[1] This independent action is often used against an employer when the employee was not acting in the scope of his or her employment, so vicarious liability is not available.

The Restatement (Second) of Agency, adopted by the D.C. Court of Appeals in *Brown v. Argenbright Sec.Inc.*, 782 A.2d 752, 760 (D.C. 2001), appears to permit a negligent supervision claim with regard to the conduct of non-employees, such as independent contractors, in very limited circumstances. Such a claim is available only if the defendant was negligent "in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control." The Restatement (Second) of Agency, § 213 (1958). Here, the alleged medical negligence did not occur on the premises of the D.C. Jail. Instead, the complaint clearly indicates that the negligent conduct occurred at the CTF Infirmary and/or Greater Southeast. As such, these limited circumstances do not exist, and the plaintiff has no legal authority on which to base the novel theory that the District can be held liable for failing to supervise its independent contractors.

Therefore, even if plaintiff had made such allegations in her complaint, the new tort theory plaintiff advances—that the District "negligently supervised" its medical contractors— should be rejected as without support in the law. Accordingly, Plaintiff's Count III must be dismissed, and any attempt to amend the complaint to include this theory should be denied as futile.

**3.     THE PLAINTIFF'S ADA AND DCRHA CLAIMS MUST BE DISMISSED, BECAUSE THE DISTRICT CANNOT BE HELD LIABLE FOR THE ALLEGED DISCRIMINATORY INTENT OF ITS CONTRACTORS, AND BECAUSE THE ACCOMMODATIONS PROVIDED BY THE DISTRICT WERE REASONABLE.**

In its Motion to Dismiss, the District argued that the plaintiff had not stated an actionable claim under the Americans with Disabilities Act ("ADA") or the D.C. Human Rights Act ("DCHRA"), because the plaintiff had not alleged that the District acted with discriminatory intent toward Mr. Magbie. (Motion at 20-21.) The District further argued that the complaint itself precluded any argument that the District had not put reasonable accommodations in place

for individuals with disabilities such as those suffered by Mr. Magbie, because the plaintiff's

claim arises out of a medical decision, which cannot be the basis for an ADA claim. (Motion at

21-22.)

     The Opposition fails to adequately dispute either of these arguments. The complaint does

not allege that District of Columbia employees were deliberately indifferent to Mr. Magbie's

needs, nor does it allege that District policymakers were deliberately indifferent to the risk that

the District's contractors were likely to violate paralyzed inmates' rights to be free from

disability discrimination. Instead, the complaint merely asserts that the District's private

contractors provided inadequate medical care to Mr. Magbie. Such an allegation cannot, as a

matter of law, result in the District's liability for money damages under the ADA or the DCHRA.

     **A.**    **The Complaint Does Not Allege that any District Employees Were Deliberately Indifferent to Mr. Magbie's Medical Needs.**

     The Opposition concedes that, to recover compensatory damages under the ADA, a

plaintiff must prove that the defendant acted with discriminatory intent. (Opposition at 21.) The

Opposition correctly notes that this discriminatory intent need not be a direct showing of ill will

toward the plaintiff (or its decedent, as in this case); it instead can be established by a showing of

deliberate indifference. The Opposition also correctly states that the District cannot shirk its

affirmative ADA duties by delegating its duty to provide public services to an independent

contractor.

     However, the Opposition then confounds these two separate legal standards and, in doing

so, grossly mischaracterizes what is required to state a claim for money damages under the ADA.

The Opposition incorrectly asserts that "the Plaintiff can obtain money damages against the

District under Title II by demonstrating that the District, *or its contractors*, acted with 'deliberate

indifference' to Mr. Magbie's need for an accommodation on account of his disability."

(Opposition at 21, emphasis added.)  Contrary to this assertion, for the purposes of a claim for money damages, discriminatory intent cannot arise out of the deliberate indifference of a private contractor.

