UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARY R. SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05-cv-1853 (RWR) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DECLARATION OF M.M. SHAPIRO

M.M. SHAPIRO, pursuant to 28 U.S.C. § 1746, hereby makes the following declaration under penalty of perjury:

    1. I am over the age of 18 years, and have personal knowledge of the facts stated in this declaration. I make this declaration in support of the Plaintiff's Opposition to defendant Singley's Motion to Quash Service of Summons and Complaint.

    2. I have been a professional process server for nearly 20 years. Prior to that I was a police officer in Prince George's County for 20 years.

    3. I have reviewed the Return of Service that I filed with regard to Officer Singley, as well as her Motion to Quash Service and her attached Affidavit.

    4. Edward Connor gave me instructions to serve a copy of the Summons and Complaint on each of the defendants in this action, including Officer Singley. I initially attempted to serve Officer Singley at the Correctional Treatment Facility (CTF), where I had been advised that she works as a correctional officer.

    5. When I arrived at CTF, I asked a contact of mine who works at CTF where I could find Officer Singley. He knew her by name, and immediately informed me that Officer Singley was on extended sick leave, and that she probably would not be returning. I cannot recall this man's name, but I believe he is a retired police officer, and I often speak with him when I go to CTF to serve papers on inmates or employees at the facility. He is always able to tell me where the inmate is being held, or where the employee is in the facility.

    6. I obtained Officer Singley's home telephone number using one of the databases I can access from my home computer. I telephoned her and first confirmed that the person I was

1

speaking to was the correctional officer who was on sick leave from CTF. I told her I had papers to serve her related to the performance of her duties at CTF. She told me that she would not be able to open her door, but that someone might be home to let me in the apartment. She confirmed that I could come by, and that it would not be a problem.

7. Sometime thereafter–it may have been one or two days–I went to her apartment. She lives in a ground floor apartment, and her door is near the rear of the building. I knocked on the door, and I could hear a woman yelling inside. I had to shout, because I could tell that the woman was not directly on the other side of the door.

8. I used my cell phone to call Officer Singley, and she answered her phone. I explained to her that I was the guy who had called previously, and I that I was here with the papers. She told me that she could not get out of bed, and that I should leave the papers in the door. Because it was a large amount of paper, I was able to roll the Summons and Complaint up into a big cylinder. I wedged the papers between the doorknob and the edge of the door, by the casing, and made sure it would not move until the door was opened.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 13, 2006

M.M. Shapiro