UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY SCOTT, Individually and :
as Personal Representative of the Estate of :
JONATHAN MAGBIE, :
:
    Plaintiff, :
:
        v. : Civil Action No. 1: 05CV01853
: (RWR)
ODIE WASHINGTON, :
*et. al,* :
    Defendants. :

## MOTION OF DEFENDANT ODIE WASHINGTON
## TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Fed.R.Civ.P. 12(b)(6), defendant Odie Washington moves to dismiss the plaintiff's Complaint. The basis of this motion is that plaintiff's Complaint does not allege that this defendant was personally involved in the events which lead to death of Mr. Magbie. In addition, Defendant Washington is entitled to qualified and absolute immunity for his discretionary decisions taken within the scope of his position as Director of the D.C. Department of Corrections before Mr. Magbie was incarcerated. Additional grounds for this motion are set forth in the attached memorandum of points and authorities.

            Respectfully submitted,

            ROBERT J. SPAGNOLETTI
            Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

_____
HOLLY M. JOHNSON
Chief, General Litigation Section III

_____
STEVEN J. ANDERSON
Assistant Attorney General
Bar no. 334480
Suite 600S__
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6607
(202) 727-3625 (fax)
E-mail:  Steve.anderson@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY SCOTT, Individually and  :
as Personal Representative of the Estate of  :
JONATHAN MAGBIE,  :
                                                              :
     Plaintiff,  :
                                                              :
        v.  :       Civil Action No. 1: 05CV01853
                                                              :       (RWR)
ODIE WASHINGTON,  :
*et. al*,  :
     Defendants  :

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ODIE WASHINGTON'S MOTION TO DISMISS

**Introduction**

Plaintiff brings this civil case against Defendant Odie Washington, former Director of the D.C. Department of Corrections in his individual capacity.[1] The Complaint seeks damages based the death of plaintiff's 27 year old son, Jonathan Magbie. Mr. Magbie died at the Greater Southeast Community Hospital on September 24, 2004. Complaint ¶ 23.

Mr. Magbie was incarcerated at the D.C. Dentition Facility ("DC Jail") on September 20, 2004, after being sentenced to jail for 10 days by a D.C. Superior Court Judge. *Id*. However, according to plaintiff "[w]hile at the Jail awaiting placement on September 20, 2004, he experienced difficulty breathing. He also told the Jail medical staff that he needed a ventilator to breathe at night. As a result, Mr. Magbie was transferred to Greater Southeast Community Hospital." *Id.* at ¶ 24.

---

[1] Any official capacity claims against Mr. Washington should be dismissed as identical to and redundant of claims against the District. As a matter of law, any claim against a District official is the equivalent of a claim against the District itself. Courts have routinely dismissed corresponding claims against individuals named in their official capacity as "an inefficient use of

"Greater Southeast Community Hospital ("GSCH") Corporation operates as a duly licensed and accredited District of Columbia hospital, providing heath care services within the District of Columbia." *Id.* at ¶ 14.  It is an independent contractor of the District.  *See generally*, the District's pending motion to dismiss.    Mr. Magbie never returned to the custody of the District of Columbia Department of Corrections after September 20, 2004.  Rather, after his transfer to GSCH on September 20 he was discharged on September 21, 2004, to the District of Columbia Correctional Treatment ("CTF") Facility. *Id.*  "Corrections Corporation of America, Inc. ("CCA") is a for-profit corporation operating the CTF pursuant to a contract with the District of Columbia." *Id*. at ¶ 9. CTF is also an independent contractor of the District.  Mr. Magbie stayed at CTF until September 24, 2004, when he was readmitted to the GSCH where he died.  *Id.* at ¶ 43.  Medical care Mr. Mabgie received at CTF was provided by another District independent contractor, CHHPS.  See Defendant District of Columbia's previously filed motion to dismiss where the contractual relationship between the District and its independent contractors CTF and CHHPS is developed more fully.

