## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**MARY R. SCOTT,**

       **Plaintiff,**

   **v.**                                      **No. 05-cv-1853 (RWR)**

**DISTRICT OF COLUMBIA, _et al._,**

       **Defendants.**

_____

## PLAINTIFF'S RESPONSE TO MOTION OF DEFENDANT ODIE WASHINGTON TO DISMISS PLAINTIFF'S COMPLAINT

## I.     INTRODUCTION

Plaintiff's Complaint alleges the following regarding Defendant Washington's responsibility for Mr. Magbie's death: Defendant Washington, at all times relevant to the Complaint, was the Director of the District of Columbia Department of Corrections (Complaint, Sept. 20, 2005 at 4-5 ¶ 5); Defendant Washington had a duty to formulate, adopt, execute and maintain policies, standards, procedures and practices that were consistent with the civil rights of prisoners, including Jonathan Magbie (_id._); these necessary policies included policies to assure that prisoners are provided with necessary medical treatment and that prisoners are housed only in facilities that can provide the care and services necessary to sustain the prisoner, as well as policies to assure that prisoners do not suffer discrimination and exclusion from services by reason of their disabilities (_id._); Defendant Washington, despite knowledge that adequate policies were required to assure that no prisoners were kept in custody for whom the Department of

1

Corrections lacked safe and appropriate medical services and facilities, failed to promulgate or implement such policies (*id.* at 13 ¶ 51); and District of Columbia agents and employees (a category that necessarily includes Defendant Washington) acted pursuant to a policy or custom of accepting persons who, because of disabilities and medical needs, could not be safely confined at the Central Detention Facility ("Jail") or the Correctional Treatment Facility ("CTF"). *Id.*

Notwithstanding these allegations, Defendant Odie Washington, formerly Director the District of Columbia Department of Corrections, argues that Plaintiff has failed to allege the elements necessary under 42 U.S.C. § 1983 to establish liability for damages against him, and therefore argues that the Court should dismiss the Plaintiff's Complaint against him based on the death of Jonathan Magbie.  For the reasons given below, Plaintiff's allegations state a claim against Defendant Washington under § 1983, and Defendant's motion to dismiss this civil rights claim should be denied.

## II.  THE COMPLAINT ALLEGES A VIOLATION OF THE EIGHTH AMENDMENT BY DEFENDANT WASHINGTON.

Defendant Washington reasons that, because the Complaint alleges that he was responsible for developing and implementing policies to assure that prisoners are provided with necessary and proper medical treatment, and policies to assure that prisoners are treated in facilities possessing the care and services necessary to sustain prisoners with medical problems, Plaintiff is necessarily challenging conduct that predated Mr. Magbie's confinement by the Department of Corrections.  From that premise, Defendant Washington argues that Plaintiff must be seeking to impose vicarious liability upon him, because, he claims, Plaintiff does not allege that he was "personally involved" with Mr. Magbie.  Def's. Mem. of P. & A. in Support of Def.

Odie Washington's Mot. to Dismiss, March 28, 2006 ("Def.'s Br.") at 6-7.

Defendant Washington's argument misunderstands the nature of personal liability for actions violating the Eighth Amendment. While a defendant must be personally involved in an Eighth Amendment violation in order to be liable for that violation, such personal involvement does not require that the defendant have any direct interaction with the person whose rights were violated. Indeed, Defendant's argument is inconsistent with fundamental principles of tort law, since there is no requirement that a tortfeasor have direct contact with any of those injured by his or her actions or failures to act. Instead, the relevant legal analysis involves the proximate cause of the victim's injury, not the victim's proximity in time or space to the tortfeasor.

Consistent with this principle, in *Farmer v. Brennan,* 511 U.S. 825 (1996), the Supreme Court noted that a prison official who acted with deliberate indifference to a substantial risk to prisoner safety could not escape liability by showing that the official "could not guess before hand precisely who would attack whom." *Id.* at 844. As the Court emphasized:

> The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.

