# ATTACHMENT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARY R. SCOTT, Individually and as | ) |
| Personal Representative of the Estate of | ) |
| JONATHAN MAGBIE, Deceased, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:05CV01853 |
| | )      (RWR) |
| DISTRICT OF COLUMBIA; | ) |
| | ) |
| ODIE WASHINGTON; | ) |
| | ) |
| JOSEPH BASTIEN, M.D.; | ) |
| | ) |
| T. WILKINS DAVIS, M.D.; | ) |
| | ) |
| CENTER FOR CORRECTIONAL HEALTH AND | ) |
| POLICIES STUDIES, INC.; | ) |
| | ) |
| CORRECTIONS CORPORATION OF | ) |
| AMERICA; | ) |
| | ) |
| BEVERLY HILLARD, R.N. | ) |
| 1923 Vermont Avenue, NW | ) |
| Washington, DC 20001; | ) |
| | ) |
| MALEK MALEKGHASEMI, M.D.; | ) |
| | ) |
| SUNDAY NWOSU, M.D.; | ) |
| | ) |
| PAULINE OJELFO, L.P.N.; | ) |
| | ) |
| GBENGA OGUNDIPE, L.P.N.; | ) |
| | ) |
| PATRICIA SINGLEY; | ) |
| | ) |
| CAPTAIN JOHNSON | ) |
| 1901 D Street, SE | ) |
| Washington, DC 20005; | ) |
| | ) |

1

WARDEN FRED FIGUEROA            )
1901 D Street, SE               )
Washington, DC 20005;           )
                                )
GREATER SOUTHEAST COMMUNITY     )
HOSPITAL CORPORATION,           )
d/b/a GREATER SOUTHEAST COMMUNITY )
HOSPITAL;                       )
                                )
WILLIAM S. VAUGHN, M.D.;        )
                                )
PARHAM HAGHIGHI, M.D.           )
6355 Walker Lane                )
Apt. #300                       )
Alexandria, VA 22310;           )
                                )
DR. NUNOI                       )
1310 Southern Avenue, SE        )
Washington, DC 20032;           )
                                )
ROTIMI A. ILUYOMADE, M.D.;      )
                                )
CHRISTOPHER J. ACKERMAN, M.D.   )
1310 Southern Avenue, SE        )
Washington, DC 20032;           )
                                )
MONICA JAMES, L.R.T.            )
1310 Southern Avenue, SE        )
Washington, DC 20032;           )
                                )
and                             )
                                )
NATIONAL EMERGENCY SERVICES     )
DISTRICT OF COLUMBIA, INC.      )
SERVE: CT Corporation           )
1090 Vermont Avenue, NW         )
Washington, DC 20005,           )
                                )
                    Defendants. )
_____ )

**PROPOSED AMENDED COMPLAINT**

2

**(Medical Malpractice and Negligence-42 U.S.C. § 1983 Eighth Amendment-Americans with Disabilities Act- District of Columbia Human Rights Law-Intentional Infliction of Emotional Distress)**

Plaintiff states the following Complaint against the Defendants named above:

## PRELIMINARY STATEMENT

This is a civil action related to the death of Jonathan Magbie.  In September 2004, Mr. Magbie was a 27-year old who had never been previously convicted of a criminal offense.  That month he received a ten-day sentence for possession of a marijuana cigarette.  Mr. Magbie, because of a childhood injury, was paralyzed from the neck down and required a ventilator to breathe at night and at other times.  He was sent to the Central Detention Facility of the District of Columbia on September 20, 2004.  During the next four days, he was transferred between the Central Detention Center, Greater Southeast Community Hospital, and the Correctional Treatment Facility.  Over an agonizing four-day period, the staff at all three locations failed to provide him with necessary medical care and the services he needed because of his disabilities.  These failures included a failure to provide him with a ventilator that he needed to assist with his breathing, a failure to address his pneumonia, and a failure to monitor his basic medical needs.  As a result of this cruel and unfeeling treatment of a completely helpless man, on September 24, 2004, Jonathan Magbie suffered a painful and terrifying death.  His mother seeks monetary damages for the Defendants' failures, as set forth in more detail below.

