# PHILIP M. BUTTARAVOLI, M.D. FACEP

May 4, 2007

Bonner Kiernan Trebach & Crociata, LLP.
1233 20th Street, NW    Suite 800
Washington, D.C. 20036

Re:  Opinion of Philip M. Buttaravoli, M.D. FACEP on the emergency care of
     Jonathan Magbie on September 20th & 21st 2004

Dear Mr. Anderson:

As requested, I have reviewed the following records:

Medical Records from Greater Southeast Community Hospital (9/20/04 & 9/21/04)

Statement of Claim by Mary R. Scott

Special Report of the Inspector General, October 2005

Autopsy Report (12/07/04)

Deposition of William Vaughn, M.D. (7/19/06)

Mr. Magbie was a 27 year old quadriplegic who was brought to the Emergency Department of Greater Southeast Community Hospital on the evening of September 20th 2004 because of an episode of shortness of breath that he had experienced during the intake process at the Department of Corrections.

Mr. Magbie was transported via EMS where it was recorded that "Patient is a quadriplegic with a trach that requires a vent at night." The patient was not short of breath during the time of transport and his vital signs (V/S) where recorded as Bp 100/62, P 90—86, R 24-22 and Pulse Ox 98%.

On Arrival to the Emergency Department the triage nurse makes the note: "Trouble breathing sent for breathing treatment and vent. sleeps on vent at home." "PMHx – quadriplegia, tracheostomy, diaphragm pacemaker. SHx - + Tobacco + Substance Abuse. V/S: T 97.1 HR 89 RR 14 Bp 103/65, Alert Oriented x 3, Resp – clear, Foley – suprapubic."

At 11:00 pm Mr. Magbie is seen by the emergency physician Dr. William Vaughn. He then notes: " Trach dependent pt. who uses ventilator at night, associated symptoms:

-2-                                                                May 4, 2007

cough non-productive, no fever, chills, sweats. PHx asthma, heart disease, quadriplegia. PE: Distress: mild; Neck: trach; Resp: wheezing, rales."

Dr. Vaughn obtained a chest x-ray which was normal, a CBC which showed a mildly elevated WBC, a Glucose which was mildly decreased along with a mildly decreased CO2. The O2 Sat on room air (R/A) was 90% and increased to 99% when the patient was placed on 2 liters of nasal O2.

The patient's blood pressure transiently dropped to 80/sys. The low blood sugar was treated with IV glucose and the low blood pressure was corrected with a liter of Normal Saline.

Dr. Vaughn's initial impression was: COPD (Bronchitis) – acute exacerbation; Hypovolemia; Hypoglycemia and he planned to have the patient admitted. Dr. Vaughn called the D.C. Jail Infirmary and noted: "no vent. support mechan. Vent. support O2 at infirmary." And at 2202 he planned for "Pt to be admitted for hypovolemia & resp. difficulty".

After further interviewing of Mr. Magbie, Dr. Vaughn discovered that the patient was not truly ventilator dependent at night but only required the ventilator on some of the nights while at home.

When Dr. Vaughn spoke with Dr. Haghigi, who was covering the admitting medical service at GSECH, Dr. Haghigi said he could not justify admitting Mr. Magbie to the hospital for PRN (as needed) use of a ventilator.

Mr. Magbie rested comfortably throughout the night without ventilatory assistance. His V/S remained stable with adequate oxygen saturation on room air. At 3:20 am Dr. Vaughn notes: "O2 about 95% on room air, Bp 95/48, Pt alert & oriented. May only need Nasal O2 which the DC Jail Infirmary can provide. Spoke with Dr. Bastien. Will arrange for nasal O2 in a CTF (Correctional Treatment Facility) ward for Mr. Magbie

On 9/21/04 at 0715 just prior to Dr. Vaughn going off shift, the nursing note states: "Received patient alert, responsive verbally. Denied any pain. No (S)hortness (O)f (B)reath noted. No respiratory distress noted. Patient has been discharged, waiting for room to be prepared at command CT.

With the initial information and findings that Dr. Vaughn had available to him at the beginning of Mr. Magbie's visit to the GSECH emergency department, it was quite reasonable and appropriate for him to plan to have Mr. Magbie admitted to the hospital. It appeared as though Mr. Magbie required a ventilator at night, his blood pressure had dropped, his blood sugar was low, his white blood cell count was mildly elevated and his serum bicarbonate was mildly decreased. But during Mr. Magbie's course in the emergency department his oxygen saturation levels returned to normal. Dr. Vaughn learned that Mr. Magbie did not require ventilatory support every night and Mr. Magbie's chest x-ray was found to be normal. Mr. Magbie readily responded to simple fluid administration to correct his hypotention and presumably his low

-3-                                                                             May 4, 2007

bicarbonate. No life threatening source for his low blood pressure was revealed, and his low blood sugar was never a threat to Mr. Magbie because he was not on blood sugar lowering drugs. Just to be cautious early on, extra glucose was administered.

Throughout the night that Mr. Magbie spent in the department he remained comfortable and was never in any distress. When Dr. Vaughn was advised by the physician covering the hospital's medical service that Mr. Magbie's admission was not necessary or justifiable, given the additional clinical information now available to Dr. Vaughn, it was quite appropriate for him to change his plans for Mr. Magbie. The drop in blood pressure appears to be due to nothing more than the neurovascular instability that is common to many quadriplegics. The asymptomatic low blood sugar was never of any concern and in fact never became a problem in the course of Mr. Magbie's illness. It was very reasonable and well within the standard of care for emergency medicine for Dr. Vaughn to assume that Mr. Magbie could be supported at night with supplemental nasal oxygen and that with medical monitoring, if it turned out to be inadequate, the patient could safely be returned to the hospital.

Dr. Vaughn appropriately diagnosed Mr. Magbie as having a mild case of bronchitis with a mild elevation of his white blood cell count and very conscientiously checked with the physician at the jail infirmary to see that this patient could be managed by the infirmary staff and given nasal O2 if needed. Mr. Magbie did not require a tracheostomy mask because, due to his permanent implanted diaphragmatic pacemaker, he was for the most part, a nose and mouth breather. He also did not require any backup pacemaker any more than patients who have cardiac pacemakers require a backup. Dr. Vaughn and the emergency department staff should have been able to reasonably assume that their patient would get appropriate care at the CTF Ward and that he would be observed and treated by conscientious, qualified medical personnel who would send Mr. Magbie back to the department if he was having any serious medical problem.

To summarize, given the circumstances and findings surrounding Mr. Jonathan Magbie's visit to the emergency department of GSECH on 9/20/04 & 9/21/04 it was well within the standard of care for Dr. William Vaughn to have sent Mr. Vaughn to the medical treatment facility at the DC jail.

Sincerely,

Philip M. Buttaravoli, M.D.

8636 FALCON GREEN DR. • WEST PALM BEACH, FL • 33412

PHONE: (561) 775-3388 • FAX: (561) 622-3325