Mary R. Scott, et al. v. District of Columbia, et al.
United States District Court for the District of Columbia

05CV01853

Exhibit No. 9     Report of Frank Baker, M.D.

04/30/2007 12:23 3014231372 VALLARIO PAGE 02/04
Case 1:05-cv-01853-RWR   Document 168-10   Filed 02/20/2008   Page 2 of 4
Aug 01 05 02:55p   Office of Dr. Frank Baker   630-941-0044   p.4

**FRANK J. BAKER II, M.D.**
89 TIMBER COURT
OAKBROOK, ILLINOIS 60523
630-941-9096
Facsimile 630-941-0044

Diplomate
American College of Emergency Medicine
Diplomate
American Board of Internal Medicine
Diplomate
American Board of Forensic Examiners
Diplomate
American Board of Forensic Medicine

Fellow
American College of Emergency Physicians
Life Fellow
American College of Forensic Examiners

August 1, 2005

*Sent Via Facsimile*

Law Offices of Edward J. Connor
Attn: Mr. Edward J. Connor
5210 Auth Road; Suite 304
Camp Springs, MD 20746

RE: **Jonathan Magbie (dec'd)**

Dear Mr. Connor,

At your request, I have reviewed the following records:

1) Greater Southeast Community Hospital for Mr. Jonathan Magbie dated 9/20/04 and 9/24/04.
2) Report of Constance McCoy from the Department of Health, District of Columbia, Complaint # 05-001, Intake # DC00000689.
3) Investigative report, Office of the Chief Medical Examiner, District of Columbia, Case No. 04-02339, Decedent, Jonathan Magbie.

Mr. Magbie was twenty-seven years old and had been quadriplegic since age four when he presented to Greater Southeast Community Hospital on 9/20/04 with a complaint of shortness of breath. Mr. Magbie was brought to the Greater Southeast Community Hospital in the custody of the Department of Corrections of the District of Columbia. The hospital record reveals that he was a trach-dependant patient who used a ventilator at night. On physical exam when his lungs were examined, he was found to have wheezing and rails. His O2 saturation on room air was 90%. Laboratory studies showed an elevated white blood cell count of 12. He was slightly acidotic with a blood bicarbonate of 17 and during his stay at the hospital E.R., his glucose dropped to 56 and his blood pressure dropped to 68/48 mm Hg. The E.R. physician, Dr. Vaughn, diagnosed hypoglycemia, hypovolemia, and respiratory distress. Dr. Vaughn made the decision to admit the patient for the diagnosis and treatment of the above after determining that the DC jail infirmary did not have the capacity for ventilatory support, mechanical ventilation, or oxygen. He subsequently changed his mind and decided to discharge the patient apparently after a discussion with Dr. Bastien of the DC jail informed Dr. Vaughn that arrangements could be made for Mr. Magbie's care at the CTF (Correctional

1

Treatment Facility) Ward. Dr. Malekghasemi, Chief Medical Officer for the CTF has subsequently stated that the CTF "should not have a patient that required a vent."

During his stay in the Emergency Department, Mr. Magbie's low blood glucose of 56 mg/Dl was treated with one amp of 50% dextrose. His low oxygen saturation of 90% on room air was treated with oxygen at 2 liters/minute by nasal canula. His shock was treated with 1 liter of normal saline. At some point and time, it was decided to send him back to jail with a prescription for oxygen by nasal canula.

Mr. Magbie's treatment deviated from the standard of care in several respects:

1) He needed to be admitted for diagnosis and treatment of his hypotension.
2) He needed to be admitted for diagnosis and treatment of his hypoglycemia.
3) He needed to be admitted for diagnosis and treatment of his respiratory distress and hypoxia including provision of a ventilator at night.
4) He need to have oxygen provided by a tracheostomy mask or other similar device.
5) He needed to have a diaphragm pacemaker made available.

There are no circumstances under which this patient with these conditions could have been sent back to jail. It was a deviation from the standard of care for Dr. Bastien to agree to arrange or to have someone else arrange the transfer of Mr. Magbie to a CTF Ward.

Mr. Magbie was returned to jail on 9/21/04 where he remained without adequate treatment until he was returned to Greater Southeast Community Hospital at 10:10 hours on 9/24/04 unresponsive and in respiratory distress. During that admission, his ventilatory status was mismanaged when he became progressively hypoxic sometime between 15:30 and 17:40 hours. There was inadequate monitoring between 15:30 hours and 17:40 hours at which time he was noted by a respiratory therapist to have an oxygen saturation of 80% on room air. Dr. Iluyomade was called to the bedside at 17:40 hours regarding the respiratory distress and decreasing pulse oximetry values of the patient. Initially, Dr. Iluyomade should have suctioned Mr. Magbie's tracheostomy tube. If suctioning was not successful, 2-3 ml. of sterile saline should have been injected into the trachea and suctioning repeated. If an inner canula was present, it should have been immediately removed. If suctioning and removal of the inner canula did not immediately clear the airway, and pushing the protruding tube back into the tracheostomy did not result in improved oxygen saturations, the tracheotomy tube should have been removed and replaced with a tube one or two sizes smaller. If difficulties occurred while replacing the tracheostomy tube, a small red rubber catheter should have been threaded into the trachea over which the tracheostomy tube could have been inserted and during which time anesthesia should have been paged to the Emergency Department. Failure to proceed as outlined above was a deviation from the standard of care.

2

Within a reasonable degree of medical certainty, had Mr. Magbie been admitted on 9/21/04 or had his airway been reestablished on 9/24/05, he would not have succumbed from hypoxia which was the immediate cause of his cardiac arrest and which was a direct result of dislodgement of his tracheostomy tube.

This report is preliminary and subject to change based upon the elucidation of additional information. Should you have any further question, please contact me.

Sincerely,

Frank J. Baker II, M.D.

FJB/amr

3