**Mary R. Scott, et al. V. District of Columbia, et al.**
**United States District Court for the District of Columbia**

**05CV01853**

**Exhibit No. 7**

Case 1:05-cv-01853-RWR   Document 171-12   Filed 03/25/2008   Page 1 of 3

# VCU

## Medical Center
In the tradition of the Medical College of Virginia

Virginia Commonwealth University

**MCV Campus**

**Division of Pulmonary and Critical Care Medicine**

P.O. Box 980050
Richmond, Virginia 23298-0050

804 828-9071
Fax: 804 828-2578
TDD: 1-800-828-1120
Ambulatory Care Appointments:
804 828-2161

---

Alpha A. Fowler, III, MD, Chair
Professor of Medicine

Scott O. DiMarino, Administrator
Grants and Contracts

Kevin R. Cooper, MD
Professor of Medicine

Paul Fairman, MD
Professor of Medicine

Curtis N. Sessler, MD
Professor of Medicine

Lisa K. Brath, MD
Associate Professor of Medicine

R. Wesley Shepherd, MD
Assistant Professor of Medicine

Marjolein de Wit, MD
Assistant Professor of Medicine

Bernard J. Fisher, BS
Technical Director, Basic Research

Shobha Ghosh, PhD
Associate Professor of Medicine

Ramesh Natarajan, PhD
Assistant Professor of Medicine

Venkatarama Rao, MD, PhD
Asst. Clin. Professor of Medicine

Raymond Haddad, MD
Associate Clin. Professor of Medicine

Janet Pinson, MSN, ACNP
Pulmonary Nurse Practitioner

Patricia L. Cafaro, CRNP, FNP
Asthma Nurse Practitioner

Wendy Jenvey, RN, BSN
Clinical Research Coordinator

---

Pulmonary/Critical Care Medicine
McGuire Veterans Administration Hospital
804 675-5605

---

Daniel E. Bechard, MD, Chief
Associate Professor of Medicine

Leonard C. Moses, MD
Associate Professor of Medicine

Thomas Ferro, MD
Professor of Medicine

Mateen Ahmed, MD
Assistant Professor of Medicine

an equal opportunity/affirmative action university

---

September 5, 2006

Nia Vroustouris, Esq.
LeClair Ryan, A Professional Corporation
225 Reinekers Lane, Suite 700
Alexandria, Virginia 22314

RE:   Jonathan Magbie

Dear Ms. Vroustouris,

I am a Professor at the Virginia Commonwealth University School of Medicine in Richmond, Virginia, and am Board certified in Internal Medicine, Pulmonary Diseases and Critical Care. I charge $250 an hour for review, deposition and trial testimony. I have reviewed the Complaint, Jonathan Magbie's medical records from Greater Southeast Community Hospital for September 20, 2004 and September 24, 2004, as well as the autopsy report. I have also reviewed Mr. Magbie's CCHPS records from the time he was at the DC Jail and the CTF record from September 20-24, 2004, as well as the deposition transcripts of William Vaughn, M.D., Rotimi Iluyomade, M.D. and Malek Malekghasemi, M.D. All the opinions I plan to express are held to a reasonable degree of medical certainty.

When Mr. Magbie was taken to the DC Jail, a chest x-ray was performed, which indicated possible infiltrate in the left lung, so he was appropriately sent to the hospital. Dr. Vaughn, the Emergency Department physician, diagnosed Mr. Magbie with hypovolemia, and planned to admit Mr. Magbie to the hospital. Instead of being admitted, Dr. Vaughn changed his mind, and discharged Mr. Magbie to the CTF, despite knowing that Mr. Magbie required a ventilator to breathe at night, and that neither the CTF nor the Jail had a ventilator. Mr. Magbie should have been admitted to the hospital on September 20, 2004 because he was ventilator dependent.

When Mr. Magbie returned to the Jail, his status was temporarily improved. When Mr. Magbie was found unresponsive at the Jail on September 24, 2004, the appropriate actions were taken to improve his respiratory status, and he was appropriately transported to the hospital. Mr. Magbie was stabilized for a period of time while he was at Greater Southeast, and his oxygen saturations were within normal limits initially. Mr. Magbie had lab work done at the hospital, and his status had improved since morning. However, Mr. Magbie's lab results indicated a high WBC, suggestive of infection, his PCO2 was 56, which is abnormally high, and his pH was 7.29. These blood gases indicate that this patient was not breathing adequately on his own, and therefore needed to be placed on a ventilator. The labs were drawn upon arrival at the hospital, but no one instituted any therapy in response to these abnormal labs. In my opinion, Mr. Magbie should have been placed on a ventilator soon after arrival at the Emergency Department on September 24, in order to prevent him from developing severe respiratory failure. In fact, he later developed severe respiratory failure. Furthermore, when Mr. Magbie's oxygen saturation began to decline between 15:30 and 17:40, no one at the hospital took action to help him. There is no documentation that Mr. Magbie was suctioned or that his breathing was assisted by a resucitator bag or mechanical ventilator when his oxygen saturation declined. Most likely muscle fatigue, possibly along with an accumulation of mucus in his airway, was gradually impairing his ability to breathe. If Mr. Magbie had been suctioned and placed on a ventilator at the hospital, he mostly likely would not have died.

Mr. Magbie's death occurred as a result of the substandard treatment he received at Greater Southeast Community Hospital on September 24, 2004. Failure to admit Mr. Magbie to the hospital on September 20, 2004 was a breach of the standard of care, and similarly, it was a breach of the standard of care not to place this patient on a ventilator upon arrival at Greater Southeast on September 24, 2004. Furthermore, the lack of response to Mr. Magbie's respiratory distress and lab work on September 24, 2004 by the hospital staff and the physician in charge of Mr. Magbie caused his death. In my opinion, no actions or inactions of any CCA employee or health care provider at the CTF on September 20-24, 2004 caused or contributed to Mr. Magbie's death.

Sincerely,

*Kevin R. Cooper MD*
Kevin R. Cooper, MD