It is important to note that not one of the cases cited by the plaintiff in support of her "non-delegable duty" argument suggests that money damages can be obtained from a defendant without a showing that the defendant *itself* acted with discriminatory intent.[2]  Instead, the liability based on discriminatory intent is established pursuant to the doctrine of *respondeat superior*, based on the intentional discrimination of an employee or agent of the defendant.[3]

Here, the complaint does not contain a single allegation that any District employees were aware of Mr. Magbie's plight, or acted with deliberate indifference with regard to Mr. Magbie's medical needs.  To the extent that the complaint asserts any deliberate indifference to Mr. Magbie's needs, such discriminatory intent arose solely out of decisions made by employees of independent contractors, not by decisions made by Defendant Odie Washington or any other employee of the District.  The Opposition argues that the plaintiff's complaint "contains numerous allegations that the District, both through its employees and agents, knew, or should

---

[2]  The primary case on which the Opposition relies on support of this doctrine, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 265 (2d Cir. 2003), arises out of an order for *injunctive* relief, and does not address money damages.  In fact, the *Henrietta D.* decision is based on Title III of the ADA, which does not permit money damages.  Other cases relied on by the plaintiff arise out of the acts of the defendants' own employees, not the acts of private contractors. *See, e.g., Delano-Pyle v. Victoria County*, 302 F.3d 567, 574-575 (5th Cir. 2002) (*respondeat superior* liability for ADA claim arising directly out of conduct of County employees); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001) ("The County is therefore vicariously liable for the actions of the two County employees...."); *Rosen v. Montgomery County*, 121 F.3d 154, 157 (4th Cir. 1997) (*respondeat superior* liability for ADA claim arising directly out of conduct of County police officers).

[3]  An employee of an independent contractor is not an "agent" of other parties to the contract.  According to Black's Law Dictionary, an "agent" is "one who is authorized to act for or in the place of another, a representative."  (Pocket Edition at 23).  In contrast, an "independent contractor" is defined as "one who is hired to complete a specific project but who is left free to do the assigned work and to choose the method for accomplishing it."  (*Id.* at 309.)  According to the Restatement (Second) of Agency, § 14N, an independent contractor can be considered an "agent" only where it is "subject to the other's control except with respect to his physical conduct."  The Restatement explains that "a person who contracts to accomplish something for another or to deliver something to another, but who is not acting as a fiduciary for the other, is a non-agent contractor," and notes that the term is used to describe individuals "who have contracted to accomplish physical results not under the supervision of the one who has employed them to produce the results."

have known, that Mr. Magbie required an accommodation on account of his disability," and

refers to Paragraphs 22, 24, and 28 in support of this argument. However, these paragraphs

contain no such allegation. Paragraph 22 alleges that Defendant Davis, a radiologist providing

medical services to prisoners at the Jail pursuant to the CCHPS contract with the District of

Columbia,[4] failed to follow up on Mr. Magbie's abnormal x-ray. Paragraph 24 alleges that, on

the day Mr. Magbie arrived at the Jail, he experienced difficulty breathing, "told the Jail medical

staff that he needed a ventilator to breathe at night," and was transferred to the hospital. Notably,

the plaintiff concedes that the "Jail medical staff" are employees of CCHPS, not the District.

Finally, Paragraph 28 alleges that Defendant Bastien, Medical Director for CCHPS, and

Defendant Vaughn, a physician working at the Hospital, took steps to have Mr. Magbie returned

to the CTF infirmary, which is located in a private facility and operated by CCHPS.