### Plaintiff's Allegations Against Defendant Washington

Plaintiff's complaint alleges that as Director of the D.C. Department of Corrections, Mr. Washington:

> [H]ad a duty to formulate, adopt, execute and maintain policies, standards, procedures and practices that were consistent with the civil rights of prisoners, including Jonathan Mabgie, under the Eighth Amendment to the United States Constitution and the laws of the United States and the District of Columbia.  These necessary policies include policies to assure that prisoners are provided with proper and necessary services to sustain the prisoner and those prisoners do not suffer discrimination and exclusion from services by reason of their disabilities.

---

judicial resources." *Cooke-Seals v. Dist. of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997).

4

*Id*. at ¶ 5.  Plaintiff's complaint also alleges that Defendant Washington "failed to provide reasonable policies for assuring medical care, basic needs and reasonably safe housing for persons suffering from paralysis and related disabilities." *Id*. 47.  The Complaint further alleges that Defendant Washington failed to make "reasonable accommodations in policies, practices and procedures to enable Jonathan Magbie to participate fully and equally in the Jail and CTF's public services, programs and activities." *Id.* at ¶ 48.  Finally, plaintiff's complaint alleges that "despite knowledge that adequate policies were required to assure that no prisoners were kept in custody for whom the Department of Corrections lacked safe and appropriate medical services and facilities" Defendant Washington "failed to promulgate or implement such polices." *Id.* at ¶ 51. Hence, plaintiff's complaint makes it clear that the basis of plaintiff's claims against Mr. Washington concern his conduct before Mr. Magbie was taken into custody by the D.C. Department of Corrections.

Based on these factual allegations, plaintiff claims Mr. Washington is personally liable for her son's death.  Plaintiff's complaint has two causes of actions against Mr. Washington.  Allegedly, Defendant Washington: 1) violated plaintiff decedent's rights under the Eighth Amendment to the U.S. Constitution, Count I; and  2) medical negligence caused the injury alleged to her decedent, Count III.  In Counts II and IV plaintiff seeks damages from "Defendants District of Columbia and the Hospital" but not from defendant Washington.

**Argument**

I.  Plaintiff's Complaint Fails to State a Claim Under the Eighth Amendment Against Defendant Washington.

The Eighth Amendment "is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions" and "serves as the primary source of substantive protection to convicted prisoners." *Whitley v. Albers,* 475 U.S. 313, 327 (1986). Eighth Amendment claims must be brought under 42 U.S.C. § 1983. However, section 1983 claims can only be asserted against those alleged to be personally responsible for the purportedly cruel and unusual punishment. In this case, Mr. Washington's conduct which was allegedly cruel and unusual punishment *predates* Mr. Magbie incarceration and implicates Mr. Washington's discretionary governmental policy decisions. In these circumstances, Mr. Washington enjoys qualified immunity.

Under Section 1983, individual government employees cannot be held vicariously liable for the unconstitutional actions of others. *Arnold v. Moore*, 980 F. Supp. 28, 35 (D.D.C 1997) ("It is well settled that public officials are not vicariously liable for the acts of their subordinates. Respondeat superior cannot form the basis for liability under § 1983"); *Fields v. Dist. Of Columbia Dep't of Corrections*, 789 F. Supp. 20, 22 (D.D.C 1992) ("It is clear that fellow government employees cannot be held liable under the theory of respondeat superior for either constitutional or common law torts.") Instead, to be held personally liable, the individual defendant must be alleged to have *personally* committed or participated in the unconstitutional act. *See, e.g., Nowlin v. Director, Dist. of Col. Dep't of Corr.*, 689 F. Supp. 26, 27 (D.D.C.

1988) (prerequisite to individual liability under § 1983 is "a showing of direct responsibility for the improper action.")

In the instant Complaint, plaintiff is seeking to hold Defendant Washington liable for the conduct of independent contractors of the District, GSCH and CTF by alleging that he should have implemented polices to prevent them from inflicting cruel and unusual punishment upon Mr. Magbie. Plaintiff does not allege that Mr. Washington was personally involved in any conduct which could affirmatively be characterized as "cruel and unusual" treatment of Mr. Magbie.