*Id.* at 843 (internal quotation marks and citation omitted). Given the Court's conclusion in *Farmer* that the Eighth Amendment can be violated by deliberately indifferent conduct that poses an unreasonable risk to all prisoners in a particular situation, *Farmer* cannot be reconciled with Defendant Washington's argument that, because he did not know Mr. Magbie, he could not have

been deliberately indifferent.

Surprisingly, Defendant Washington's next argument is that *Farmer* itself demonstrates why he is not properly sued in this case, quoting the following language from the case: "But an official's *failure to alleviate a significant risk that he should have perceived but did not,* while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Defs' Br. at 9, quoting *Farmer* at 838.[1]  This quotation, of course, does not help Defendant Washington, because, as noted above, the Complaint specifically alleges that he had actual knowledge of the need for adequate policies to address the risks but failed to promulgate or implement such policies; Plaintiff is specifically not attempting to hold him liable simply because he should have perceived an unreasonable risk.

Indeed, one of the examples that *Farmer* gives of circumstances in which a prison official could be held liable under the Eighth Amendment is as follows:

> [H]e would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to exist (as when . . . a prison official knows that some diseases are communicable and that a single needle is being used to administer flu shots to prisoners but refuses to listen to a subordinate who he strongly suspects will attempt to explain the associated risk of transmitting disease).

*Id.* at 843 n.8.  Obviously, this example provided by the Court of the appropriate imposition of liability for violations of the Eighth Amendment flatly contradicts Defendants' argument that a supervisory official must interact directly with a particular prisoner, or at least know the identity

---

[1]  Defendant Washington's brief adds the emphasis shown to the *Farmer* quotation.

of particular prisoners at risk, in order to be held liable.[2]

The Complaint in this cases narrates in detail a chilling account of large numbers of staff ignoring the needs of a young man helpless to care for his own needs. The detailed narrative supports Plaintiff's claim that the District had a policy or custom of accepting custody of persons who, because of their disabilities and medical needs, could not be safely confined at the Jail or CTF. The Complaint further alleges that District of Columbia agents and employees (a category that included Defendant Washington) acted pursuant to that policy or custom, so the Complaint necessarily alleges that Defendant Washington knew about that policy or custom when he failed to promulgate or implement adequate policies to assure that all District of Columbia prisoners were housed in facilities providing safe and appropriate medical services and facilities. Complaint at 13 ¶ 51. Under the clear command of the Supreme Court in *Farmer,* Plaintiff has

---

[2] Defendant Washington quotes language from *Arnold v. Moore,* 980 F. Supp. 28 (D.D.C. 1997), in support of his argument. Def.'s Br. at 9. When the context of the quoted language is taken into account, the case provides little support for Defendant Washington's theory. The prisoner in that case was unrepresented by counsel. Opposing counsel found the plaintiff's submission "exceedingly hard to understand" and the court characterized his complaint as "confusing" and "nearly illegible." *Arnold* at 33. The plaintiff's only noted allegation about his medical care was that he was denied treatment for several days, even though he was bleeding from the head. *Id.* Given this description, it is inconceivable that this unrepresented prisoner alleged any personal involvement by the supervisory officials in the denial of medical care. There is no indication that this prisoner alleged, for example, that the supervisory defendants were aware of, and responsible for, a pattern or practice of ignoring prisoner medical complaints. It is no wonder, then, that the court dismissed the claims against the supervisory officials, because the complaint apparently did not allege any personal involvement by these defendants. The holding in *Arnold* is that the plaintiff failed to allege facts sufficient to show that the supervisory defendants acted with deliberate indifference to his medical needs, *id.*; the language quoted by Defendant Washington is simply *dictum* in which the court was not addressing the theory of liability that Plaintiff here advances.

appropriately alleged the personal liability of Defendant Washington.[3]

## III.    DEFENDANT WASHINGTON IS NOT ENTITLED TO QUALIFIED IMMUNITY.

### A.    Plaintiff Alleged Defendant Washington's Actual Knowledge.

As explained above, Plaintiff's Complaint, fairly construed, alleges that Defendant Washington knew of a policy or custom of accepting custody of persons who, because of disabilities and medical needs, could not be safely confined at the Jail or CTF.  Complaint at 13 ¶ 51.  Given these allegations, all of Defendant Washington's arguments miss their mark.