## JURISDICTION

1.      Plaintiff seeks to vindicate rights protected by the Eighth Amendment of the Constitution of the United States, as well as the laws of the United States and the  District of Columbia.   This Court has subject matter jurisdiction in this civil action over Plaintiff's civil

3

rights claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).  The claims include civil

rights violations governed by 42 U.S.C. §§ 1983 and 1988 and 42 U.S.C. §§ 12132 and 12182.

This Court has supplemental jurisdiction over the claims asserted pursuant to District of

Columbia law pursuant to 28 U.S.C. § 1367.

## VENUE

2.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), because a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the

District of Columbia.

## PARTIES

3.      Plaintiff Mary Scott is the mother of Jonathan Magbie, his next of kin, and the

personal representative of his estate.   Ms. Scott brings this action pursuant to the District of

Columbia Survival Act, D.C. Code § 12-101 *et seq.*, for claims on behalf of Mr. Magbie's estate,

and pursuant to the District of Columbia Wrongful Death Act, D.C. Code § 16-27021 *et seq.,* for

claims on her own behalf.

4.      Defendant District of Columbia operates the Central Detention Facility ("the

Jail") and was responsible for transferring Jonathan Magbie to the Correctional Treatment

Facility ("CTF") and Greater Southeast Community Hospital.  Mr. Magbie remained in the

custody and control of the District of Columbia at all times relevant to this Complaint.

5.      Defendant Odie Washington was the Director of the District of Columbia

Department of Corrections at all times relevant to this Complaint.

6.      Pursuant to a contract for services with the District of Columbia, Defendant Center

for Correctional Health and Policy Studies, Inc. ("CCHPS") provided medical care to prisoners at

the Jail and the CTF at all times relevant to this Complaint.

7.     Defendant Joseph Bastien, M.D. was at all times relevant to this Complaint a physician providing medical services to prisoners at the Jail pursuant to a contract between the CCHPS and the District of Columbia.

8.  Defendant T. Wilkins Davis, M.D. was at all times relevant to this Complaint a radiologist providing medical services to prisoners at the Jail pursuant to a contract between CCHPS and the District of Columbia.

9.     Defendant Corrections Corporation of America, Inc. ("CCA") is a for-profit corporation operating the CTF pursuant to a contract with the District of Columbia.

10.    Defendant Beverly Hillard, R.N. was at all times relevant to this Complaint the Nurse Liaison for the Department of Corrections at Greater Southeast Community Hospital.

11.    Defendant Malek Malekghasemi, M.D. was at all times relevant to this Complaint a CCHPS employee and  the Chief Medical Officer of the CTF.

12.    Defendant Sunday Nwosu, M.D., was at all times relevant to this Complaint an employee of CCHPS providing medical services in the CTF infirmary.

13.    Defendants Pauline Ojelfo and Gbenga Ogundipe were at all times relevant to this Complaint licensed practical nurses ("LPNs") employed by CCHPS and providing medical services in the CTF infirmary.

14.    Defendant Patricia Singley was at all times relevant to this Complaint the correctional officer in charge of custody at the CTF infirmary.

15.    Defendant Captain Johnson was at all times relevant to this Complaint the supervisor of Defendant Singley.

16.     Defendant Warden Fred Figueroa was at all times relevant to this Complaint the Warden of the CTF.

17.     Defendant Greater Southeast Community Hospital Corporation operates as a District of Columbia hospital, providing health care services within the District of Columbia.

18.     Defendant William S. Vaughn, M.D. was at all times relevant to this Complaint a physician providing emergency services at Greater Southeast Community Hospital.

19.     Defendant Parham Haghighi, M.D. was at all times relevant to this Complaint a physician providing supervision of the emergency services at Greater Southeast Community Hospital.