Nowhere in the complaint is there any allegation that any employee of the District was

aware of, and disregarded, Mr. Magbie's special needs. To the extent that the complaint could

infer any such awareness on the part of any District employee, it could arise only out of the first

day Mr. Magbie was at the D.C. Jail. That day, he was transferred to the hospital, and never

again returned to the Jail. (Complaint at ¶ 22-45.) As such, there cannot be an inference from

the complaint that any District employee was deliberately indifferent to the needs of Mr. Magbie

himself. The District therefore cannot be held liable for money damages under Title II of the

ADA pursuant to the doctrine of *respondeat superior.*

### B. The Complaint Does Not Allege that District Policymakers Were Deliberately Indifferent to a Strong Likelihood that its Policies Would Lead to Violations of the ADA with Regard to Similarly Disabled Inmates.

Alternatively, the case law might also leave room for compensatory damages if an

independent contractor's violation of the ADA arose out of the defendant's own deliberate

---

[4] Complaint at ¶ 8.

indifference to the impact of its policies or customs.  While it is not clear that a defendant ever can be held liable for compensatory damages arising out of an independent contractor's violation of the ADA, it is clear that, in such a situation, the deliberate indifference must be that of a "policymaker" of the defendant.  According to the very same case law as that cited by the Opposition, only a "policymaker" of the defendant can exhibit the type of deliberate indifference sufficient to state a claim for money damages under the ADA arising out of the defendant's policies or customs.  In *Powers v. MJB Acquisition Corp.*, the Tenth Circuit explained that "intentional discrimination may be inferred when a *policymaker* acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy [or] custom."  184 F.3d 1147, 1153 (10th Cir. 1999).  Another case relied on by the Opposition, *Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998), contains identical language.

Therefore, according to established case law, the District's affirmative obligations under the ADA and HRA cannot expose the District to liability for *compensatory* damages if the District was not *itself* deliberately indifferent to the needs of the plaintiff.  Here, the plaintiff has presented no legal authority to support the proposition that a municipality can be held liable for money damages based solely on the deliberate indifference of an independent contractor.

In the context of the plaintiff's ADA and DCHRA claim, this standard means that the plaintiff must have alleged that the District or its policymakers knew that there was a "strong likelihood that pursuit of its questioned policies [would] likely result in a violation" of quadriplegic prisoners' rights under the ADA.  *Powers*, 184 F.3d at 1153.  Failure to allege any such facts must result in dismissal for failure to state an actionable claim for money damages.

The Opposition asserts that the plaintiff has made such an allegation, referring the Court to Paragraphs 47, 48, 51, and 52 of the complaint. However, a review of these paragraphs, especially when viewed in conjunction with the complaint's factual allegations, shows that the plaintiff has not and cannot state a claim for money damages against the District under the ADA. Paragraphs 47 and 48 of the complaint simply allege that the District and Mr. Washington "failed to provide reasonable policies for assuring medical care, basic needs, and reasonably safe housing for persons suffering from paralysis and related disabilities," and that they failed to make reasonable accommodations in these policies and practices to enable Mr. Magbie to "participate fully and equally" in the public services provided at the Jail and CTF. These allegations simply restate the law—there is not a scintilla of fact alleged in the complaint that can support these averments.[5]

To the contrary, the facts alleged in this complaint totally disprove this conclusory language. As the District's Motion explains, the District's "polices, practices, and procedures" clearly permit medical staff at the hospital to provide additional medical care to disabled prisoners by transferring them to the hospital for appropriate care. (Motion at 22.)

The Opposition addresses this point in an offhand manner, stating that "[w]hether or not the District successfully discharged its statutory obligations to Mr. Magbie when it transferred

---

[5] It is important to note that the Opposition's persistent reference to the limited requirements of notice pleading ignores the clear case law regarding the requirement of factual allegations to support a claim. Citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957), the Opposition states, "It can hardly be argued that Plaintiff's pleadings are so deficient that the District lacks 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (Opposition at 19.) However, the District's contention is not that the plaintiff has not put the District on notice of her claims. Its contention is that the plaintiff's allegations cannot support an ADA or DCHRA claim. The plaintiff's complaint is rife with broad, sweeping, conclusory language regarding the District's policies and practices. However, according to the D.C. Circuit, although the non-moving party enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations of his complaint, bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of a motion under Rule 12(b)(6). *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987) Rather, the court need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint, "[n]or must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications* Corp., 16 F.3d 1271, 276 (D.C. Cir. 1994).