Rather, plaintiff seeks to impose a constitutional duty upon Mr. Washington which is not supported by Supreme Court jurisprudence. This concept was discussed by the Court in *Pryor-El v. Sharon Pratt Kelly, et. al.*, 892 F.Supp. 261 (1995), in the context of the Eighth Amendment:

> To state a claim under the Eight Amendment that the right to be free from cruel and unusual punishment has been violated, an inmate complaining of prison conditions must allege facts, that, if true, would satisfy both prongs of a bifurcated test. First, a plaintiff must allege that, objectively, conditions are or were serious enough to be considered cruel and unusual. *Wilson v. Seiter*, 501 U.S. 294, 198-99, 115 L.Ed. 2d 271, 111 S.Ct. 2321 (1991). Second, from a subjective point of view, the plaintiff must allege that the defendants acted with a sufficiently culpable state of mind. *Id.* . . . With regard to the subjective component of an Eighth Amendment claim, the Supreme Court observed that the prison officials' attitudes and conduct must evince "deliberate indifference" to the unreasonable risk posed [to] the inmates . . . "Deliberate indifference" is the equivalent of subjective recklessness, conscious disregard of a substantial risk of serious harm. *Farmer v. Brennan,* 128 L.Ed.2d 811, 114 S.Ct. 1970, 1979-80 (1994).

To state a claim for cruel and unusual punishment against defendant, plaintiff must allege conduct characterized by "obduracy and wantonness," not conduct that is "inadvertence or error in good faith." *Whitley, supra,* at 319. Such conduct would include "pain without any penological purpose," *see Estelle v. Gamble*, 429 U.S. 97, 103 (1976), or conditions that result in

an "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The Court in *Estelle* held that a complaint which alleges that a correctional system has been negligent in treating a medical condition does not state a claim under the Eighth Amendment. *Estell*, 429 U.S at 106. Rather, it is only "deliberate indifference to serious medical needs" that offends the Eighth Amendment. *Id*.

In *Estelle,* the Supreme Court refers with approval to specific Circuit Courts of Appeal's decisions as illustrative of the flagrant disregard of patient welfare necessary to a finding of deliberate indifference. *Estelle, supra*, at 104. *See, e.g., Williams v. Vincent*, 508 F.2d 541 (2d Cir, 1974) (doctor's *choosing* the "easier and less efficacious treatment" of throwing away the prisoner's ear and stitching the stump may be attributable to deliberate indifference . . .rather than an exercise of professional judgment"); *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974), *cert. denied sub nom. Thomas v. Cannon*, 419 U.S. 879 (1974) (injection of penicillin with knowledge that prisoner was allergic, and *refusal* of doctor to treat allergic reaction); *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir. 1970), *cert. denied*, 401 U.S. 983 (1971) (prison physician *refused* to administer the prescribed pain killer and rendered leg surgery unsuccessful by requiring prisoner to stand despite contrary instructions of surgeon) (emphasis added). *See also Martinez v. Mancus*, 443 F.2d 921 (2d Cir. 1970), *cert. denied*, 401 U.S. 983 (1970) (A § 1983 claim for denial of adequate medical care will be dismissed if it does not constitute cruel and unusual punishment).

In *Farmer v. Brennan,* 114 S. Ct. 1970 (1994), the Supreme Court adopted a "subjective recklessness" standard in 8th Amendment cases for determining if "deliberate indifference" to a

prisoner's needs has taken place.  That case held that a prison official cannot be guilty of "deliberate indifference" unless:

> The official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exits, and he must also draw the inference. . . .
>
> But an official's *failure to alleviate a significant risk that he should have perceived but did not*, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 114 S. Ct. at 1979 (emphasis added).

The second paragraph in the last quote accurately describes the allegations in Plaintiff's Complaint.  Plaintiff is claiming that at some point before her decedent was incarcerated, Mr. Washington failed to implement policies to "alleviate a significant risk" to such an inmate.  This Court has dismissed similar claims against Department of Corrections officials.

In *Arnold v. Moore,* 980 F. Supp. 28, 34 (D.D.C. 1997), the Court granted the 12(b)(6) motion of the Director of the Department of Corrections, holding, "The plaintiff fails to allege facts sufficient to show that Defendants Moore and Plaut acted with deliberate indifference to his medical need. Specifically, the plaintiff fails to allege that the defendants even knew of his injuries. Without actual knowledge, the defendants could not have deliberately sought to withhold care for a serious medical need or ignored his requests for medical care." *See also Farmer,* 511 U.S. at 837-42 (holding that prison official cannot be held liable for deliberate indifference under Eighth Amendment unless the official knows of and disregards the risk).