First, Defendant Washington argues that the Complaint does not allege that he "had the required knowledge of past transgressions which created the likelihood of particular constitutional violations."  Def.'s Br. at 13.  As noted, this argument simply misconstrues the Complaint, which does allege that Mr. Washington had actual knowledge of the existing policy and custom of accepting persons who could not safely be held in the facilities where Mr. Magbie was held.

### B.    Plaintiff Was Not Required to Allege Similar Previous Eighth Amendment Violations.

Defendant Washington's second argument is that "[w]ithout specific allegations of prior instances of violations of the 8th Amendment similar to those allegedly suffered by Mr. Magbie,

---

[3] Defendant Washington argues that the incarceration of a quadriplegic is "a very rare situation" that he was not required to anticipate.  Def.'s Br. at 10.  This is essentially a factual argument that has no place in a motion to dismiss.  Beyond that deficiency, Defendant Washington misconstrues Plaintiff's argument here.  Plaintiff has never argued that Defendant Washington was required to develop and implement a specific policy for quadriplegic prisoners. Rather, Defendant Washington failed to develop and implement appropriate policies to assure that prisoners with special needs for medical and disabilities services were transferred from the Jail or CTF to safe facilities if the Department of Corrections facilities were incapable of providing for their needs.  *See* Complaint at 13 ¶ 51.

there is not enough evidence to turn inaction into a constitutional violation of a clearly

established right." *Id.*   Without identifying the argument by name, Defendant Washington is

attempting to argue for a "heightened pleading" standard.   It is not surprising that Defendant

Washington neither cites a specific case in support of this claim nor admits that he is arguing for

a "heightened pleading" standard.  In *Leatherman v. Tarrant County Narcotics Intelligence and*

*Coordination Unit,* the Supreme Court rejected the application of any such standard to

complaints in municipal liability cases:

> We think that it is impossible to square the "heightened pleading
> standard" applied by the Fifth Circuit in this case with the liberal
> system of "notice pleading" set up by the Federal Rules.  Rule
> 8(a)(2) requires only "a short and plain statement of the claim
> showing that the pleader is entitled to relief."  In *Conley v.*
> *Gibson,* 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d . 80 (1957), we said
> in effect that the Rule meant what it said[.]

507 U.S. 163, 168 (1993).[4]

Our court of appeals has fully recognized the impact of *Leatherman.*  In *Warren v.*

*District of Columbia,* the court of appeals considered a complaint from a prisoner who alleged

that he had suffered harm of a constitutional dimension while incarcerated at a Corrections

Corporation of America facility in Youngstown, Ohio, which was operated under a contract with

the District.  The district court dismissed his complaint, and the prisoner appealed.  As in this

---

[4] In *Leatherman,* the municipality also argued that the lower court's ruling was not based
on application of a "heightened pleading" standard, but the Supreme Court rejected this
argument:

> Examination of the Fifth Circuit's decision in this case makes it
> quite evident that the "heightened pleading standard" is just what
> it purports to be: a more demanding rule for pleading a complaint
> under § 1983 than for pleading other kinds of claims for relief.

*Id.* at 167.

case, the District argued that the prisoner had failed to plead "facts" establishing knowledge by

the District.  The court of appeals, in the course of reversing dismissal of the complaint,

responded as follows:

> But at this stage of the litigation, Warren needed only to supply a
> short and plain statement of the claim showing that the pleader is
> entitled to relief, which he has done.  It is of no moment that
> Warren's allegation of actual or constructive knowledge on the
> part of the District was conclusory.  Many well-pleaded complaints
> are conclusory.  And while we do not have to accept conclusions of
> law, conclusions of fact are another matter.

*Warren v. District of Columbia,* 353 F.3d 36, 39 (D.C. Cir. 2004) (citations and internal

quotation marks omitted).