20.     Defendant Numoi was at all times relevant to this Complaint a physician providing  emergency services at Greater Southeast Community Hospital.

21.     Defendant Rotimi A. Iluyomade, M.D. was at all times relevant to this Complaint a physician providing emergency services at Greater Southeast Community Hospital.

22.     Defendant Christopher J. Ackerman, M.D. was at all times relevant to this Complaint a physician employed by National Emergency Services District of Columbia, Inc. who supervised the provision of emergency services at Greater Southeast Community Hospital.

23.     Defendant Monica James was at all times relevant to this Complaint a licensed respiratory therapist employed by Greater Southeast Community Hospital.

24.     Defendant National Emergency Services District of Columbia, Inc. ("NES") at all times relevant to this Complaint had a contract with Greater Southeast Community Hospital Corporation to provide emergency services.

25.     At all relevant times, all Defendants acted under color of law of the District of

6

Columbia and pursuant to their authority as officials, agents, contractors or employees of the

District of Columbia.

26.    With regard to the claims pled pursuant to 42 U.S.C. §§ 1983, 1988, 12132,

12182, and 12205, all individual Defendants except Odie Washington are sued in their individual

and official capacities.  Defendant Odie Washington is sued in his individual capacity.

**FACTS COMMON TO ALL CLAIMS**

27.    On September 20, 2004, Jonathan Magbie was ordered to serve a sentence of ten

days imprisonment at the Jail as punishment for possession of a marijuana cigarette.  This was

his first incarceration.

28.    Mr. Magbie was a 27 year-old man, paralyzed from the neck down as result of a

severe childhood accident.   He had a battery-operated phrenic nerve stimulator that allowed him

to breathe.  He used a mechanical ventilator at night and other times.  He also had a tracheostomy

tube to facilitate his breathing, and an indwelling catheter to collect urine.

29.    According to an  intake medical history at the Jail, in January 2004 Mr. Magbie

experienced pneumonia and had a history of osteomyelitis (bone infection).  By all accounts, Mr.

Magbie was ill and helpless when he began his sentence.

A.    **Magbie's  First Confinement in the Jail**

30.    As part of the admission process at the Jail, Mr. Magbie had a chest x-ray, the

results of which indicated that he might have pneumonia.  Defendant Davis interpreted the x-ray.

Despite the fact that Defendant Davis knew from the x-ray that Mr. Magbie had an indwelling

tracheostomy tube and thus was at substantially heightened risk of pneumonia, he did not request

any follow-up on the abnormal x-ray for five to seven days.  As a result, Mr. Magbie never

7

received any follow-up for the abnormal x-ray.

31.     The failure to request prompt follow-up from the abnormal x-ray posed a substantial risk of serious harm to someone in Mr. Magbie's condition, and after his death on September 24, Mr. Magbie was determined to have suffered acute pneumonia.

32.     While at the Jail awaiting placement on September 20, Mr. Magbie experienced difficulty breathing.  He told the Jail medical staff that he needed a ventilator to breathe at night. As a result, he was transferred to Greater Southeast Community Hospital.

**B.      The First Hospitalization**

33.     On September 20, 2004, Mr. Magbie was taken to Greater Southeast Community Hospital ("the Hospital") with the complaint of shortness of breath. He was noted to be a trachestomy-dependent patient who used a ventilator at night. Examination revealed him to have wheezing and rales, with an oxygen saturation of 90%. Laboratory studies showed he had an elevated white blood cell count and was acidotic. During his stay, his glucose dropped to 56 and his blood pressure dropped to 68/48. Defendant Vaughn diagnosed hypoglycemia (low blood sugar), hypovolemia (dehydration), and respiratory distress.  During Mr. Magbie's stay at the Hospital, his low blood sugar was treated with one amp of 50% dextrose by the hospital staff.