him to the Hospital is not an issue to be decided at this early stage of litigation." (Opposition at

19.) However, this is precisely the type of issue that should be determined at this stage in the

litigation. There is no legal authority to support the plaintiff's assumption that a full-service

hospital could not have provided Mr. Magbie with "basic provisions such as food and water and

reasonably safe housing," which are the only "public services" the plaintiff claims Mr. Magbie

was denied due to his disability. The complaint certainly doesn't allege that, under the ADA, the

D.C. Jail itself must operate as a full-service hospital, nor is there any legal authority that could

support such a proposition.

　　　If the plaintiff has no authority to suggest that hospitalization is not a reasonable

accommodation to provide for the basic medical and physical needs of a disabled prisoner, the

plaintiff's complaint cannot allege that the District had no policies in place for accommodation

of disabled prisoners such as Mr. Magbie. A plaintiff is only entitled to discovery on a matter if

there is a factual issue in dispute. Here, there is no factual dispute regarding whether the policy

permitting hospitalization of paralyzed inmates violated their right to food, water, and medical

care. Without such a dispute, the plaintiff's bald and conclusory allegation that Mr. Washington

was deliberately indifferent to the need to provide such medical care to prisoners carries no

weight, and the plaintiff's ADA claim must be dismissed as a matter of law.

### C.　　　The Opposition Does Not Refute the District's Argument that Inadequate Medical Care Cannot Give Rise to an ADA or DCHRA Claim.

　　　Most importantly, the Opposition fails to address the District's argument that an

allegation of medical malpractice cannot be the basis of an ADA claim. Plaintiff's ADA claim

does not arise out of the initial incarceration of Mr. Magbie based on the court's sentencing

order, nor can it.[6]  Furthermore, the plaintiff's ADA claim cannot arise out of the transfer of Mr.

Magbie to the hospital on the day he arrived at the D.C. Jail.  Plaintiff has not alleged that the

hospital could not satisfy his need for "medical care," "food and water," and "reasonably safe

housing."  (*See supra* Part 2B.)  Thus, the only basis for the plaintiff's ADA claim is the medical

decision of a hospital doctor and the CCHPS medical director to permit Mr. Magbie to return to

CTF.  (Complaint at ¶ 25-45.)  Even making all reasonable inferences in the plaintiff's favor, she

merely has alleged that the Greater Southeast Community Hospital and CCHPS physicians'

decision that the CTF could handle Mr. Magbie's needs was incorrect and resulted in a denial of

appropriate medical care.

Clearly, such a claim could not be due to the deliberate indifference of Mr. Washington

or any other policymaker of the District, because such a decision must be classified as a decision

relating to the medical care of Mr. Magbie.  In its Motion, the District noted that this medical

decision could not be the basis for any monetary damages claim under the ADA or DCHRA

against the District.  (Motion at 22.)  The Opposition does not adequately refute this argument.

It is well-settled that decisions involving medical judgment, as a matter of law, cannot be

the basis of an ADA violation.  In *Fitzgerald v. Corrections Corporation of America*, a case with

striking similarities to the case at bar, the plaintiff broke his hip while incarcerated in a prison

operated by CCA.  403 F.3d 1134, 1136 (10th Cir. 2005).  The plaintiff alleged that he suffered

this fracture after experiencing a diabetes-related seizure, and claimed that his injuries resulted

from the prison authorities' failure to adequately treat his diabetes and to provide him with a