In the instant case there is no allegation that Defendant Washington was aware of Mr. Magbie's situation after he was incarcerated on September 20, 2004, until he died. Rather, the thrust of plaintiff's allegation is that Mr. Washington should have *anticipated* that someone with

impairments like Mr. Magbie might be incarcerated by D.C.'s independent contractors and prophylacticly he should have implement policies to address this eventuality. Even if true, these allegations do not amount to "deliberate indifference" by Mr. Washington of a obvious medical need as required by the 8th Amendment. At worst, Mr. Washington failed to anticipate a very rare situation -- that a quadriplegic might one day need to be incarcerated by the District's contractors and that these contractor might inflict cruel and unusual punishment. Even if true, these allegations do not establish that Mr. Washington had the necessary intent to violate Mr. Magbie's 8th Amendment rights.

III. <u>Defendant Washington Is Entitled To Qualified Immunity Under §1983.</u>

Defendant Washington is entitled to qualified immunity from plaintiff's §1983 claim against him in his individual capacity. According to the U.S. Supreme Court, qualified immunity "is an immunity from suit rather than a mere defense to liability. . ."; thus, questions of immunity should be resolved "at the earliest possible stage of the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

According to the Supreme Court's 2001 *Saucier v. Katz* decision, an official cannot be held personally liable for conduct he or she would not have reasonably known was unconstitutional. 533 U.S. 194, 202 (2001). The Supreme Court explained that "'the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Supreme Court emphasized that for discretionary decisions "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. As such, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

*Saucier* makes it clear that qualified immunity confers upon government officials an *extra* layer of protection from § 1983 liability. *Qutb v. Ramsey*, 285 F. Supp. 2d 33, 47-48 (D.D.C. 2003). Government officials can be held liable in their individual capacity only if this Court finds, as a matter of law, that their interpretation of the situation and the constitutional principles behind their decisions show that they were "plainly incompetent" or "knowingly violate[d] the law." *Saucier*, 533 U.S. at 2002.

In *Int'l Action Ctr. v. US*, 365 F.3d 20 (D.C. Cir. 2004), the D.C. Circuit Court applied these principles in the context of a defendant's motion to dismiss a plaintiff's lawsuit which sought to hold government supervisors liable for misconduct by subordinates, a situation analogous to the instance matter. There, the Court held that a duty which is pleaded in general terms will not defeat a governmental official's immunity. Rather, *Int'l Center* held that to allege liability plaintiff must "link the likelihood of particular constitutional violations to ... past transgressions, and ... to link these particular supervisors to those past practices or any familiarity with them." *Int'l Action,* 365 F.3d at 27. Dismissing plaintiff's complaint which alleged only a general duty, the Circuit Court noted that,

> Where responsibility is predicated on inattentiveness rather than affirmative misconduct, the plaintiff must establish a high degree of fault in order to implicate the supervisor in

11

> the constitutional infractions of his subordinates. That high degree of fault is not satisfied by a negligence standard; a showing of "mere negligence" is insufficient to state a claim of supervisory liability under Section 1983.

I*nt'l Action Ctr,* 365 F.3d at 28. (internal citations omitted.)

Applying this standard to the present case, it is clear that Defendant Washington's implementation of department policies is a discretionary function, involved in the formulation of policy, through "personal deliberation, decision and judgment," as opposed to the execution of policy. *See Nealon*, supra, at 690, *see also Rieser v. District of Columbia*, 563 F.2d 462, 475 (D.C. Cir. 1977), *vacated but reinstated in pertinent part on rehearing*, 580 F.2d 647 (D.C. Cir. 1978)).