Similarly, *Atchinson v. District of Columbia,* 73 F.3d 418 (D.C. Cir. 1996), reversed a

complaint against the District, despite the fact that the complaint did not identify a specific

custom related to the plaintiff's allegation that the District, with deliberate indifference, failed to

"appoint, supervise, train and/or promote" police who would enforce the laws.  *Id.* at 422.

Indeed, *Atchinson* notes that the Federal Rules of Civil Procedure model forms "permit a plaintiff

to allege a [defendant's] state of mind without providing any factual basis for that allegation."

*Id.* at 423 (citing Form 9 from the Appendix of Forms of the Federal Rules, a model form for

pleading negligence, which simply recites in pertinent part: "defendant negligently drove a motor

vehicle against plaintiff who was then crossing the highway.").

The "notice pleading" regime incorporated into Fed. R. Civ. P. 8(a) applies to all civil

actions, except where the Rules specifically provide otherwise.  *Swierkiewicz v. Sorema N. A.,*

534 U.S. 506, 513 (2002) (rejecting argument that employment discrimination plaintiff is

required to plead the elements of a *prima facie* case).  Indeed, it would be particularly

inappropriate to apply a "heightened pleading" standard to the allegations regarding Defendant Washington's actual knowledge of the policy or custom at issue here, because Fed. R. Civ. P. 9(b) specifically allows "malice, intent, knowledge, and other condition of mind of a person" to be averred generally, in contrast to the requirements for pleading fraud or mistake, in which the circumstances must be "stated with particularity."  *See Swierkiewicz* at 534 U.S. 513 n.3.

Accordingly, it is simply not true that, as Defendant Washington claims, Plaintiff's Complaint "does not allege that Mr. Washington had the required knowledge of past transgressions which created the likelihood of particular constitutional violations."  Def.'s Br. at 13.  Even if it were true, however, Defendant Washington is incorrect to argue that Plaintiff can establish his liability only by proving his actual knowledge of previous incidents in which prisoners were harmed by the policy or custom that Plaintiff alleged.

All that *Farmer* requires is that Plaintiff show that Defendant Washington "acted or failed to act despite his knowledge of a substantial risk of serious harm," *see Farmer* at 842,  not that Mr. Washington had actual knowledge that other prisoners had already been injured by the policy or custom.  Rather, *Farmer* makes clear that a defendant's actual knowledge of an unreasonable risk can be demonstrated in a variety of ways, including the fact that the risk is "obvious." *Id.* at 842.   Indeed, the Court in *Farmer* cited a case imposing liability upon a nightclub owner who failed to protect patrons from a fire as consistent with the "deliberate indifference" standard as it construed the standard, thus driving home the point that a showing of deliberate indifference does not require a demonstration that other prisoners had previously suffered injuries as a result of the unreasonable risk.  *Id.* at 844 (citing *Commonwealth v. Welansky,* 316 Mass. 383, 55 N. E. 2d

9

902 (1944)).[5]

C.    *International Action Center* Does Not Support Defendant Washington's Argument.

Defendant Washington also argues that *International Action Center v. United States,* 365

F.3d 20 (D.C. Cir. 2004), is inconsistent with Plaintiff's claims.  In order to make that claim,

however, Defendant Washington misstates the holding in that case.  Although *International*

*Action Center* did arise in the context of an interlocutory appeal of a refusal to recognize

qualified immunity for an official, the holding is not about qualified immunity:

> We hold that absent an allegation that the [Metropolitan Police
> Department] supervisors had actual or constructive knowledge of past
> transgressions or that the supervisors were responsible for or aware of
> "clearly deficient" training, the supervisors did not violate any
> constitutional right through inaction or failure to supervise.

*Id.* at 28.  In other words, *International Action Center* involved the standard to show the

existence of a constitutional right in the context of police activities, not the question of whether

the right in question was "clearly established" so as to deprive the defendant of qualified

immunity.