34.     Defendant Vaughn decided to admit Mr. Magbie for diagnosis and treatment of these conditions after determining from Defendant Bastien that the Jail infirmary did not have the capacity for ventilator support or mechanical ventilation. After speaking with Defendant Bastien Defendant Vaughn called Defendant Haghighi.  Defendant Haghighi advised Defendant Vaughn to discharge Mr. Magbie, even though Defendant Haghighi also knew that Mr. Magbie needed a ventilator at times and none was available at the Jail.

35.     Defendant Vaughn approved a discharge of Mr. Magbie to the CTF at the Jail, with instructions to provide him nasal oxygen via cannula at night, as needed.   Defendant Vaughn failed to address Mr. Magbie's critical need for a ventilator or to provide any follow-up of the hypoglycemia that Dr. Vaughn had diagnosed.

36.     The discharge was not canceled by Defendant Numoi on September 21, 2004, despite the lack of follow-up for Mr. Magbie's hypoglycemia and despite the fact that, prior to discharge, Mr. Magbie's blood pressure dropped to 68/48.

37.     Defendant Hillard failed to intervene to assure that Mr. Magbie's condition permitted him to be safely discharged from the Hospital, even though she was present in the unit of the Hospital on the morning of September 21.

**C.     Confinement in the Infirmary at CTF**

38.     As noted above, on  September 21, 2004, Defendant Vaughn called Defendant Bastien,  the on-call physician for the Jail.  Defendant Bastien informed Defendant Vaughn that the Jail could not provide a ventilator for Mr. Magbie, but it could provide oxygen.  Defendant Bastien directed Defendant Vaughn to contact Defendant Malekghasemi, the Chief Medical Officer of the CTF Infirmary, regarding the possibility of transfer of Mr. Magbie to the infirmary, even though Defendant Bastien knew that the CTF infirmary did not have the equipment to deal with Mr. Magbie's respiratory neeeds, and the infirmary lacked physician staffing during the night.

39.     Defendant Vaughn subsequently spoke to Defendant Malekghasemi, CTF's chief medical officer.  Defendant Malekghasemi learned no later than September 22, 2004 that Mr. Magbie required ventilator support at night.  Notwithstanding that fact, and that Defendant

9

Malekghasemi knew that the CTF infirmary could not provide ventilator support, he failed to transfer Mr. Magbie from the infirmary. Defendant Malekghasemi's sole attempt to provide for Mr. Magbie's care in a facility equipped to care for him was to ask the sentencing court for an order requiring the Hospital to re-admit Mr. Magbie. He did not contact the Hospital to attempt to arrange a readmission.

40.     Defendant Nwosu was in charge of the CTF infirmary and performed the admitting examination for Mr. Magbie. Defendant Nwosu made no attempt to refuse admission to Mr. Magbie, although he knew that the infirmary was not equipped to care for a patient with ventilator needs.

41.     Defendant Nwosu did not examine Mr. Magbie's lungs although he knew that the patient had a tracheostomy and a phrenic nerve stimulator and that Mr. Magbie stated that he was ventilator-dependent at night.

42.     Defendant Nwosu also knew that the Hospital had treated Mr. Magbie for dehydration and low blood sugar. Although he knew that Mr. Magbie, in view of his quadriplegia and tracheostomy-dependent condition, would require follow-up for the hospital findings of low blood sugar and dehydration, Defendant Nwosu did not order monitoring of Mr. Magbie's fluid and calorie intake.

43.     Although Defendant Nwosu's admission note states that it was done on September 21, 2004, the note was not signed until three days later. At the time the record was signed, on September 24, Mr. Magbie was in severe respiratory distress and would soon die.

44.     Despite Defendant Nwosu's knowledge that Mr. Magbie required close monitoring by higher-level medical staff, no doctor monitored him, even in his state of rapidly

10

declining health.  The only medical staff who provided any care to Mr. Magbie were LPNs.

45.    Notwithstanding Defendant Nwosu's knowledge of Mr. Magbie's needs and conditions, he failed to intervene although the LPNs documented that Mr. Magbie was eating almost nothing and had falling urine output between September 21 and September 24.