---

[6] It is well-settled that the District cannot be held liable for the actions of its judges acting in their judicial capacity. As a class, judges have long enjoyed absolute immunity from any lawsuit arising out of their judicial functions. *Forrester v. White*, 484 U.S. 219, 225 (1988).  The D.C. Circuit Court of Appeals unequivocally has held that judges are protected by absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of all jurisdiction.  *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993).  It also is established that the District cannot refuse to accept prisoners placed in its custody pursuant to such prosecutorial action.  *United States v. District of Columbia*, 703 F. Supp. 982, 984-985 (D.D.C. 1988).

wheelchair.  He alleged that he suffered further injuries due to the defendants' failure to secure a medical evaluation for his injuries until five months after he incurred them, and ultimately failed to provide any treatment for him at all.  *Id.*

The Tenth Circuit affirmed summary judgment against the plaintiff on his claims brought under the ADA.  The court explained that a claim arising out of the quality of medical care provided to a disabled individual cannot give rise to an ADA violation, because such a plaintiff cannot show that he was "otherwise qualified" for the service, nor can he show that he was denied appropriate care "solely by reason of his disability."[7]  *Id.* at 1144.  The court noted that, according to established case law:

> we have held that "the term otherwise qualified cannot ordinarily be applied 'in the comparatively fluid context of medical treatment decisions without distorting its plain meaning." *Johnson*, 971 F.2d at 1493-94. As to whether treatment was denied "solely" by reason of disability, the Second Circuit has stated: "Where the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say. . . that a particular decision was 'discriminatory.'" *United States v. University Hospital*, 729 F.2d 144, 157 (2nd Cir. 1984) (Rehabilitation Act).

*Id.* at 1144.

Several other circuits have concluded that the ADA cannot provide a remedy for a medical decision, even if that decision resulted in a denial of basic care to a disabled person.  In *United States v. University Hospital*, the Second Circuit noted that:

> in arguing that Baby Jane may have been "subjected to discrimination," the government has taken an oversimplified view of the medical decisionmaking process.  Where the handicapping condition is related to the (conditions) to be treated, it will rarely, if ever, be possible to say with certainty that a particular decision was "discriminatory."…  Beyond the fact that no two cases are likely to

---

[7] In its Motion, the District made this argument primarily with regard to the latter element of an ADA claim, noting that "the plaintiff merely has alleged that the Greater Southeast and CCHPS physicians' decision that the CTF could handle Mr. Magbie's needs was incorrect," and that such a medical decision "cannot be the basis for a monetary damage claim under Title II of the ADA or the DCHRA against the District of Columbia."  (Motion at 22.) However, as noted by the Second Circuit in *United States v. University Hospital*, 729 F.2d 144, 156 (2nd Cir. 1984), the two issues—whether the plaintiff was "otherwise qualified" and whether he was "subjected to discrimination"—are intertwined.

be the same, it would invariably require lengthy litigation primarily involving conflicting expert testimony to determine whether to treat, or not to treat, … was based on a "bona fide medical judgment." …

The legislative history, moreover , indicates that congress never contemplated that section 504 [Rehabilitation Act] would apply to treatment decisions of this nature.

729 F.2d 144, 157 (2nd Cir. 1984).

Furthermore, the Seventh Circuit has held that discovery is not always necessary to make such a determination, affirming a Rule 12(b)(6) dismissal of a complaint, because "[a]llegations of discriminatory medical treatment do not fit into the four-element framework required by section 504 [Rehabilitation Act]. Rather, an examination of these elements as a whole suggests that the statute simply does not address such claims." *Grzan v. Charter Hospital of Northwest Indiana*, 104 F.3d 116, 121 (7th Cir. 1997); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("ADA does not create remedy for medical malpractice.").

Here, when stripped of its conclusory legalese, the complaint alleges nothing more than that the District's private contractors' failure to make a proper medical decision regarding their ability to care for Mr. Magbie. Pursuant to established law, such an allegation cannot support the plaintiff's claim that Mr. Magbie was "otherwise qualified" under the ADA, or that he was discriminated against "solely because of" his disabilities.