Defendant Washington formulated policy for the treatment and care of the inmates of the District of Columbia, subject only to the general guidance and approval of the Mayor and the City Council. In particular, D.C. Code § 24-211.01 provides: "There is created in and for the District of Columbia a Department of Corrections to be under the charge of a Director who shall be appointed by the Mayor of the District of Columbia." Furthermore, there are only very general requirements set forth in D.C. Code § 24-211.02 for the operation of the D.C. Jail. *Cf. Davis v. Scherer,* 468 U.S. 183, 196 n.14, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984) ("A law that fails to specify the precise action that the official must take in each instance creates only discretionary authority . . . ."); *Beebe v. WMATA*, 327 U.S. App. D.C. 171, 129 F.3d 1283, 1287 (D.C. Cir. 1997) ("To determine whether a function is discretionary, . . . we ask whether any 'statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'").

Assuming the facts in the Complaint to be true, Defendant Washington's conduct was not strictly governed by law but rather the product of judgments of the type that "almost

inevitably are influenced by the decision-maker's experiences, values, and emotions." *Harlow v. Fitzgerald*, 457 U.S. 800, 816, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982).

Plaintiff's complaint's allegations against Defendant Washington are based on his alleged "inattentiveness rather than affirmative misconduct." Hence, plaintiff seeks to hold Mr . Washington liable because he failed to forecast the incarceration of a prisoner such as plaintiff, which in turn resulted in him not implementing policies for District subcontractors to ensure that inmates such as Mr. Magbie were properly cared for.

Plaintiff's Complaint in this case fall short of the mark because it does not allege that Mr. Washington had the required knowledge of past transgressions which created the likelihood of particular constitutional violations. *Int'l Action,* 365 F.3d at 27. Without specific allegations of prior instances of violations of the 8th Amendment similar to those allegedly suffered by Mr. Magbie, there is not enough evidence to turn inaction into a constitutional violation of a clearly established right. *Int'l Action* holds that without some form of notice, a government official's inaction does not violate a "clearly established statutory or constitutional rights of which a reasonable person would have known." *Crawford-El*, 118 S. Ct. at 1592 (quoting *Harlow*, 457 U.S. at 817-18); *see also* 118 S. Ct. at 1597. Whether a statutory or factly constitutional right was clearly established at the time of the official's conduct is "an 'essentially a legal question'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526-29, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985)); *see also Farmer v. Moritsugu*, 333 U.S. App. D.C. 319, 163 F.3d 610, 613 (D.C. Cir. 1998) (quoting *Mitchell*).

In the instant matter, Defendant Washington's oversight of the alleged missteps that occurred at District subcontracts GSCH and CTF was reasonable considering the "information available to [him]." *See Anderson*, supra, at 641. When Mr. Washington permitted DOC to

13

contract with the Greater Southeast Hospital and CTF, there was no way for him to foresee that a violation of Mr. Magbie's rights as alleged.   Plaintiff fails to allege any fact that would amount to "unreasonable lack of discretion" and therefore, Defendant Washington is entitled to qualified immunity and plaintiff's 8th Amendment claim must be dismissed.

### IV. Plaintiff's Common Law Claim Against Defendant Washington is barred by the Doctrine of Sovereign Immunity

Defendant Washington is entitled to sovereign immunity, in his official capacity, from plaintiff's common law claim Count III, Medical Negligence. A District official is "protected by sovereign immunity if the officer's acts are 'discretionary,' but subject to liability if the acts were 'ministerial' in character." *Rieser v. District of Columbia*, 183 U.S. App. D.C. 375, 563 F.2d 462, 475 (D.C. Cir. 1977), *vacated but reinstated in pertinent part on rehearing*, 580 F.2d 647 (D.C. Cir. 1978); *see* also *Durso v. Taylor,* 624 A.2d 449, 458 ("In the District of Columbia the doctrine of sovereign immunity protects an official from suits for acts committed in the exercise of a discretionary function.").

The Complaint does not allege that Mr. Washington served as the decedent's personal physician, nor does it claim that Mr. Washington personally acted negligently with regard to Mr. Magbie's course of treatment. Instead it relies solely on the Department of Correction's relationship with its contractors to establish wrong doing on the part of Mr. Washington. As Director of DOC, Defendant Washington had wide discretion as to what policies to implement. One way to determine whether a function is discretionary is to "ask whether any 'statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Beebe*

*v. WMATA*, 327 U.S. App. D.C. 171, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (citations omitted) or whether the act "require[s] personal deliberation, decision and judgment." *Nealon,* supra*, at* 690.