Just as clearly, the substantive constitutional standard applied in *International Action*

*Center* does not govern in the context of Eighth Amendment conditions of confinement cases

controlled by the *Farmer* standard.  The Supreme Court has elsewhere explained why a different

standard applies in such cases.  In *County of Sacramento v. Lewis,* 523 U.S. 833 (1998), the

Supreme Court considered a case involving the death of a motorcycle passenger killed in a high-

---

[5]  Further, such a requirement would be intrinsically inconsistent with the constitutional
standard *Farmer* announces.  Under *Farmer,* deliberate indifference is shown by the defendant's
knowledge of the risk of harm.  Defendant Washington cannot plausibly argue that one can
possess knowledge only of risks that have already caused injury to others.

10

speed police chase.  The Court ruled that the complaint in that case failed to state a claim under

the Due Process Clause.  In the course of the Court's opinion, it differentiated between the legal

principles applicable to police activities such as a high speed chase, where there is little or no

time for government agents to choose a course of action, and prison conditions of confinement

cases, where actual deliberation is possible.  *Id.* at 851.  Significantly, the Court drew a second

distinction between the two settings for governmental action:

> [I]n the custodial situation of a prison, forethought about an inmate's
> welfare is not only feasible *but obligatory under a regime that*
> *incapacitates a prisoner to exercise ordinary responsibility for his*
> *own welfare.*

*Id.* (emphasis added).

The Court then quotes the classic statement of the rationale for the affirmative duty that

government agents owe to persons who have been institutionalized against their will:

> [W]hen the State takes a person into its custody and holds him
> there against his will, the Constitution imposes upon it a
> corresponding duty to assume some responsibility for his safety
> and general well being.  The rationale for this principle is simple
> enough: when the State by the affirmative exercise of its power
> so restrains an individual's liberty that it renders him unable to
> care for himself, and at the same time fails to provide for his
> basic human needs–*e.g.,* food, clothing, shelter, medical care, and
> reasonable safety–it transgresses the substantive limits on state
> action set by the . . . Due Process Clause.

*DeShaney v. Winnebago Co. Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989) (quoted in its

entirety in *Lewis,* 523 U.S. at 851).

Because of the affirmative duty owed prisoners when they are deprived of the ability to

care for their own needs by the exercise of governmental power, governmental officials have a

constitutional obligation to foresee their needs, regardless of the lack of prior incidents of harm.

Thus, the holding in *International Action Center* that in the context of certain police activities there is no requirement to foresee constitutional violations simply does not apply in the context of this case.[6]

D.    The Eighth Amendment Standard Relevant to This Case Was Clearly Established at All Relevant Times.

Finally, there is no merit to Defendant Washington's implicit argument that the right of a prisoner to have his serious medical needs addressed while incarcerated was not clearly established at the time of Defendant Washington's death. The Supreme Court held thirty years ago that prison medical providers and prison officials violate the Eighth Amendment when they act with deliberate indifference to prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The precise standard required to demonstrate a violation of the Eighth Amendment regarding prison conditions of confinement was defined by *Farmer* in 1974. Accordingly, the parameters of the constitutional right in question were clearly established long before any of the events relevant to Defendant Washington's liability.

In *Hope v. Pelzer,* 536 U.S. 730 (2002), the Supreme Court authoritatively set forth the standards for determining whether a particular constitutional right is clearly established. In that case, the Supreme Court reviewed a lower court decision that had concluded that, while the practice of restraining a prisoner to a "hitching post" as a disciplinary measure violated the

---

[6] Defendant Washington also cites *International Action Center* for the proposition that "mere negligence" is not enough to state a claim for supervisory liability under § 1983. *See* Def.'s Br. at 11-12, citing *Int'l Action Center* at 28. Plaintiff, of course, does not allege "mere negligence." Similarly, it is not true that Plaintiff's allegations against Defendant Washington are based on "inattentiveness rather than affirmative misconduct." Def.'s Br. at 13. As *Farmer* makes clear, because of the affirmative duty owed to prisoners, either actions or inactions in the face of a substantial risk of serious harm can be the basis of liability when the prison official has actual knowledge of the risk. *Farmer* at 842.