46.    Defendant Nwosu knew that he was required to review Mr. Magbie's medical records.  On the basis of the medical records from the Hospital and the CTF infirmary, Defendant Nwosu knew that Mr. Magbie was at enormous risk of dehydration and low blood sugar from the lack of nutrition and fluid support in the infirmary, and that these conditions would overwhelmingly likely to trigger another respiratory crisis in light of Mr. Magbie's frail condition.

47.    Defendants Ojelfo and Ogundipe failed to perform tracheal suctioning on Mr. Magbie during their shifts, even though they knew that they were required to suction him to protect him from respiratory distress.

48.    Defendant Ogundipe displayed personal hostility towards Mr. Magbie and failed to provide him with necessary care, including fluids necessary to prevent dehydration.  Nor did Defendant Ogundipe communicate Mr. Magbie's needs to colleagues so that someone else could provide the necessary care.

49.    The CTF infirmary  lacked physician staffing during the night.  Defendant Nwosu ordered that Mr. Magbie be checked at 15 minute intervals and that staff not lock Mr. Magbie into his cell because of his helpless condition.

50.    Mr.  Magbie could speak only in a soft, low weakened voice.  His only available way to notify staff of his needs was to move his wheelchair, which he controlled with a mouth-

operated device, near staff to attract their attention.

51.     On various occasions while confined in the CTF infirmary, because of Defendant Ogundipe's hostility,  Mr. Magbie attempted to obtain water from the prisoner porters. Defendant Singley ordered Mr. Magbie to stop seeking water from the prisoner porters.  To enforce that order, notwithstanding Mr. Magbie's weak and helpless condition and the order from Dr. Nwosu, Defendant Singley locked Mr. Magbie into his room.  The room had no panic button nor any other means that Mr. Magbie could use to communicate with the staff while locked in his room, so when his cell was locked, he was completely isolated and helpless to communicate his needs.

52.     Although Defendant Johnson was required to make frequent rounds of the CTF Infirmary and to supervise Defendant Singley, he negligently failed to supervise her and other staff properly, with the result that Defendant Singley was able to lock Mr. Magbie in his cell despite physician orders to the contrary.

53.   This chain of events contributed to Mr. Magbie's dehydration and subsequent respiratory crisis.

54.     On the morning of September 24, during a period of time that Mr. Magbie was not being observed by medical staff, he developed an acute respiratory crisis.  The level of oxygen in his blood fell to dangerous levels.  He was unable to speak intelligibly and was subsequently retransferred to the Hospital.

**D.     The Second Hospitalization**

55.     On September 24, 2004 at 9:50 a.m. Mr. Magbie arrived at the Hospital, unresponsive and in respiratory distress. Defendant Iluyomade gave an order for a "tracheal

toilet" procedure. Initial vital signs indicated an oxygen saturation of 100%. This level dropped to 95% at 2:05 p.m.; to 92% at 4:00 p.m.; and to 80% at 5:40 p.m.

56.    The patient's tracheostomy tube, which was not secured, was noted to be protruding at 5:40 p.m. Dr. Iluyomade pushed the tube back in, but failed to assess the patient's respiratory status. Suctioning was not performed. Saline was not given. An inner cannula, if present, was not removed. The protruding tracheostomy tube was neither removed nor replaced with a smaller tube.

57.    Despite knowing of the order for a tracheal toilet, no one on the Hospital staff, including Defendant Monica James, a licensed respiratory therapist, carried that order out, although Mr. Magbie was suffering from copious thickened secretions that interfered with his breathing. Defendant James also pushed Mr. Magbie's tracheostomy tube back in.

58.    The Hospital staff failed to properly manage Mr. Magbie following his arrival and did not notify a physician of his deteriorating condition until Defendant Iluyomade was called to attend the patient at 5:40 p.m.

59.    No medical person checked whether Mr. Magbie's tracheostomy tube was correctly placed after these manipulations by Defendants Iluyomade and James.