In light of this, there is no room for an inference that the District policymakers, in permitting its contractors to make the type of medical decision that led to Mr. Magbie's release from the hospital, were deliberately indifferent to Mr. Magbie's rights under the ADA. This analysis similarly establishes that the District, in having policies in place permitting its contractors to make these medical judgments, could not be considered deliberately indifferent to a risk that disabled prisoners' rights under the ADA and DCHRA would be violated. Plaintiff's

ADA and DCHRA claims therefore must be dismissed for failure to state a claim on which relief can be granted.

3.    **IN THE ALTERNATIVE, THE PLAINTIFF HAS FAILED TO REBUT THE DISTRICT'S SHOWING THAT THE D.C. JAIL IS NOT A "PLACE OF PUBLIC ACCOMMODATION" WITHIN THE MEANING OF THE D.C. HUMAN RIGHTS ACT AND THEREFORE COUNT IV MUST BE DISMISSED.**

As described above, in Count IV of her Complaint, the plaintiff alleges that District violated Mr. Magbie's rights under the D.C. Human Rights Act ("DCHRA"). (Complaint at ¶ 70.)  D.C. Code § 2-1402.73, cited as authority in the plaintiff's complaint, extends the applicability of the Human Rights Act to District facilities "as otherwise provided for by District law or when otherwise lawfully and reasonably permitted." Section 2-1402.73 does not create new rights; rather, it extends the protections found in other parts of DCHRA to District facilities.

The only part of the DCHRA which could apply to the D.C. Jail is the part concerning "public accommodations."  Clearly, the D.C. Jail was not a place of employment for Mr. Magbie, nor does it fall within any of the specific areas of prohibited discrimination such as real estate.  Rather, if the DCHRA is applicable at all, it would be because the Jail is considered a "place of public accommodation."

The relevant portion of the DCHRA, D.C. Code § 2-1402.31, provides that, "[i]t shall be an unlawful discriminatory practice to … (1) To deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations."  However, as demonstrated in defendant's motion, the D.C. Jail is not a "place of public accommodation" and therefore is not covered by the Human Rights Act.  (Motion at 22, n.11.)  The DCHRA provides specific exemptions from the definition of "public accommodation," including "institutions, clubs, or

places of accommodation which are in their nature distinctly private." D.C. Jail is such a place

which is by its nature "distinctly private."

As Judge Kennedy explained in *Adams v. Hitt Contr., Inc*., which was cited by the

District in its Motion:

> Under the DCHRA, a "place of public accommodation" includes places used "for
> the entertainment of transient guests or for the accommodation of those seeking
> health, recreation or rest; . . . or any place where food is sold for consumption on
> the premises; . . . wholesale and retail stores, . . . credit facilities . . . cleaning
> establishments; . . . amusement and recreation parks, . . . all public conveyances . .
> .; public halls and public elevators . . .," D.C. Code § 2-1402.02. While the list is
> not exhaustive, none of the cited examples are places where members of the
> general public are barred from entry.

2005 U.S. Dist. LEXIS 16872 (D.D.C. 2005)

Furthermore, the D.C. Jail may not be considered a "place of public accommodation" by

the operation of D.C. Code § 2-1402.02 (A), (B) and (C). These subsections allow that:

> …. a place of accommodation, institution, or club shall not be considered in its
> nature distinctly private if the place of accommodation, institution, or club:
> (A) Has 350 or more members;
> (B) Serves meals on a regular basis; and
> (C) Regularly receives payment for dues, fees, use of space, facilities,
> services, meals, or beverages directly or indirectly from or on behalf of
> nonmembers for the furtherance of trade or business.

In the case of the D.C. Jail, there are no "members" because inmates are incarcerated, and

therefore may not be considered voluntary "members" while at the Jail. In addition, although

meals are regularly served, the Jail does not regularly receive payment or fees for the "use of the

space," the meals, or in furtherance of a trade or business. Hence, the D.C. Jail does not fall

within the catch-all clauses in subsections (A), (B) and (C). Rather, the operation of jails has

historically been a not-for-profit governmental function.