Plaintiff's Complaint fails to identify any statutory requirement that would categorize Defendant's actions as "non-discretionary." Accordingly, plaintiff's Count III against Defendant Washington must be dismissed as barred by sovereign immunity.

V.    Plaintiff's Common Law Claims and Claims Under D.C. Law are barred by the Doctrine of Absolute Immunity.

Defendant Washington is also entitled to absolute immunity, in his individual capacity, from plaintiff's common law claims and claims under D.C. Law. Under District law, "absolute immunity is available when the official acted within the outer perimeter of his official duties in the exercise of a discretionary, as opposed to ministerial, function." *Durso v. Taylor,* 624 A.2d 449, 458 (D.C. 1993).

In *District of Columbia v. Thompson,* 570 A.2d 277 (D.C. 1990) *(Thompson I),* the D.C. Court of Appeals prescribed the standards for determining when a District official is immune from suit. According to *Thompson I* and its progeny, this Court must conduct a two-prong inquiry to determine whether the official's conduct (1) falls within the "outer perimeter" of the official's duties, and (2) involves "discretionary" rather than "ministerial" activity. *Id.* at 294-97; *Moss v. Stockard, et al.*, 580 A.2d 1011, 1020 (D.C. 1990); *Kendrick v. Fox Television, et al.*, 659 A.2d 814, 819 (D.C. 1995). If both prongs are satisfied, absolute immunity is established.

The policy behind prong two is to "ensure that when public officials exercise discretion in carrying out their duties, concern about tort liability will not inhibit the 'fearless, vigorous and effective administration of policies of government.'" *Kendrick*, 659 A.2d at 819.

15

The D.C. Court of Appeals has stated that actions which "have more or less connection with the general matters committed by law to his control or supervision" qualify as falling within the "outer perimeters" of the official's duties. *Moss,* 580 A.2d at 1020.

Defendant Washington's promulgation of DOC policy, which is the foundation of plaintiff's allegations in the instant case, was discretionary. It cannot be disputed that when he contracted with CHIPS, CTF and GSCH, Mr. Washington acted within the outer perimeter of his duties. Thus, Defendant Washington is entitled to absolute immunity in his individual capacity from plaintiff's common law tort claim Count III, medical negligence.

        Respectfully Submitted,

        ROBERT J. SPAGNOLETTI
        Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General, Civil Litigation Division


        HOLLY JOHNSON
        Chief, General Litigation Section III


        STEVEN J. ANDERSON
        Assistant Attorney General
        Bar no. 334480
        Suite 600S
        441 Fourth Street, N.W.
        Washington, D.C. 20001
        (202) 724-6607
        (202) 727-3625 (fax)
        E-mail:  Steve.anderson@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARY SCOTT, Individually and as Personal Representative of the Estate of JONATHAN MAGBIE, | : : : : | |
| Plaintiffs | : : | |
| v. | : : | Civil Action No. 1: 05CV01853 (RWR) |
| ODIE WASHINGTON et. al, Defendants | : : : | |

ORDER

Upon consideration of defendant Odie Washington's motion to dismiss plaintiff's complaint, the memorandum in support thereof, and any opposition thereto, and for the reasons set forth in Defendant Washington's Motion to Dismiss, it is by the Court, this _____ day of \_\_\_, 2006,

ORDERED: that defendant's motion be, and the same hereby is, GRANTED; and it is further

ORDERED: Odie Washington is dismissed as defendant.

_____
RICHARD W. ROBERTS
Judge, United States District Court for the District of Columbia

Copies to:

Steven J. Anderson, AAG
441-4[th] Street, NW
Washington, D.C. 20001

Donald M. Temple, Esquire
1220 15th Street, NW

Washington, D.C. 20005.

**Arthur B. Spitzer**
AMERICAN CIVIL LIBERTIES UNION
1400 20th Street, NW
Suite 119
Washington, DC 20036

**Edward J. Connor**
5210 Auth Road
Suite 304
Camp Springs, MD 20746-4341

**Elizabeth Alexander**
NATIONAL PRISON PROJECT OF THE ACLU FOUNDATION
733 15th Street, NW
Washington, DC 20005-2112