12

Eighth Amendment, that right was not clearly established because there had been no binding

previous decision that involved facts "materially similar" to the prisoner's claim. *Id.* at 736.

While upholding the decision of the lower court that the use of the hitching post for

discipline violated the Eighth Amendment, the Supreme Court reversed the lower court's

decision to allow the defense of qualified immunity. The Court reasoned that the basic interest

protected by allowing a defense of qualified immunity is the right of government agents to "fair

warning" that their conduct violated the Constitution. The Court then quoted with approval

language in its earlier case of *United States v. Lanier,* 520 U.S. 259 (1997):

> In some circumstances, as when an earlier case expressly leaves
> open whether a general rule applies to the particular type of
> conduct at issue, a very high degree of factual particularity may
> be necessary. But general statements of the law are not inherently
> incapable of giving fair and clear warning, and in other instances
> a general constitutional rule already identified in the decisional
> law may apply with obvious clarity to the specific conduct in
> question, even though the action in question has [not] previously
> been held unlawful.

*Hope,* 536 U.S. at 740-41(citations and internal quotation marks omitted; bracketed material in

original) (quoting *Lanier* at 270-71).

For this reason, officials can be provided fair notice that their actions violate the

Constitution even in novel factual circumstances. While previous cases with similar facts can

provide especially strong support for a conclusion that the law is clearly established, they are not

necessary to such a finding. *Hope* at 741. *Farmer,* particularly when viewed in combination

with *Estelle v. Gamble,* 429 U.S.. 97 (1976),[7] provides a standard for federal courts to apply in all

---

[7] *Estelle* holds that prisoners' Eighth Amendment rights are violated when prison officials, with deliberate indifference, fail to provide for their "serious medical needs." *Id.* at 104.

13

Eighth Amendment challenges to prison conditions of confinement cases, specifically including

medical care cases, and thus constitutes a "general constitutional rule" of the type identified in

*Hope* and *Lanier:*

> Under the test that we adopt today, an Eighth Amendment claimant
> need not show that a prison official acted or failed to act believing
> that harm actually would befall an inmate; it is enough that the
> official acted or failed to act despite his knowledge of a substantial
> risk of serious harm.

*Farmer,* 511 U.S. at 842.[8]

   For that reason, proof of an Eighth Amendment violation regarding medical care, or other

conditions of confinement, automatically defeats a qualified immunity defense.  In other words,

if a prison official had actual "knowledge of a substantial risk of serious harm," then the Eighth

Amendment required the official to take appropriate action against that harm, and that obligation

was clearly established as a matter of law.  *See, e.g., LaBounty v. Coughlin,* 137 F.3d 68, 74 (2d

Cir. 1998) (reversing district court's recognition of qualified immunity defense to prisoner's

claim that he was exposed to friable asbestos particles in the air; reasoning that the right to be

free of deliberate indifference to serious medical needs was clearly established in *Estelle*);

*Williams v. Mehra,* 135 F.3d 1105, 1112 (6th Cir. 1998), *rev'd in part en banc on other grounds,*

186 F.3d 685 (1999) (holding, in the context of a case involving allegations of a failure to

provide necessary psychiatric care and treatment to a prisoner who committed suicide, that the

---

   [8]  Throughout *Farmer,* the Supreme Court relies, without distinction, on cases involving
lack of medical care, failures to protect prisoners from physical assault, and threats to prisoner
safety posed by environmental conditions.   *See, e.g. id.* at 835 (citing *Estelle,* 429 U.S. at 104);
843-44, 846-47 (citing *Hutto v. Finney,* 437 U.S. 678, 681-82 (1982)) (cited regarding risk of
sexual assault by other prisoners and about prison conditions that included extreme
overcrowding, insufficient food, and unsanitary conditions); *Helling v. McKinney,* 509 U.S. 25,
33 (1993) (cited regarding discussion of liability for exposure of prisoners to infectious diseases).