60.    Defendant Ackerman was responsible for supervising the medical care provided by the physicians supplied by NES, but failed to do so, with the result that their wrongful and negligent acts were not corrected.

61.    Although Defendant Malekghasemi, the chief medical officer of the CTF Infirmary, telephoned Defendant Hillard on the morning of September 24 and requested that she check on the status of Mr. Magbie, she did nothing beyond accepting the representation of

13

Hospital staff that the patient would be admitted.  In fact, Mr. Magbie never was admitted to the Hospital on September 24.

62.     As the culmination of these acts of brutal insensitivity to Magbie's health and vulnerability, Mr. Magbie coded and subsequently expired at 6:40 p.m.

**E.     Jonathan Magbie's Disabilities**

63.     Jonathan Magbie suffered from a disability by reason of his paralysis and associated problems.  He was excluded from services provided by Defendants for which he was otherwise eligible including basic provisions such as  food and water and reasonably safe housing, by reason of this disability.

64.     Defendants District of Columbia, CCA, Washington and Figueroa failed to implement reasonable policies for assuring medical care, basic needs and reasonably safe housing for persons suffering from paralysis and related disabilities.

65.     Defendants District of Columbia and Washington failed to make reasonable accommodations in policies, practices, and procedures to enable Jonathan Magbie to participate fully and equally in the Jail and CTF's public services, programs and activities

66.     Defendant Hospital discriminated against Jonathan Magbie by reason of his disability and failed to enable him to participate fully and equally in the Hospital's services, programs and activities.

67.     Defendant Hospital failed to provide reasonable accommodations to Jonathan Magbie to allow him to participate fully and equally in the Hospital's services, programs and activities.

**F.     Other**

14

68.     Defendant Washington had a duty to formulate, adopt, execute and maintain policies, standards, procedures and practices that were consistent with the civil rights of prisoners, including Jonathan Magbie, under the Eighth Amendment of the United States Constitution and under the laws of the United States and the District of Columbia.  These necessary policies include policies to assure that prisoners are provided with proper and necessary medical treatment;  that prisoners are not housed in facilities lacking the care and services necessary to sustain such prisoners; and that prisoners do not suffer discrimination and exclusion from services by reason of their disabilities.

69.     Defendant Washington, despite knowledge that adequate policies were required to assure that no prisoners were kept in custody for whom the Department of Corrections lacked safe and appropriate medical services and facilities, failed to promulgate or implement such policies.

70.     Defendant Washington and other District of Columbia agents and employees acted pursuant to a policy or custom of accepting custody of persons who, because of disabilities and medical needs, could not be safely confined at the Jail or CTF.

71.     All actions and omissions of Jail employees and agents as described in this Complaint were taken pursuant to and as a result of the policies and customs of their employer and principal the District of Columbia.

72.     Defendant CCA had a duty to formulate, adopt, execute and maintain policies, standards, procedures and practices that were consistent with the civil rights of prisoners, including Jonathan Magbie, under the Eighth Amendment of the United States Constitution and under the laws of the United States and the District of Columbia.  These necessary policies

15

include policies to assure that prisoners are provided with proper and necessary medical treatment; that prisoners are not housed in facilities lacking the care and services necessary to sustain such prisoners; and that prisoners do not suffer discrimination and exclusion from services by reason of their disabilities. Defendant CCA failed to cause such policies to be implemented.

73.    Defendant Figueroa and other CCA agents and employees acted pursuant to a policy or custom of accepting custody of persons who, because of disabilities or medical needs, could not be safely confined at the Jail or CTF.

74.    Defendant Figueroa was responsible for supervising custody staff at the CTF and as such was responsible for the promulgation and implementation of policies, standards, procedures, and practices that reasonably protected the safety of the prisoners in his custody. These necessary policies included policies to assure that custody staff did not interfere with medical orders, including medical orders that prisoners with certain medical conditions not be locked in their cells. Defendant Figueroa failed to supervise staff appropriately or to promulgate and implement policies, procedures and practices that reasonably protected the safety of prisoners in his custody.