Accordingly, because the plaintiff's Opposition failed to rebut defendant's argument that the D.C. Jail is not a "place of public accommodation," Count IV must be dismissed as it fails to state a basis upon which relief may be granted.

**4.    PLAINTIFF'S 42 U.S.C. 1983 CLAIM CANNOT SURVIVE BECAUSE THE FACTS DO NOT SUPPORT A FINDING OF MUNICIPAL LIABILITY.**

In its Motion, the District argued that the plaintiff did not allege any facts to support her claim for municipal liability under *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 694 (1978). (Motion at 1.) The Opposition contends that its complaint satisfies the requirement of "notice pleading," pursuant to *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993). (Opposition at 6-10.) However, even taking the plaintiff's limited factual allegations as true, she simply has not pled sufficient facts from which the Court can conclude that the District or Defendant Odie Washington was deliberately indifferent to Mr. Magbie's medical needs or to the risk that his constitutional rights would be violated, and therefore, should be held liable under 42 U.S.C. § 1983.

Significantly, in the complaint, the plaintiff appears to have summed up her alleged 42 U.S.C. 1983 violation in the following manner:

> The District of Columbia agents and employees acted pursuant to a policy or custom of accepting custody of persons, who, because of disabilities and medical needs, could not be safely confined at the Jail or CTF.

(Complaint at ¶ 51.) However, an analysis of the facts requires the conclusion that, even under the plaintiff-friendly standard in a motion to dismiss, the plaintiff's § 1983 claim cannot survive. As in the ADA claim, the plaintiff does not appear to assert that any alleged constitutional violation occurred when Department of Corrections initially accepted Mr. Magbie as a prisoner on September 20, 2004, when he "was ordered to serve a sentence of ten days imprisonment at the Jail as punishment for possession of a marijuana cigarette." (Complaint at

¶ 19; *see also supra* Part 2C.)  Nor could such a claim be made.  As a matter of law, the District cannot refuse to accept prisoners sentenced to serve time under District custody; it does not have discretion to determine which prisoners it can or cannot accept.  Pursuant to the district court's directive in *United States*, which addressed the issue of overpopulation at the D.C. Jail,

> … the District of Columbia must continue to accept and maintain … prisoners duly designated by the Attorney General to the District of Columbia Department of Corrections, provided that such designation would not cause the D.C. facilities to exceed population limits set by the United States District Court; (2) the Attorney General must retain custody of said prisoners whenever all facilities within the District of Columbia Department of Corrections meet or exceed the court ordered population caps such that no facility exists within the District of Columbia to serve as an available, suitable, and appropriate place of confinement; and (3) the District of Columbia must immediately undertake all feasible measures to provide space for all adult … male prisoners sentenced hereafter by the Superior Court.

*United States*, 703 F.Supp. at 984-985.

Furthermore, there are no facts in the complaint to suggest that the decision to transport Mr. Magbie from the Jail to the hospital on September 20, 2004 or his subsequent transfer from CTF Infirmary back to the Hospital on September 24, 2004 demonstrates deliberate indifference by the District or Mr. Washington to either his medical needs or to the risk that Mr. Magbie's constitutional rights would be violated.  Indeed, in *United States v. District of Columbia,* 703 F. Supp. 982, 984-84 (D.D.C. 1988), the district court reviewed the relevant statute regarding the placement of prisoners.  That statutory section, D.C. Code § 24-201.26 (then § 24-425), reads, in pertinent part:

> All prisoners convicted in the District of Columbia for any offense … shall be committed … to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served. The Attorney General may designate any *available, suitable, and appropriate institutions*, whether maintained by the District of Columbia government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one

institution to another if, in his judgment, it shall be for the *well-being of the prisoner*, or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons.