defendant psychiatrists were not entitled to a qualified immunity defense because the right to

medical care for serious medical needs was clearly established in *Estelle*);[9] *Miller v. Schoenen,*

75 F.3d 1305, 1309-11 (8th Cir.1996) (in interlocutory appeal of denial of qualified immunity on

summary judgment to claim that prisoner was denied specialized necessary medical treatment in

light of his needs as a heart transplant survivor, court of appeals examined whether there was

evidence sufficient to survive summary judgment that prisoner had an objectively serious

medical need as required by *Estelle* and evidence that defendants knew of and disregarded that

need, as required by *Farmer;* finding such evidence in the record, the court affirmed the district

court's denial of qualified immunity).[10]

 Accordingly, Defendant Washington's argument that he is entitled to qualified immunity

must be rejected.

IV. **IF THE COURT DISAGREES, PLAINTIFF SHOULD BE AFFORDED AN OPPORTUNITY TO AMEND THE COMPLAINT.**

 For the reasons given above, Plaintiff urges the Court to deny Defendant Washington's

motion to dismiss Plaintiff's federal claims. In the event that the Court disagrees, however,

Plaintiff anticipates curing the pleading deficiency. Because Defendant Washington has yet to

---

 [9] The *en banc* court agreed that *Estelle* had established the relevant legal standard, which it defined as the right "not to have [the plaintiff's] serious medical needs treated with deliberate indifference." *Williams,* 186 F.3d at 691. The *en banc* court then decided that the plaintiff had failed to show a violation of his Eighth Amendment rights. *Id.* at 692-93.

 [10] The court of appeals for this circuit followed a comparable general analysis of the constitutional right in question in holding that a case defining the elements of a retaliatory prosecution claim served as the benchmark for the right not to be subjected to retaliatory prosecution, so that defendants were not entitled to qualified immunity if the elements of the constitutional violation were established. *Moore v. Hartman,* 388 F.3d 871, 885 (D.C. Cir. 2004).

file an Answer to the Complaint, Plaintiff remains entitled to amend her Complaint as of right.

See, e.g., Barksdale v. King, 699 F.2d 744, 747 (5th Cir. 1983) (holding that the fact that some

defendants had answered, and the other defendant had filed a motion to dismiss, did not deprive

plaintiff of the right to amend his complaint without leave of court).  Even if Plaintiff did not

have such a right, the general policy of the Federal Rules of Civil Procedure for determination of

cases on the merits would support granting leave for Plaintiff to cure any pleading deficiency at

this initial stage of the litigation:

> The federal policy of deciding cases on the basis of the substantive
> rights involved rather than on technicalities requires that the plaintiff be
> given every opportunity to cure a formal defect in the pleadings.  This
> is true even when the district judge doubts that the plaintiff will be able
> to overcome the shortcomings in the initial pleading.  Thus, the cases
> make it clear that leave to amend the complaint should be refused only
> if it appears to a certainty that plaintiff cannot state a claim.

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 3d*

(3d ed. 2004) (footnotes omitted).

## V.    CONCLUSION

For the above reasons, Plaintiff requests that Defendant Washington's motion be denied

insofar as he seeks dismissal of Plaintiff's federal claims.[11]

Respectfully submitted,

_____ s/ Donald M Temple _____
Donald M. Temple, D.C. Bar No. 408749
Temple Law Office
1229 15th Street, NW
Washington, DC 20005
202-628-1101

---

[11] Plaintiff does not oppose dismissal of her pendant claim against Defendant Washington based on District of Columbia law.

Edward J. Connor, D.C. Bar No. 321505
5210 Auth Road, Suite 304
Camp Springs, MD 20746
301-899-7801

Elizabeth Alexander, D.C. Bar No. 412904
National Prison Project of the ACLU Foundation
915 15th Street, NW, 7th Floor
Washington, DC 20005
202-393-4930

Arthur B. Spitzer, D.C. Bar No. 235960
American Civil Liberties Union
  of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, DC 20036
202-457-0800

Counsel for Plaintiff

April 11, 2006