75.    All actions and omissions of CCA employees and agents as described in this Complaint were taken pursuant to and as a result of the policies and customs of their employer and principal CCA.

76.    All actions and omissions of staff members of the Hospital were taken by agents, servants and employees of that hospital, acting within the course and scope of that agency, servantship and employment.

16

77.     Defendant NES was required to properly staff the Emergency Room at the Hospital with competent and appropriately supervised staff, but failed to do so.

78.     At all times preceding Mr. Magbie's expiration, he experienced conscious physical pain and suffering including embarrassment, humiliation and loss of self-esteem, as a result of Defendants' actions.

79.     Plaintiff has complied with the provisions of D.C. Code §12-309 by providing timely written notice to the Mayor of her intention to file civil claims against the District of Columbia based upon the death of Jonathan Magbie.

80.     Mr. Magbie, at the time of his death, was the beneficiary of a life annuity.

81.     Plaintiff Mary Scott, mother of the deceased, had a past experience and a reasonable future expectation of substantial economic support from the deceased.

## CLAIMS FOR RELIEF

**COUNT ONE**

### (42 U.S.C. § 1983 Eighth Amendment)

82.     Plaintiff repeats, realleges and incorporates by reference herein each and every relevant allegation in ¶¶ 1-81, *supra,* and, in addition, alleges:

83.     Although Defendants District of Columbia, Washington, Bastien, Malekghasemi, Nwosu, Ojelfo, Ogundipe, Davis , CCHPS, CCA, Singley, the Hospital, Vaughn, and Iluyomade acted under color of District of Columbia law and had actual knowledge of the substantial risks of serious harm to Mr. Magbie, they still acted or failed to act without regard for those risks. These Defendants' acts and omissions deprived Mr. Magbie of appropriate medical care, reasonably safe housing in light of his disabilities, and basic needs of food and water.  Further,

17

they were fully cognizable that their actions violated Mr. Magbie's rights under the Eighth

Amendment to the United States Constitution to be free from such cruel and unusual punishment.

These Defendants further exposed Mr. Magbie to pain, humiliation, embarrassment and a

shameful state of helplessness.  Further, these Defendants knew that their actions violated Mr.

Magbie's rights under the Eighth Amendment to the United States Constitution to be free from

Cruel and Unusual Punishment.

84.    The acts and omissions of the Defendants listed in ¶ 83, *supra*,  clearly violated

Mr. Magbie's constitutional rights and proximately caused his death.

85.    Defendants Washington, Bastien, Davis, Malekghasemi, Nwosu, Ojelfo,

Ogundipe, Singley, Vaughn and Iluyomade acted with wilful disregard of the rights of Jonathan

Magbie and their conduct toward him was outrageous and reckless.

WHEREFORE, Mary Scott, Plaintiff demands:

(A)    Compensatory damages against all Defendants listed in ¶ 83, jointly and

severally, in an amount in excess of  fifty million dollars ($50,000,000);

(B)    Punitive damages against each individual Defendant named in ¶ 85, *supra,*

in an amount in excess of fifty million dollars ($50,000,000);

(C)    Reasonable attorneys' fees under 42 U.S.C. § 1988; and

(D)    Costs and expenses of this action.

## COUNT TWO

### (Americans with Disabilities Act)

86.    Plaintiff repeats, realleges and incorporates by reference herein each and every

relevant allegation in ¶¶ 1-85, *supra,* and, in addition, alleges:

18

87.     The District of Columbia violated Jonathan Magbie's rights pursuant to Title II of the  Americans with Disabilities Act, 42 U.S.C. § 12132, and those violations proximately caused his death.

88.     The Hospital violated Mr. Magbie's rights pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, and those violations proximately caused his death.

WHEREFORE, Mary Scott, Plaintiff, demands:

(A)     Compensatory damages against Defendants District of Columbia and the Hospital, jointly and severally, in an amount in excess of fifty million dollars ($50,000,000);

(B)     Reasonable attorneys' fees under 42 U.S.C. § 1988 and 42 U.S.C. §12205; and

(C)     Costs and expenses of this action.