(D.C. Code § 24-201.26 (Supp. 2005), emphasis added.)

In this case, the plaintiff did not allege that the decision to transfer Mr. Magbie to the hospital on September 20, 2004, or his subsequent transfer back to the Hospital from CTF Infirmary on September 24, 2004, was unsafe or inappropriate. It is undisputed that the decision to transfer Mr. Magbie to a hospital on each of those dates was for his own well-being. Plaintiff simply cannot argue that such a decision violated Mr. Magbie's constitutional rights or could lead to an inference of deliberate indifference on the part of the District. Even the *United States* court recognized that transporting an inmate to a *hospital* is an appropriate alternative for housing sentenced prisoners. *See United States*, 703 F.Supp. at 994 (discussing the many alternatives available to the District in deciding where to house prisoners, including "transferring prisoners to Saint Elizabeth['s] Hospital"). Therefore, these facts do not support the plaintiff's contention that the District has a policy or custom of accepting custody of persons with disabilities and medical needs who could not be safely confined at the Jail or CTF.

Therefore, the complaint simply cannot support an inference that the District was deliberately indifferent to the risk of unconstitutional conduct on the part of its contractors, based on the "acceptance" of prisoners with medical needs. Not only are there no facts to support the plaintiff's generalized legal assertions that there was an unconstitutional policy or custom, the facts alleged affirmatively demonstrate that the District implemented a policy regarding the medical care and treatment of prisoners housed at the jail and CTF. In fact, the plaintiff concedes that a contract for services existed between the District and the Center for Correctional Health and Policy Studies, Inc. ("CCHPS"), which provided "medical care to prisoners in the Jail

and CTF." (Complaint at ¶ 6.) Such concessions belie the plaintiff's allegation that the District "lacked safe and appropriate medical services." (Complaint at ¶ 51.)

Even if the Court takes all reasonable inferences in the light most favorable to the plaintiff, her stated facts only demonstrate that the decision of the medical staff at Greater Southeast Community Hospital and CCHPS to transfer Mr. Magbie back to the CTF Infirmary—or rather, that CTF Infirmary could accommodate Mr. Magbie's medical needs—was incorrect. However, this decision, similar to the District's ADA argument, could not be linked back to then-Director Washington or any other District policymaker, because this was a medical determination, not a policy determination.[8] Moreover, these medical decisions do not rise to the level of "cruel and unusual punishment" as prohibited by the Eighth Amendment; rather, they should only be considered negligence. Plaintiff's attempt to convert a negligence claim to a constitutional claim, based on these facts, should be rejected by this Court.

While it may be true that under Fed. R. Civ. P. 8 and *Leatherman* that a plaintiff need not allege specifics of her claim supporting municipal liability, the details enumerated in this plaintiff's complaint eliminate any such inference. The facts show that the District's policy or custom was to permit the medical contractor to send prisoners in need of additional care to the hospital to receive such care. It is well-settled that this is a legally valid option for placement of patients with medical needs, and that the District is not permitted to refuse to "accept" any prisoners sentenced to its custody. *United States*, 703 F.Supp. at 984-985, 994. As such, the complaint fails to state a claim for municipal liability under 42 U.S.C. § 1983, and the plaintiff's constitutional claims therefore must be dismissed.

---

[8] Similarly, there are no facts that allege that the District had a policy of making inappropriate medical judgments, accepting the inappropriate medical judgments of others (including its contractors and/or hospital staff), refusing inmates medical attention or delaying inmates medical attention.

WHEREFORE, Defendant respectfully requests that this Court grant its Motion in the above-referenced case.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

_____
HOLLY JOHNSON
Chief, General Litigation Section III

_____
STEVEN J. ANDERSON
Assistant Attorney General
Bar no. 334480
Suite 600S
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6607
(202) 727-3625 (fax)
E-mail:  Steve.anderson@dc.gov