**COUNT THREE**

### (Negligence and Medical Malpractice)

89.     Plaintiff repeats, realleges and incorporates by reference herein each and every relevant allegation in ¶¶ 1-88, *supra,* and, in addition, alleges:

90.     At all times referred to above, Jonathan Magbie enjoyed the status of a medical patient within a patient/provider relationship, and relied upon the care, skill and judgment of those who provided or failed to provide treatment to him.

91.     Each medical provider defendant had a duty to treat Mr. Magbie with the same degree of skill, care or knowledge which a reasonable and prudent person of the medical profession  would have exercised under the same or similar circumstances, and to treat Mr.

Magbie within the prevailing standard of care that existed at the time of the subject events and that still exists today.

92.     Defendants, and each of them, negligently acted or failed to act, resulting in the denial of necessary medical care to Mr. Magbie, and those acts and omissions proximately caused Mr. Magbie's considerable pain and suffering, including mental anguish, and ultimately his death, all in violation of the applicable standards of care.

WHEREFORE, Mary Scott, Plaintiff, demands:

(A)     Compensatory damages against all Defendants except Odie Washington, jointly and severally, in an amount in excess of fifty million dollars ($50,000,000); and

(B)     Costs and expenses of this action.

## COUNT FOUR

### ( District of Columbia Human Rights Law)

93.     Plaintiff hereby repeats, realleges and incorporates by reference herein each and every relevant allegation of paragraphs 1-92, *supra,* and, in addition, alleges:

94.     The District of Columbia violated Mr. Magbie's rights pursuant to the District of Columbia Human Rights Law, D.C. Code §§ 2-1402.67, 2.1402.73 & 2.1403.16, and those violations proximately caused Mr. Magbie's death.

95.     The Hospital violated Mr. Magbie's rights pursuant to the District of Columbia Human Rights Law, D.C. Code §§ 2-1402.31 & 2.1403.16, and those violations proximately caused Mr. Magbie's death.

WHEREFORE, Mary Scott, Plaintiff, demands:

(A)     Compensatory damages against Defendants District of Columbia and the Hospital in an amount of fifty million dollars ($50,000,000);

(B)     Reasonable attorneys' fees pursuant to D.C. Code §§ 2-1403.13(a) and 2-1403.16; and

(C)     Costs and expenses of this action.

**COUNT FIVE**

**(Intentional Infliction of Emotional Distress)**

96.     Plaintiff hereby repeats, realleges and incorporates by reference herein each and every relevant allegation of ¶¶ 1-95, *supra,* and, in addition, alleges:

97.     Defendants Singley and CCA intentionally isolated and procured Mr. Magbie's detention in an isolated and locked jail cell, leaving him helpless without any form or means of communication, within hours of his death.

98.     This act caused the intentional infliction of emotional distress.

WHEREFORE, Mary Scott, Plaintiff, demands:

(A)     Compensatory damages against Defendants Singley and CCA of five million dollars ($5,000,000);

(B)     Punitive damages against Defendants Singley and CCA of ten million dollars ($10,000,000); and

(C)     Costs and expenses of this action.

_____          _____
Donald M. Temple, #408749              Edward J. Connor #321505
1229 15th Street, NW                   5210 Auth Raod, #304
Washington, DC 20005                   Camp Springs, MD 20746
(202) 628-1101                         (301) 899-7801

21

_____          _____
Elizabeth Alexander, #412904              Arthur B. Spitzer, #235960
National Prison Project of the ACLU       American Civil Liberties Union
915 15th Street, NW                              of the National Capital Area
7th Floor                                 1400 20th Street, N.W. #119
Washington, DC 20005                      Washington, DC 20036
(202) 393-4930                            (202) 457-0800

## JURY DEMAND

Plaintiff demands trial by jury.

_____
Donald M. Temple, #408749